UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Crim. No. 05-10003-NMG |
| ) | |
| ARTHUR GIANELLI, ) | |
| ) | |
| Defendant. ) | |

**GOVERNMENT'S EX PARTE MOTION FOR (1) REVOCATION OF RELEASE OF ARTHUR GIANELLI, PURSUANT TO 18 U.S.C. §3148(b), (2) PRETRIAL DETENTION OF GIANELLI, PURSUANT TO 18 U.S.C. § 3148(b); AND (3) FORFEITURE OF GIANELLI'S BAIL, PURSUANT TO RULE 46(f) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE**

The government hereby requests that (1) the temporary pretrial release of defendant Arthur Gianelli be revoked, pursuant to 18 U.S.C. §3148(b); (2) Gianelli be detained pending trial in this case, pursuant to 18 U.S.C. §3148(b); and (3) Gianelli's bail be forfeited, pursuant to Rule 46(f) of the Federal Rules of Criminal Procedure.

## I. INTRODUCTION

As set forth in the attached affidavit from Massachusetts State Police Trooper Pasquale F. Russolillo, defendant Arthur Gianelli has knowingly and willfully violated his conditions of temporary release and bail. Since this Court clearly and unequivocally advised Gianelli of those conditions and of the consequences he would face for violating them, Gianelli's temporary pretrial release should be revoked, he should be detained pending trial in this case, and his bail should be forfeited.

## II. SUMMARY OF FACTS

Defendant Arthur Gianelli is charged in 311 counts of a 395-count superseding indictment with racketeering (RICO), money-laundering, running an illegal gambling business, and other crimes. The superseding indictment was filed on April 7, 2005.

Back on January 11, 2005, when Gianelli was facing only the original 5-count indictment in this case, this Court released Gianelli on bail, but expressed concern -- based upon evidence presented at a detention hearing and upon this Court's own prior experience as a lawyer and a judge -- that Gianelli might abuse the privilege of pretrial release by continuing to engage in criminal conduct.

Therefore, this Court on January 11, 2005 imposed clear-cut release conditions including, *inter alia*, that Gianelli not violate any federal, state, or local laws, and that Gianelli not associate with Joseph A. Yerardi, Jr.[1] This Court clearly advised Gianelli, orally and in writing, of those conditions and of the consequences Gianelli would face for violating any of the release conditions.

After Gianelli's January 11, 2005 release on bail, the government actively pursued the grand jury investigation that eventuated in the April 7, 2005 superseding indictment. As set forth in Trooper Russolillo's May 18, 2005 affidavit (which is already before this Court and which is incorporated by reference into Trooper Russolillo's September 16, 2005 affidavit), grand jury testimony from a series of witnesses establishes that Gianelli continued -- while released on bail in this case -- to engage in his illegal sports gambling business, his illegal video poker machine business, money laundering, and financial dealings with Joseph A. Yerardi, Jr. In addition to the

---

[1] Yerardi, who was about to be released from federal prison after serving an 11-year term for a prior racketeering (RICO) conviction, became a defendant in the present case when the superseding indictment was filed in April 2005.

grand jury testimony from some of Gianelli's co-conspirators, evidence of Gianelli's violation of release conditions has been provided by physical observation by a Deputy United States Marshal, videotape recorded by a pole camera, and records subpoenaed from a telephone company, as also discussed in the Russolillo May 18, 2005 affidavit.

The government filed a motion on May 18, 2005 seeking to revoke Gianelli's release, detain him until trial, and forfeit his bail. The Court ordered Gianelli arrested and detained pending a hearing, which was postponed at Gianelli's request.

On July 6, 2005, shortly after rupturing his Achilles tendon, defendant Gianelli filed a motion for temporary release so that surgery on the tendon could be performed by his preferred surgeon and so that Gianelli could recuperate at home. Over the government's objection, Gianelli was ordered temporarily released for the surgery and recuperation, with the revocation/detention/forfeiture hearing further postponed until such time as Gianelli would be placed in a weight bearing cast or otherwise be given clearance to walk while placing weight on the injured leg.

However, the temporary release orders imposed additional conditions on Gianelli and authorized certain investigative techniques by which the government might attempt to discover and prove any violations that Gianelli might commit of the temporary release conditions.

As set forth below and in Trooper Russolillo's September 16, 2005 affidavit, Gianelli has knowingly and willfully violated the temporary release conditions, and therefore should have his temporary release revoked. Further, he should be detained until trial and should forfeit his bail.

## III. ARGUMENT

Defendant Arthur Gianelli has willfully and knowingly violated his conditions of temporary release, so his release should be revoked. Because Gianelli is unlikely to abide by conditions of release, poses a risk of flight, and poses a danger to the community, he should be detained pending trial in this case. In addition, his bail should be forfeited to the government.

