UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No. 05-10003-NMG |
| | ) | |
| ARTHUR GIANELLI | ) | |
| | ) | |
| Defendant. | ) | |

**AFFIDAVIT OF PASQUALE F. RUSSOLILLO IN SUPPORT OF GOVERNMENT'S MOTION FOR (1) REVOCATION OF TEMPORARY RELEASE OF ARTHUR GIANELLI, PURSUANT TO 18 U.S.C. §3148(b), (2) PRETRIAL DETENTION OF GIANELLI, PURSUANT TO 18 U.S.C. § 3148(b), AND (3) FORFEITURE OF BAIL, PURSUANT TO RULE 46(f) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE**

I, Pasquale F. Russolillo, being duly sworn, state:

1.    I have been a Massachusetts State Police Trooper for more than ten years. For the past seven years, I have been assigned to the Special Service Section of the Massachusetts State Police (MSP). Prior to joining the MSP, I was a Police Officer for the City of Nashua, New Hampshire, for approximately five years. I have participated in numerous investigations, physical surveillances, undercover assignments, execution of search warrants, and arrests of people for violations of the Commonwealth's criminal laws. I have testified as a witness in the Courts of the Commonwealth and District Courts of the United States. I have participated for more than eighteen months in the investigation that has led to the instant superseding indictment.

2.    I make this affidavit in support of the government's motion for (1) revocation of the temporary release of defendant Arthur Gianelli, pursuant to 18 U.S.C. § 3148(b), (2) pretrial detention of Gianelli, pursuant to 18 U.S.C. § 3148(b), and (3) forfeiture of his bail, pursuant to Rule 46(f) of the Federal Rules of Criminal Procedure.

3.    I refer the Court to my affidavit of May 18, 2005, which I hereby reaffirm and incorporate by reference into the present affidavit. A copy is attached hereto as Exhibit A.[1]

Introduction

4.    Arthur Gianelli is a defendant in the pending indictment *United States v. Gianelli, et al.*, Criminal No. 05-10003-NMG, which charges Gianelli with racketeering, arson, and other crimes.

5.    After being arraigned on that indictment and released on bail, Gianelli was rearrested on May 18, 2005 for violating his conditions of release and bail, and was ordered detained pending a hearing on the government's motion for revocation of release, detention, and forfeiture of bail. The hearing on that motion has been postponed at the defendant's request.

6.    On July 6, 2005, shortly after rupturing his Achilles tendon, defendant Gianelli filed a motion for temporary release so that surgery on the tendon could be performed by his preferred surgeon and so that Gianelli could recuperate at home. Hon. Charles B. Swartwood, Chief United States Magistrate Judge, granted Gianelli's motion for temporary release.

7.    Chief Magistrate Judge Swartwood's July 6, 2005 Order provided, in part, that "Mrs. & Mrs. Gianelli shall consent to an Order permitting the Government to intercept and monitor all incoming and outgoing telephone calls," and "*There shall be no computers or cell phones in the residence* as long as Mr. Gianelli is recuperating from his surgery." (Emphasis added).

8.    On July 8, 2005, Hon. Nathaniel M. Gorton, United States District Judge, denied the government's motion to revoke the Chief Magistrate Judge's order, but imposed additional conditions. Judge Gorton's order specifically provided, *inter alia*, that (a) "Gianelli and his wife,

---

[1]  The May 18, 2005 affidavit was sealed by the Court and should remain under seal. Defendant Gianelli previously received a copy.

Mary Ann Gianelli, shall consent to an Order permitting the government to intercept and monitor all incoming and outgoing telephone calls"; (b) "Gianelli and his wife shall consent to permitting the government (including Massachusetts State Police working with the government) to search the house at any time of day or night to determine whether any condition of release has been violated"; and (c) "*There shall be no computers or cell phones in the residence while Gianelli is on release.*" (Emphasis added.)

9.    On July 20, 2005, following another hearing, Chief Magistrate Judge Swartwood issued a further order that reiterated the requirement that Gianelli "abide by all ... conditions of release ... that Judge Gorton imposed in his July 8, 2005 order," and added further conditions. The July 20, 2005 order, *inter alia*, specifically authorized "[t]he government (including Massachusetts State Police working with the government) ... to intercept and monitor all incoming and outgoing telephone calls occurring over any and all telephones and/or telephone lines utilized at the property at 420 Main Street, Lynnfield, Massachusetts, during the period of defendant Arthur Gianelli's temporary release from pretrial detention" and "to search [Gianelli's] house ... at any time of day or night, during the period of defendant Arthur Gianelli's temporary release from pretrial detention, to determine whether any condition of release has been violated."