### The Governing Statute

When, as here, a defendant is charged with violating a condition of release, the Court is *required*, under 18 U.S.C. § 3148(b), to --

> enter an order of revocation and detention if, after a hearing, the judicial officer--
>
> (1) finds that there is--
>
> (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or
>
> (B) clear and convincing evidence that the person has violated any other condition of release; and
>
> (2) finds that--
>
> * * *
>
> (B) the person is unlikely to abide by any condition or combination of conditions of release.

As detailed in Trooper Russolillo's September 16, 2005 affidavit, defendant Arthur Gianelli has clearly violated his conditions of temporary release. As shown in Trooper Russolillo's May 18, 2005 affidavit, Gianelli repeatedly and blatantly violated his original conditions of release.

### Commission of Crimes While on Release

The evidence set forth in the Russolillo affidavits easily establish probable cause to believe that Gianelli, while on release, continued his illegal sports betting business and his illegal gambling machine business, in violation of 18 U.S.C. §§ 1955 and 2, and continued to violate 18 U.S.C. §§ 1084 and 2 (using interstate and foreign wire transmission facilities to transmit wagering information).[2]

Moreover, the facts discussed in the Russolillo May 18, 2005 affidavit easily establish probable cause to believe that Gianelli continued, while on release in this case, to utilize the Duke Sports offshore gambling office and to make payments to Yerardi, in further violation of the money laundering statute, 18 U.S.C. §§ 1956 and 2.[3]

Since all of these crimes also are RICO predicates, Gianelli continued, while on release in this case, to violate the racketeering statute.

### Violation of Other Condition of Release

The facts stated in Trooper Russolillo's affidavits provide clear and convincing evidence that Gianelli violated the specific release condition that he not have any direct or indirect contact with Joseph Yerardi, Jr., and that Gianelli maintained a cell phone in his house in flagrant violation of the Court Orders issued in July 2005.

---

[2] The Grand Jury found probable cause to charge Gianelli in the superseding indictment with multiple violations of 18 U.S.C. §§ 1955, 1084, and 2, and with commission of Racketeering Acts based upon such violations. In the superseding indictment, the Grand Jury identified numerous individuals involved with Gianelli in these crimes, as well as methods and means of committing these violations. As charged in the superseding indictment, Gianelli's federal gambling violation necessarily includes, as an element of the federal offense, violation of state gambling law.

[3] The Grand Jury found probable cause to charge such crimes in a variety of Racketeering Acts and counts in the superseding indictment.

### Unlikelihood that Gianelli Would Abide By Release Conditions

Gianelli's flouting of the release conditions imposed by this Court unquestionably renders Gianelli "unlikely to abide by any condition or conditions of release." 18 U.S.C. §3148(b)(2)(B). This was clear in May 2005, when the government filed its original motion (which is still pending) to revoke Gianelli's release, detain him, and forfeit his bail. It is doubly clear in September 2005, now that Gianelli has violated both his original conditions of release and the additional conditions imposed in July 2005 when Gianelli was granted temporary release after his Achilles tendon injury.

It bears emphasis that the record demonstrates beyond any doubt that Gianelli was personally put on notice, orally and in writing, of the conditions of release and the consequences for violating any of them. The government's May 18, 2005 motion quotes at length from the transcript of the January 11, 2005 hearing, in support of this fact. Rather than repeat that information once again, we respectfully direct the Court's attention to our May 18, 2005 motion. We also direct the Court's attention to Trooper Russolillo's September 16, 2005 affidavit, which quotes from (and includes as an appendix) the transcript of the July 11, 2005 hearing.

### Mandatory Revocation of Release and Detention

The facts set forth above require the "mandatory revocation of release under 18 U.S.C. § 3148(b)," *United States v. Rivera*, 104 F.Supp.2d 159, 160 (D. Mass. 2000) (Gorton, J.), because probable cause exists to believe that Gianelli violated federal and state law while on release, and because Gianelli's actions -- despite the repeated and clear-cut warnings by this Court -- compel the finding that Gianelli "is unlikely to abide by any condition or combination of conditions of release," so that "[u]nder 18 U.S.C. § 3148(b), revocation of release and detention are therefore required." *Rivera*, 104 F.Supp.2d at 160.

<u>Absence of Release Conditions That Would Assure That Gianelli Will Not Flee and Will Not Pose A Danger to the Community</u>

Although the foregoing is, in itself, a complete and sufficient basis for revoking Gianelli's release and requiring his detention, the evidence set forth in the Russolillo affidavits also satisfies the alternative basis, under 18 U.S.C. § 3148(b)(2)(A), of demonstrating that --

> based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the [defendant] will not flee or pose a danger to the safety of any other person or the community.

With regard to dangerousness, the statute provides a rebuttable presumption:

> If there is probable cause to believe that, while on release, the [defendant] committed a Federal, State, or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the [defendant] will not pose a danger to the safety of any other person or the community. ...

In this regard, the legislative history of the Bail Reform Act of 1984 includes the following:

> [T]he language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community.

S.Rep. No. 225, 98th Cong., 1st Sess. 12 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3195. *See United States v. Millan*, 4 F.3d 1038, 1048 (2d Cir. 1993).