10.    I am aware that before issuing the July 20, 2005 Order, Chief Magistrate Judge Swartwood held a hearing on July 11, 2005, which defendant Arthur Gianelli attended. I have read the transcript of that July 11, 2005 hearing (a copy of which is attached hereto as Exhibit B), in which the following exchange occurred, according to the transcript:

> THE COURT: All right. I guess what we're here, we're here for Mr. Gianelli's release from custody in accordance with Judge

Gorton's order which I have just read, and let me ask Mr. Tabak or Mr. Wyshak, do you have any questions concerning this order?

MR. TABAK:  The only minor question that I have, your Honor, is the part about the no cell phones and the no computers in the residence.  I presume that that would include on the whole property?

THE COURT:  Yeah, you mean if they were hiding them in the barn or something?

MR. TABAK:  In the garage or on the lawn or whatever.

THE COURT:  Yeah. Nah, yeah that, you understand what that means, right?

MR. EGBERT:  Yep. Actually--

THE COURT:  I mean people are going to be going out on the back porch, and they're going to have cell phones and all that kind of stuff, right?

MR. EGBERT:  No, but actually the kids asked if they could have their cell phones in the car, leave them in the car locked?  I mean--

THE COURT:  I mean I don't know a kid in the world that doesn't have a cell phone.  I guess that - just they're not supposed to be bringing them into the house.

MR. EGBERT:  That's well understood.

THE COURT:  Or bringing them anywhere where he has access to them.  And, you know, they've got to be careful.

MR. EGBERT:  And I'm going to have a long discussion with them about it.

THE COURT:  Because there's once – I mean, you don't think they're going to be watching.  They're going to be watching.  They're going to be in there looking.  You slip up once, and I don't care after that, you know, it's all over.  Okay.

* * *

MR. TABAK: Your Honor, we believe that that would create an issue on searches and so on. Since the Connollys live next door who are close relatives perhaps they could leave the cell phones over there.

THE COURT: Okay. That's good enough.

MR. EGBERT: Just let me check.

(Pause)

MR. EGBERT: Fine, Judge.

THE COURT: All right. That takes care of that.

11.    At the conclusion of the hearing (which also covered other conditions of release), the

Court addressed defendant Gianelli directly:

THE COURT: ... Mr. Gianelli have you had an opportunity to review Judge Gorton's order? No, you don't stand up.

THE DEFENDANT: Thank you, your Honor. Yes, I have.

THE COURT: All right. And do you need me to review it with you?

THE DEFENDANT: No, I don't, your Honor.

THE COURT: I don't think so. Do you understand it?

THE DEFENDANT: Yes, I do.

THE COURT: And do you agree to abide by it?

THE DEFENDANT: Yes, I do.

THE COURT: All right. Now look, if you violate any of these conditions, I mean, you've been through two hearings with two different judges, and they've somewhat come out by allowing you to go have this operation. If you violate any of these conditions then the

sympathy of the Court for any medical condition that you may have is going to very quickly evaporate and you're going to find yourself right back down in Wyatt. So stick to the conditions. You understand these conditions. Do you agree to abide by these conditions?

THE DEFENDANT: Yes, I do, your Honor.

THE COURT: And do you agree that you will make, take whatever efforts are necessary to make sure that other members of your family abide by these conditions?

THE DEFENDANT: Yes, I will.

THE COURT: As of course they apply to both members, okay?

THE DEFENDANT: Yes, your Honor. Yes, sir.

### The September 12, 2005 Search

12.    On September 12, 2005, I and other state and federal investigators went to defendant Gianelli's home, to perform a search pursuant to the Court Orders cited above.

13.    I and the other investigators had decided in advance to do a deliberately cursory search that night, and to return the following night for a more complete search.

14.    While we were in the house on September 12, 2005, we found a box for a cell phone, which was next to the desk in Gianelli's office.

15.    When the Gianellis saw that we had found the box, defendant Gianelli's wife, Mary Ann Gianelli, asserted to that she had just acquired the cell phone and that it was at her sister's house (next door).

<u>The September 13, 2005 Search</u>

16.     I participated in another, somewhat more extensive, search of defendant Gianelli's house on September 13, 2005, pursuant to the Court Orders described above.

17.     Toward the beginning of the September 13, 2005 search, I saw the empty cell phone box in the kitchen. Mary Ann Gianelli said that she had just purchased the cell phone and that it was at her sister's house, next door.