As the Second Circuit has held, a finding of dangerousness to the community can be appropriate even for non-violent, white-collar defendants. *See United States v. LaFontaine*, 210 F.3d 125, 134-35 (2d Cir. 2000) ("white-collar criminal with no connection to the mob," facing "no allegations of violence or threats aimed against witnesses," nonetheless posed a "danger to the community" justifying revocation of bail and pretrial detention, where the defendant had attempted to influence a witness).

Similarly, Gianelli's pretrial release has posed and continues to pose a danger to the community because Gianelli has continued, while on pretrial release, to engage in criminal activity -- including the felonies of racketeering (RICO), money laundering, operating illegal gambling businesses, and using interstate and foreign wire transmission facilities to transmit wagering information, in violation of 18 U.S.C. §§ 1962, 1956, 1955, 1084, and 2[4] -- to the detriment of the community.

Gianelli has displayed utter contempt for the lawful orders of this Court, and his conduct while on initial release and currently on temporary release demonstrates that he cannot overcome the presumption that "no condition or combination of conditions will assure that the [defendant] will not pose a danger to the safety of any other person or the community." 18 U.S.C. § 3148(b).

As the Second Circuit explained in *Millan*, 4 F.3d at 1048-49 (citations omitted):

> The ultimate statutory issue presented in this case is whether "there are conditions of release that will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." We conclude that there are not. The sort of electronic surveillance suggested by the defendants and approved by the district court can be circumvented. Home detention and electronic monitoring "at best 'elaborately replicate a detention facility without the confidence of security such a facility instills.'" If the government does not provide staff to monitor compliance extensively, "protection of the community would be left largely to the word of [the defendants] that [they] will obey the conditions." The appearance of [the defendants] at their forthcoming trial and the protection of the community can be assured only by continued detention.

Similarly, *see United States v. Tortora*, 922 F.2d 880, 886-88 (1st Cir. 1990):

---

[4] Gianelli's illegal gambling activities also violate state law, as charged in the superseding indictment.

> [T]he conditions imposed by the district court ... are admittedly elaborate and extensive[, b]ut they have an Achilles' heel: ... virtually all of them hinge on the defendants' good faith compliance. ...
>
> Consequently, we find that the conditions as a whole are flawed in that their success depends largely on the defendant's good faith -- or lack of it. ... Such a flaw takes on great significance where, as in this case, little about the defendant or his history suggests that good faith will be forthcoming. If past is prologue, then promises to hew the straight and narrow will mean next to nothing to this defendant. In our estimation, the conditions fail to offer an objectively reasonable assurance of safety to the community.

*Id.* at 886-87 (footnote omitted).

Further, no condition or combination of conditions of release that will assure that Gianelli will not flee. When Gianelli was released on in January 2005 on $250,000 bail, he was facing only five felony counts, all related to a November 13, 2003 arson. Now, however, Gianelli is charged in 311 counts of a 395-count superseding indictment, in which he faces trial for racketeering (RICO), money-laundering, and running an illegal gambling business, as well as the crimes from the original indictment.

Gianelli obviously has substantial incentive to flee, and there is no condition or combination of conditions of release that will assure his appearance. Defendant Arthur Gianelli apparently does not hold any substantial assets in his own name. With regard to the house at 420 Main Street, Lynnfield, Massachusetts, in which he lives, it is not owned by Arthur Gianelli, and Gianelli has already demonstrated -- by flouting his release conditions -- that he is willing to jeopardize his family's equity in the property. Home detention and electronic monitoring could provide notice -- after the fact -- that Gianelli had fled, but would not by themselves prevent him from fleeing.

Gianelli has clearly shown, by his flagrant disobedience of his release conditions, that his word to this Court is worthless.

### Revocation of Release, and Requirement of Pretrial Detention

Thus, given the fact and nature of Gianelli's violation of his release conditions, Section 3148(b) *requires* that Gianelli's release be revoked and that he be detained pending trial.

### Forfeiture of Bail

Rule 46(f) of the Federal Rules of Criminal Procedure *requires* forfeiture of bail if a condition of the bond is breached:

> The court must declare the bail forfeited if a condition of the bond is breached.

Rule 46(f)(1). While Rule 46(f)(2) and Rule 46(f)(4) provide, respectively, for setting aside or remitting, in whole or part, a bail forfeiture in certain circumstances, this Court should forfeit Gianelli's entire bail, given the explicit, repeated warnings in advance to Gianelli about the conditions, and Gianelli's virtually immediate, deliberate, and repeated violation of those conditions.

## CONCLUSION

For the foregoing reasons, defendant Arthur Gianelli's release should be revoked; he should be detained pending trial in this case; and his bail should be forfeited. A proposed Order, directing Gianelli to appear in Court to answer this motion, is attached.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

DATED: September 16, 2005

By: /s/ Michael L. Tabak
MICHAEL L. TABAK
FRED M. WYSHAK, JR.
Assistant U.S. Attorneys