18.     However, when we searched the Gianelli house on September 13, 2005, we found a Motorola cell phone for which Cingular is the service provider. The cell phone's telephone number is 617-817-4010. The cell phone was being charged in the garage of Gianelli's house.

19.     The cell phone's memory reflected calls placed and received during the period August 17, 2005 through September 13, 2005.

20.     One outgoing call made with that cell phone was to 617-694-2467 on September 4, 2005 at 1:07 p.m.

21.     Subscriber records from Verizon Wireless show that 617-694-2467 is subscribed to by Don Saetti of Brookline.

22.     I have reason to believe that Don Saetti is an associate of defendant Joseph Yerardi.

23.     Attached hereto as Exhibit C is a copy of a letter from defendant Joseph Yerardi to defendant Arthur Gianelli. This letter was seized pursuant to search warrant from Gianelli's home on January 6, 2005 and was found on the top of Arthur Gianelli's desk, in his office (as reflected in the Inventory, under Item #11).

24.     From its contents, it appears that Yerardi sent the letter to Gianelli during late 2004.

25.    In this letter, Yerardi directed Gianelli to "Call Donnie, tell him also I left. Could he please change address on USA Today please. Hm 617-232-1768, Cell 617-694-2467."

26.    The 617-817-4010 Cingular cell phone that was found at Gianelli's house on September 13, 2005 also shows that it was used to make an outgoing phone call on September 3, 2005 at 10:05 a.m. to 781-324-9791.

27.    I am aware from prior investigation and from a test call that I made on September 15, 2005 that 781-324-9791 is subscribed to by the East Side Athletic Club in Malden.

28.    I am aware from prior court-authorized electronic surveillance that during the period encompassed by the Indictment in this case, defendants Arthur Gianelli and Dennis Albertelli called 781-324-9791 and spoke there with John Croshaw, who was an agent in Gianelli's illegal sports betting business.

29.    I am also aware from prior investigation that during the period encompassed by the Indictment in this case, defendant Gianelli had illegally-operated gaming machines in use at the East Side Athletic Club in Malden.

30.    The 617-817-4010 Cingular cell phone that was found at Gianelli's house on September 13, 2005 also shows that it was used to make an outgoing phone call on September 13, 2005 at 11:57 a.m. to a particular number.

31.    On September 14, 2005, I identified the subscriber to that number and called him. He informed me that he is involved with the vending machine business within Massachusetts. He stated that on September 13, 2005, he received a telephone call from Mary Ann Gianelli who told him that she would "appreciate it if you would just back off from our accounts."

32.     During the September 13, 2005 search at defendant Gianelli's house, we found a letter hidden under a rug in defendant Gianelli's office. The envelope was postmarked August 30, 2005 and was addressed to Arthur Gianelli. The envelope had been opened, and the back of the envelope contained handwritten notations including, among others, a particular address in Salem, New Hampshire. Copies of the envelope (front and back), the letter, and an attached post-it are attached hereto as Exhibit D.

33.     I am aware from prior investigation that that particular address in Salem, New Hampshire is the home address of an individual who, between approximately June 2004 and January 2005, illegally laundered approximately $100,000 in cash for defendant Gianelli, as charged in the pending Indictment.

34.     The only item inside the envelope was a letter in what I believe to be Gianelli's handwriting. Attached to the letter was a post-it which is discussed below. Although the letter begins, "Hello my friend," it is obvious from the contents (as excerpted below) that this is a letter that defendant Arthur Gianelli wrote to his codefendant Dennis Albertelli during late July 2005 (after a particular state gambling indictment had been returned) or during August 2005.

35.     In the letter, Gianelli expressed the hope that Albertelli's "summer is going as well as it can be under the circumstances. I know the restrictions make it difficult for you and Giesle [sic]."

36.     As the Court is aware, defendant Dennis Albertelli's wife is his codefendant in this Indictment, Gisele Albertelli.

37.    The envelope contained the printed return address of attorney Richard M. Egbert's office. The post-it note said:

8/30/05

Arthur -

Sorry for the delay in returning this to you. It was mixed in with some other letters from you.

In any event, it never left this office. Please let me know if you need anything.

Thanks,
Michele

38.    As set forth below, it appears that defendant Gianelli's letter to codefendant Albertelli was giving instructions about the ongoing and future commission of crimes, including operating an illegal gambling business and illegally operating gaming machines.

39.    On September 15, 2005, Internal Revenue Service Criminal Investigation Special Agent Sandra Lemanski and I went to attorney Egbert's law office and requested the opportunity to interview Michele, who was present. We sought to learn the facts and circumstances surrounding this letter. Among other things, we sought to determine whether defendant Gianelli had sought to have this letter sent to Albertelli by the law office, in an attempt by Gianelli to prevent law enforcement from learning that Gianelli was communicating directly with Albertelli and, more particularly, was committing and planning ongoing and future criminal acts.

40.    Our request to interview Michele was denied.

41.    In part, Gianelli wrote in the above-described letter (to Albertelli):

As far as "clutch," he must get Inc. Co. in Mass. This is a necesity [sic] for things in the future if he wants to continue. Take the costs

out of the monthly money.  Also, from now on let <u>him</u> mail xpress [*sic*] overnight to:

>    Marjorie Moore
>    [Address omitted from this Affidavit]

Return address will be:

>    Attorney Michael S. Marino
>    @ Truelove, Dee, & Chase LLP
>    268 Summer St.
>    Boston, MA 02110

Have him include everything he did for month including slips with numbers and receipts and expenses.  He should also get some spare parts.  Play to Win in N.H. can help him with almost anything.  If he can give me an address for him I will ship him all stuff that I have.  Also, make sure there are no records or duplicate slips kept for more than 1 month.  I want to take you out of the equation with him, unless it's an emergency.  He should be able to handle this directly.

As far as the condo goes, if Wyshak refuses to let you sell and hold any proceeds in an escrow interest bearing acct. until there is a decision, you then <u>must</u> rent it.  I will make up any monies that are necessary.  You can't let them forclose [*sic*] ....

42.    I believe that Marjorie Moore is Mary Ann Gianelli's mother.

43.    I am aware that attorney Michael Marino met with defendant Gianelli at Gianelli's house on August 4, 2005.  As far as I know, attorney Marino has never represented defendant Gianelli in this criminal case and is not professionally associated with Mr. Egbert.

44.    I am aware from confidential informants that the Play to Win company of New Hampshire, provides video poker machines.

45.    I respectfully submit that it is apparent that defendant Gianelli has continued his illegal sports betting business and illegal gaming machine business, and has actively been trying to

conceal those crimes -- and concomitant violation of his conditions of release -- from law enforcement and from this Court.

46.    From the foregoing, I  respectfully submit that it is clear that defendant Arthur Gianelli has knowingly and willfully violated the conditions of release that this Court imposed.

Tpr. Pasquale F. Russolillo
Massachusetts State Police

On this 16th day of September, 2005, before me, the undersigned notary public, personally appeared Pasquale F. Russolillo, proved to me through satisfactory evidence of identification, which were his credentials from the Massachusetts State Police, to be the person whose name is signed on the preceding document in my presence.

(official signature and seal of notary)

My commission expires _2\16\07_

Notary Public

**Exhibit A**
**Under Seal**



```
          UNITED STATES DISTRICT COURT
          DISTRICT OF MASSACHUSETTS



                                  Criminal No. 05-10003-NMG

UNITED STATES OF AMERICA        .
          Plaintiff             .
                                .
                                .
               v.               .
                                .
                                .
ARTHUR GIANELLI, et al          .
          Defendants            .
                                .
. . . . . . . . . . . . . . .

               TRANSCRIPT OF HEARING
     BEFORE THE HONORABLE CHARLES B. SWARTWOOD, III
            UNITED STATES MAGISTRATE JUDGE
                 HELD JULY 11, 2005

APPEARANCES:

For the defendant Arthur Gianelli:  Richard M. Egbert, Esquire,
99 Summer Street, Ste. 1800, Boston, MA  02110, (617) 737-8222.

For the government:  Michael Tabak, Esquire, United States
Attorney's Office, One Courthouse Way, Ste. 9200, Boston, MA
02210, (617) 748-9200.




Court Reporter:


Proceedings recorded by digital sound recording, transcript
produced by transcription service.
```

*MARYANN V. YOUNG*
Certified Court Transcriber
240 Chestnut Street
Wrentham, Massachusetts 02093
(508) 384-2003

2

1                          **I N D E X**

2   Proceedings                                              3

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Maryann V. Young*
**Certified Court Transcriber**
**(508) 384-2003**

3

1      <u>P R O C E E D I N G S</u>

2          (Court called into session)

3          THE CLERK:  The Honorable Charles B. Swartwood, III

4   presiding.  Today's date is July 11, 2005 in the case of U.S.A.

5   v. Arthur Gianelli, Criminal Action No. 05-10003-NMG.  Counsel,

6   please identify yourself for the record.

7          MR. TABAK:  Michael Tabak and Fred Wyshak for the

8   government.  Good morning, your Honor.

9          THE COURT:  Good morning.

10         MR. EGBERT:  Good morning, your Honor, Richard Egbert

11   for Mr. Gianelli who's present.

12         THE COURT:  And good morning, Mr. Egbert.  Good

13   morning, Mr. Gianelli.

14         THE DEFENDANT:  Good morning, your Honor.

15         THE COURT:  All right.  I guess what we're here,

16   we're here for Mr. Gianelli's release from custody in

17   accordance with Judge Gorton's order which I have just read,

18   and let me ask Mr. Tabak or Mr. Wyshak, do you have any

19   questions concerning this order?

20         MR. TABAK:  The only minor question that I have, your

21   Honor, is the part about the no cell phones and the no

22   computers in the residence.  I presume that that would include

23   on the whole property?

24         THE COURT:  Yeah, you mean if they were hiding them

25   in the barn or something?

4

1          MR. TABAK:  In the garage or on the lawn or

2     whatever.

3          THE COURT:  Yeah.  Nah, yeah that, you understand

4     what that means, right?

5          MR. EGBERT:  Yep.  Actually--

6          THE COURT:  I mean people are going to be going out

7     on the back porch, and they're going to have cell phones and

8     all that kind of stuff, right?

9          MR. EGBERT:  No, but actually the kids asked if they

10    could have their cell phones in the car, leave them in the car

11    locked?  I mean--

12         THE COURT:  I mean I don't know a kid in the world

13    that doesn't have a cell phone.  I guess that - just they're

14    not supposed to be bringing them into the house.

15         MR. EGBERT:  That's well understood.

16         THE COURT:  Or bringing them anywhere where he has

17    access to them.  And, you know, they've got to be careful.

18         MR. EGBERT:  And I'm going to have a long discussion

19    with them about it.

20         THE COURT:  Because there's once - I mean, you don't

21    think they're going to be watching.  They're going to be

22    watching.  They're going to be in there looking.  You slip up

23    once, and I don't care after that, you know, it's all over.

24    Okay.

25         MR. EGBERT:  I have a couple of issues, Judge.

5

1          THE COURT:  Well, no, wait.

2          MR. EGBERT:  Oh, I'm sorry.

3          THE COURT:  Let me hear from Mr. Tabak.

4          MR. TABAK:  Your Honor, we believe that that would

5    create an issue on searches and so on.  Since the Connollys

6    live next door who are close relatives perhaps they could leave

7    the cell phones over there.

8          THE COURT:  Okay.  That's good enough.

9          MR. EGBERT:  Just let me check.

10   (Pause)

11         MR. EGBERT:  Fine, Judge.

12         THE COURT:  All right.  That takes care of that.

13   Now, you have questions, go ahead.

14         MR. EGBERT:  Couple.  First, I spoke with Mr. O'Brien

15   and we both have these questions.  He's going to the doctor

16   tomorrow at 9:30 for his appointment.  It's expected that

17   there'll be an MRI.  I don't think you can have the bracelet on

18   during an MRI so--

19         THE COURT:  Is that right?

20         PRETRIAL SERVICES:  Correct, Judge.  We can, I've

21   since got a better interpretation, we can accommodate the

22   defendant each and every time he has an appointment.  We can

23   take it on, take it off and generally--

24         THE COURT:  How do you do that?

25         PRETRIAL SERVICES:  We'll have to make a specific

6

1   appointment with him at his residence or pretrial can simply

2   take it off before his doctor's office.

3           THE COURT:  Can you meet him at the hospital?

4           PRETRIAL SERVICES:  Potentially.

5           THE COURT:  What hospital?  Oh, we're talking about

6   some hospital in--

7           MR. EGBERT:  Melrose in Wakefield.  Right?

8           PRETRIAL SERVICES:  Most likely at his residence or

9   we can permit him to take it off.

10          THE COURT:  Is it easier for you to go to the

11  residence and do it?

12          PRETRIAL SERVICES:  I think so.

13          THE COURT:  Okay.

14          MR. EGBERT:  Okay, whatever.  He asked me to clear it

15  with the Court, whatever so.

16          THE COURT:  Yeah.  He got - whatever he wants to do

17  to accommodate the situation he'll do it.

18          MR. EGBERT:  Great.  Two, the order doesn't talk

19  about lawyers.

20          THE COURT:  I'm sorry?

21          MR. EGBERT:  The order of Judge Gorton does not talk

22  about lawyers seeing Mr. Gianelli there.  I'm assuming that the

23  order does not want Mr. Gianelli coming to lawyers' offices

24  so--

25          THE COURT:  No.  Lawyers can go see him.

7

1            MR. EGBERT:  So his lawyers can go see him?

2            THE COURT:  Absolutely.

3            MR. EGBERT:  Okay.  And members of my staff, also?

4            THE COURT:  Sure.

5            MR. EGBERT:  And lastly, your Honor, I submitted this

6    list last week of proposed visitors.  The government got that

7    on Friday.  I've given it to pretrial.  The relationships--

8            MR. TABAK:  We got this on Friday.

9            MR. EGBERT:  -- are listed there, and I would ask

10   that this be approved as of now.

11           THE COURT:  Well, let me hear from Mr. Tabak.

12           MR. TABAK:  Your Honor, we have no objection to one

13   through 11.  We don't expect to have an objection to 12 through

14   16, but we would ask that we be given some identifying

15   information such as dates of birth just so we can verify that

16   we don't have any problem with them.

17           THE COURT:  Okay.  I assume - these are friends of

18   the kids?

19           MR. EGBERT:  Yes, your Honor.

20           THE COURT:  What are we talking about, 14, 12, 13,

21   how old are they?

22           MR. EGBERT:  20 and 21.

23           THE COURT:  Oh, 20 and 21.

24           MR. EGBERT:  Yeah.

25           THE COURT:  I mean - well, how about this - how old

8

1  is Tim Petty?

2         UNIDENTIFIED:  21.

3         THE COURT:  Any problem with that?

4         MR. TABAK:  Well, we would just ask if we can have

5  some identifying information so we can run rap sheets and make

6  sure we don't have any issues.  We don't expect to have any

7  issues.

8         THE COURT:  All right.  All right.  This list is

9  approved with a proviso that if the government discovers that

10 any one of these people has a record then they can bring it

11 before me and most likely I will exclude that person.  Okay?

12 Do we have any other problems?

13        MR. EGBERT:  I think that covers it, Judge.

14        THE COURT:  All right.  Anything further?

15        MR. TABAK:  Is your Honor requiring that they provide

16 dates of birth for those last four people, five people?

17        THE COURT:  Yeah, sure, so that they can do -

18 everybody knows what you're going to do.  You're going to run

19 it, and you need the date of birth so that's easy, and the

20 name, all right.  Okay.

21        Mr. Gianelli have you had an opportunity to review

22 Judge Gorton's order?  No, you don't stand up.

23        THE DEFENDANT:  Thank you, your Honor.  Yes, I have.

24        THE COURT:  All right.  And do you need me to review

25 it with you?

9

1          THE DEFENDANT:  No, I don't, your Honor.

2          THE COURT:  I don't think so.  Do you understand it?

3          THE DEFENDANT:  Yes, I do.

4          THE COURT:  And do you agree to abide by it?

5          THE DEFENDANT:  Yes, I do.

6          THE COURT:  All right.  Now look, if you violate any

7    of these conditions, I mean, you've been through two hearings

8    with two different judges, and they've somewhat come out by

9    allowing you to go have this operation.  If you violate any of

10   these conditions then the sympathy of the Court for any medical

11   condition that you may have is going to very quickly evaporate

12   and you're going to find yourself right back down in Wyatt.  So

13   stick to the conditions.  You understand these conditions.  Do

14   you agree to abide by these conditions?

15         THE DEFENDANT:  Yes, I do, your Honor.

16         THE COURT:  And do you agree that you will make, take

17   whatever efforts are necessary to make sure that other members

18   of your family abide by these conditions?

19         THE DEFENDANT:  Yes, I will.

20         THE COURT:  As of course they apply to both members,

21   okay?

22         THE DEFENDANT:  Yes, your Honor.  Yes, sir.

23         THE COURT:  Anything further, Mr. Tabak?

24         MR. TABAK:  Is the Court going to prepare the two

25   orders that were referred to, the one about monitoring the

10

1   phone calls and about access to medical records?

2         THE COURT:   You're going to and I'm going to sign

3   them.  All right?

4         MR. TABAK:   Yes.  And the only other issue, your

5   Honor, we were scheduled for this Thursday to have the--

6         THE COURT:   Yeah, I would think that's off, right--

7         MR. EGBERT:   I assume so.

8         THE COURT:   -- till further order of the Court--

9         MR. EGBERT:   Right.

10        THE COURT:   -- or a motion by the parties.  All

11  right?

12        MR. TABAK:   What are you thinking about, Judge, in

13  terms of scheduling that hearing?  Two weeks?

14        THE COURT:   Well--

15        MR. TABAK:   Three weeks?  Or--

16        THE COURT:   No.  It would seem to me, quite frankly,

17  from my limited, not medical experience but experience with

18  friends who've been through this that they're in that cast if

19  that's what happens, for a long period of time and I would

20  think that it's, it would, when he's released from the cast and

21  the cast comes off then I think he comes back to court.

22        MR. TABAK:   So are we talking September?

23        THE COURT:   Well, I don't know.

24        MR. TABAK:   August is just difficult in terms of

25  scheduling so.

11

1       THE COURT:  Well, I think we're talking September.

2   All right.  And, Mr. Tabak, you'll prepare those orders.

3       MR. TABAK:  Yes, your Honor.

4       THE COURT:  Okay.

5       MR. EGBERT:  Just - I'll see those orders before

6   they're submitted to the court?

7       THE COURT:  Yeah, sure.  Send them over to him.  All

8   right.  You're not going to fight him on an order I'll tell you

9   that.

10       MR. EGBERT:  No, I just want to see it.

11       THE COURT:  Because he'll submit it to me, and if you

12   don't like it, then you put a letter along with it--

13       MR. EGBERT:  Right, that's--

14       THE COURT:  -- what you don't like about it and then

15   I'll sign what I think is appropriate.

16       MR. EGBERT:  Right.  That's why I just want to see it

17   before it's submitted.

18       THE COURT:  Yep, that's not a problem.  All right.

19   Anything further, Mr. Tabak?

20       MR. TABAK:  No, your Honor.

21       THE COURT:  Okay.  Anything further, Mr. Egbert?

22       MR. EGBERT:  No, your Honor.

23       THE COURT:  All right.  I'll prepare those orders.

24   This is an order of the district judge, so this is in effect

25   and Mr. Gianelli you may now be released by the U.S. marshals

12

1    downstairs.  And you want to see him, Mr. O'Brien?

2              PRETRIAL SERVICES:  I do, Judge.

3              THE COURT:  And then you work out with Mr. O'Brien

4    the schedule for taking the thing off so you can have the

5    appropriate x-rays.  All right.  Okay.  Court is in recess.

6              MR. EGBERT:  Thank you, Judge.

7    //

8    //

9    //

10   //

11   //

12   //

13   //

14   //

15   //

16   //

17   //

18   //

19   //

20   //

21   //

22   //

23   //

24   //

13

## CERTIFICATION

I, Maryann V. Young, court approved transcriber, certify that the foregoing is a correct transcript from the official digital sound recording of the proceedings in the above-entitled matter.

_____                September 11, 2005

Maryann V. Young



I hope all is as well as can be and remember never
ever give in or give up.  You do what _you_, not others
feel is best for you as well as family

Again they told me I am on Air Lift - I need
a few things done as well as messages please —
because I am unable to do on my own

1)    J Y - 16036038
      FCI McKean
      PO Box 8000
      Bradford PA 16701

2) Could you please send as I requested for commissary
in last letter — so when get there be able to
buy cloths - food - call on phone
(If could over night postal money order please)

2)a   Also please change address to McKean
      for Globe + Herald — and make sure please send
      me Sundays edition also

3) Call Neal please tell him I left    Home 617-965-6364
and could he please change address   wk   617-332-2400
on wall street Journal                cell  617-571-0600

4) Call Donnie tell him also I left could
he please change address on USA today please HM 617-232-1768
                                              cell 617-694-2467

5) Could please call Patti and tell her I left
and could she change address on magizines
                          HM  617-969-5015
                          cell  617-388-4005
                          wk   617-722-6200 x180

6) Also I know I asked your as well as boys for help Christmas —
but if could please send a birthday card to my dad   CEJ
birthday Dec 27 (88)                                  Thank You

PS Please do not forget your PAL - Ice Cream Sunday  XL
take care of Yourself and family - Merry Christmas, Happy New Year



# Essex County Correctional Facility

## Inmate Telephone System Number Request Form



INMATE NAME:_____  INMATE ID#_____

BOOKING NO._____

| LANGUAGE PREFERENCE |
| ENGLISH     SPANISH |

INMATE SIGNATURE:_____  DATE:_____

| Add (A) Deleted (D) | Name of called party | Relationship | Area Code | Telephone Number |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

THE FOLLOWING (APPROVED) ATTORNIES AND PRIVILEGED NUMBERS WILL NOT BE RECORDED

| Add (A) Deleted (D) | Name of called party | Relationship | Area Code | Telephone Number |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Your acceptance of a PIN and use of inmate telephones shall be deemed as consent to the conditions and restrictions placed upon inmate telephone calls, including call monitoring, recording and call detail.

## * ATTENTION *

ANY INMATE PUTTING TELEPHONE NUMBERS THAT ARE NOT ATTORNEYS UNDER THE ATTORNEY PART OF THIS FORM WILL BE D-BOARDED AS WELL AS LOSE THEIR PHONE PRIVILEGES FOR THIRTY DAYS.

## * ATENCION *

CUAL QUIER PRESO QUE PONGA UN NUMERODE TELEFONO QUE NO SEA DE ABOGADO EN LA PARTE CORRESPONDIENTE AL ABOGADO DE ESTE FORMULARIO SERA DISCIPLINADO (D-BOARD) IGUAL MENTE PERDERAN SU PRIVILEGIOS DE HACER LLAMADAS POR TREINTA DIAS.

| REVIEWED BY UNIT STAFF MEMBER (NAME AND SIGNATURE): | DATE: |
|---|---|

White - Telecommunication

Yellow - Inmate

E-51



Law Offices of
Richard M. Egbert
99 Summer Street
Suite 1800
Boston, Massachusetts 02110

BOSTON MA 021
31 AUG 2005 PM
14 1
AUG30'05
M.A.

H METER 565897

Arthur Gianelli
420 Main Street
Lynnfield, MA 01940

01940-2559



8/30/05

Hello Arthur -

Sorry for the delay in returning this to you. It was mixed in with some other letters from you. In any event, it never left this office. Please let me know if you need anything.

Thanks,
Michele

hear more. I'll let you know. Don't panic, the fight is just beggining. They'll be alot of ups and downs before this is finished. Just stay focused and don't be fooled.

As far as "clutch", he must get Inc. Co. in Mass. this is a necesity for things in the future if he wants to continue. Take the costs out of the monthly money. Also, from k now on let him mail xpress overnight to:

MARJORIE MOORE
251 WILLIAM ST
STONEHAM, MA. 02180

Return address will be:

Hello my friend,

Hope your summer is going as well as it can be under the circumstances. I know the restrictions make it difficult for you and Kiesle. Maybe, those little league games you used to bet on is the answer. The way of the future. Anyhow, thank-you for everything.

I'm trying to get some information on those recent indictments. It appears to me, to be an attempt by the government to get some corroborating evidence against ~~us~~. When I hear more I'll let you know. Don't panic, the fight is just beggining. They'll be alot of ups and downs before this is finished. Just stay focused and don't be fooled.

As far as "clutch", he must get Ins. Co. in Mass. this is a necesity for things in the future if he wants to continue. Take the costs out of the monthly money. Also, from now on let him mail xpress overnight to:

MARJORIE HOWE
251 WILLIAM ST
STONEHAM, MA. 07180

Return address will be:

ATTORNEY MICHAEL S. MARINO
C TRUELOVE, DEE, & CHASE LLP.
268 SUMMER ST.
BOSTON, MA. 02110

Have him include everything he
did for month including slips
with numbers and reciepts and
expenses. He should also get
some spare part. Ray to Ned
in N.H. can help him with
almost anything. If he can
give me an address for him I
will ship him all stuff that
I have. Also, make sure there
are no records or duplicate
slips kept for more than 1
month. I want to take you out
of the equation with him, unless
its an emergency. He should be
able to handle this directly.
            As far as the condo
goes, if Wyshak refuses to let
you sell and hold any proceeds
in a escrow interest bearing acct.
until there is a decision, you
then must rent it. I will make
up any monies that are
necessary. You can't let them
foreclose for a couple of reasons.
Its stupid and makes no sence
to do that. Write and let
me know if there are any
concerns that I may be unaware
of. I spoke to Marino, he said,

that he finally spoke to that 1st lawyer he recommended for the condo. He said, you spooked him and he got some bad vibes from you. He sounds like he should be a witch Dr. instead of a R.E. attorney! Please, lets get this done in the best way possible for you and all. I understand all your concerns and I certainly do not want to burden you or cause you anymore trouble. So, if we can just wrap up a couple of these things. You can then stay focused on what you need to do for you and family.

Remember, we must be greatful for what we have and not sorry for what we don't. So, hang in there, keep your chin up and keep punching. We'll all get through this, and can minimize damage if we can stick together. As always, give my best to Gisele.

Take care and God Bless,

Arthur

P.S.
Maybe, a plant will fall on your friend Marc O'Connor's head when he's at that table in Saratoga this year!