# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

```
_____
                              )
UNITED STATES OF AMERICA,      )
                              )
          v.                   )      CRIMINAL ACTION
                              )      NO. 05-10003-NMG
ARTHUR GIANELLI,               )
          Defendants,          )
_____)
```

### MEMORANDUM AND ORDER ON GOVERNMENT'S MOTION FOR REVOCATION OF ARTHUR GIANELLI'S RELEASE ON CONDITIONS
### October 3, 2005

**SWARTWOOD, C.M.J.**

## I.  Background

On January 5, 2005, an Indictment was returned charging Arthur Gianelli ("Mr. Gianelli") and others, in Count One, with conspiracy to commit various illegal activity, in violation of 18 U.S.C. §371; in Count Two, with arson, in violation of 18 U.S.C. §844(i) and aiding and abetting, in violation of 18 U.S.C. §2; in Count Three, with conspiracy to commit extortion, in violation of 18 U.S.C. §1951; in Count Four, with attempted extortion, in violation of 18 U.S.C. §1951 and aiding and abetting, in violation of 18 U.S.C. §2; and in Count Five, with interstate travel in aid of a racketeering enterprise, in violation of 18 U.S.C. §1952(a)(3) and aiding and abetting, in violation of 18 U.S.C. §2.

Mr. Gianelli was arrested and initially appeared in this Court on January 7, 2005. At that initial appearance in connection with the original Indictment, the Government moved for detention on the grounds of dangerousness and risk of flight.

On January 11, 2005, after a hearing, I ordered that Mr. Gianelli be released on conditions.

On April 7. 2005, a Superseding Indictment was returned, charging Mr. Gianelli and others, with racketeering, racketeering conspiracy, illegal gambling business, illegal use of wire communication facilities, money laundering, conspiracy to commit arson, arson, conspiracy to commit extortion, attempt to commit extortion and interstate travel and aid of racketeering.

At Mr. Gianelli's arraignment on April 21, 2005 in connection with the Superseding Indictment, I continued Mr. Gianelli's release on the conditions previously imposed on January 11, 2005, in connection with the original Indictment.

On May 18, 2005, the Government filed a motion to revoke Mr. Gianelli's release for violation of his conditions of release (Docket No. 93). I issued a warrant for Mr. Gianelli's arrest and on May 19, 2005, Mr. Gianelli was arrested and appeared before me for a revocation hearing. Because of the unavailability of Mr. Gianelli's counsel, Mr. Gianelli's revocation hearing was continued to a date convenient for counsel. Mr. Gianelli's revocation hearing was then continued a number of times during the balance of May and June and was then scheduled for a date in July. However,

before Mr. Gianelli's revocation hearing could be held, he ruptured his achilles tendon while in custody at Wyatt Detention Center. Mr. Gianelli's counsel filed a motion requesting that Mr. Gianelli be temporarily released from custody in order that he may have a doctor of his choice perform surgery to repair his achilles tendon. After a hearing on July 6, 2005, I issued an Order allowing Mr. Gianelli to be temporarily released from custody for medical reasons. My Order was then appealed to Judge Gorton, who affirmed my Order releasing Mr. Gianelli, but added further conditions for his release. On July 11, 2005, I temporarily released Mr. Gianelli for surgery on his achilles tendon and on July 20, 2005, issued an Order incorporating my original conditions of release, Judge Gorton's modified conditions of release and several additional conditions of release which were all discussed with Mr. Gianelli and members of his family when I released him on July 11, 2005.

On September 16, 2005, the Government filed a second motion for revocation of Mr. Gianelli's release for breach of his conditions imposed for his temporary release for medical reasons (Docket No. 123). I issued a warrant for Mr. Gianelli's arrest and on September 19, 2005, he appeared before me with a lawyer from his counsel's office (Mr. Gianelli's counsel was unavailable). At that time, I ordered that Mr. Gianelli remain in custody pending a revocation hearing to be held as soon as his counsel was available. Furthermore, I made it clear, when I set the date for Mr. Gianelli's revocation hearing, that the parties should be prepared

3

to address the Government's May 18, 2005 motion for revocation of Mr. Gianelli for violation of his original conditions of release and its September 16, 2005 motion for revocation of Mr. Gianelli for violation of his temporary release conditions.

On September 23 and September 27, 2005, a consolidated hearing was held in connection with the Government's first motion for revocation of Mr. Gianelli's release, the Government's second motion for revocation of Mr. Gianelli's temporary release for medical reasons and whether or not there was a medical necessity for Mr. Gianelli to receive further treatment from his doctor following his surgery.

At the conclusion of the consolidated revocation hearing on September 27, 2005, I found that there was no medical need for Mr. Gianelli to continue his temporary release for medical reasons, that the violations of Mr. Gianelli's breach of conditions of his temporary release for medical reasons were not sufficient for revocation of his temporary release, but that the Government's original motion for revocation of Mr. Gianelli's release should be allowed as there had been significant violations of his conditions of release prior to his temporary release for medical reasons.

## II.  Findings of Fact

### A.  Mr. Gianelli's Temporary Release For Medical Reasons

1.   On July 12, 2005, Mr. Gianelli presented himself to Mark M. Berenson, M.D. for evaluation and treatment of his ruptured achilles tendon.  Dr. Berenson concluded, at that initial

examination, that Mr. Gianelli's ruptured tendon should be repaired under surgical day care.  On July 15, 2005, Dr. Berenson repaired Mr. Gianelli's ruptured tendon and performed follow-up care on July 27, 2005, August 10, 2005 and August 31, 2005.  On this later date, Dr. Berenson concluded that Mr. Gianelli's achilles tendon appeared to be intact and stable.  Dr. Berenson put a short, partial weight bearing cast on Mr. Gianelli's leg and stated that the cast should be removed in approximately three weeks (September 21, 2005), and a removable, short leg, splint cast then applied to be followed by therapy.  Def's Ex. A.

2.    The Government has proffered that Wyatt Detention Center is willing and able to take Mr. Gianelli to a Rhode Island Hospital for removal of his cast and for the application of a removable, short leg, splint cast.  Additionally, Mr. Gianelli will be able to receive proper therapy following removal of his present cast.  Therefore, I conclude that Mr. Gianelli's medical condition has come to an end result and can be properly treated while being detained at the Wyatt Detention Center.  In other words, there is no medical necessity to justify Mr. Gianelli's continued temporary release for medical reasons.

B.    Mr. Gianelli's Violation Of His Temporary Release On Conditions

One of the primary conditions imposed for Mr. Gianelli temporary release for medical reasons was that he not continue his alleged illegal activities, that he not have  any contact with

Joseph Yerardi (a co-defendant) and that neither he nor any member of his family were to have cell phones or computers at the residence or its appurtenant structures, e.g., the garage. The Government alleges that Mr. Gianelli violated his temporary conditions of release as follows:

1.    having a cell phone at his residence which was discovered in the garage as a result of a search of his residence on September 13, 2005;

2.    that the cell phone was used for illegal activities; and

3.    that Mr. Gianelli was continuing his illegal gaming business by sending a letter of instructions to a co-defendant.

I make the following findings with respect to these allegations:

1.    Although the presence of a cell phone being charged in Mr. Gianelli's garage is a technical violation of his conditions of temporary release, I do not find it to be a sufficient violation to revoke his release.  I find that Mrs. Gianelli's original cell phone was destroyed and that she ordered a new cell phone that was assigned the same number as her destroyed cell phone.  Mrs. Gianelli's new cell phone was activated on August 15, 2005 and was inadvertently left by her in the garage, where it was being charged.  The Government has submitted a detailed list of the calls made from this cell phone and although there is great speculation concerning some of these calls, there is no evidence that any of these calls were made by Mr. Gianelli or that any of these calls

6

were made in furtherance of Mr. Gianelli's alleged illegal activities. I decline to revoke Ms. Gianelli's temporary release for this technical violation.

2.    A letter from Ms. Gianelli to a co-defendant, prepared sometime after Mr. Gianelli's temporary release, concerning advice in connection with on-going illegal activities was found under a rug in Mr. Gianelli's office at the time of a search on September 13, 2005. See Gov't Ex. 18. Although the letter outlines Mr. Gianelli's thoughts concerning the continuation of his illegal business, I find, from a note attached to this letter, that it was never sent or received by the co-defendant. Furthermore, there is no other evidence that Mr. Gianelli ever communicated the ideas he expressed in the letter to his co-defendant or anyone else. While, as discussed later in this memorandum, the letter is a cause for concern, its mere existence is insufficient to support a finding that Mr. Gianelli violated his temporary conditions of release by continuing his criminal activities.

3.    Scraps of paper were also found in Mr. Gianelli's home office at the time of the search on September 13, 2005. Govt. Ex. 17 and Def's Ex. 17A. These scraps of paper are undecipherable and are not evidence of any illegal activity.

Therefore, I conclude that these findings are not sufficient for violating Mr. Gianelli's temporary release for medical reasons.

C.    Findings Of Fact Relative To The Government's Original Motion For Revocation Of Mr. Gianelli's Release

1.   On January 11, 2005, I released Mr. Gianelli on the following relevant conditions:

> (1)   The Defendant shall not commit any offense in violation of federal, state or local law while on release in this case.
>
> ....
>
> (k)   Avoid all contact, directly or indirectly with any persons who are or who may become a victim or potential witness in the subject investigation or prosecution, including, but not limited to: . . . Joseph Yerardi.

Govt. Ex. 3.

2.   On Sunday, January 16, 2005, at approximately 11:35 a.m., Deputy United States Marshal Frank Dawson, who knew Mr. Gianelli by sight, observed Mr. Gianelli using a pay-phone on the outside wall of the Li'l Peach Store, in Wakefield, Massachusetts, which is close to Mr. Gianelli's residence.   After Mr. Gianelli left the pay-phone, Deputy United States Marshal Dawson obtained the number of the pay-phone used by Mr. Gianelli and made a call from that phone to further identify the phone used by Mr. Gianelli.   Govt. Ex. 11.

3.   The Government subsequently obtained records of telephone calls made from the Li'l Peach Store pay-phone and determined from video surveillance and toll record that Mr. Gianelli used that pay-phone on January 16, January 26 and February 3 and 5, 2005.   Govt. Exs. 5 & 6.   Toll records for that telephone show a number of calls made to a particular number on January 16, 2005, when U.S. Deputy

Marshal Dawson observed Mr. Gianelli using the pay-phone.  On January 11, January 26, and again on February 5, 2005.  Govt. Ex. 5 from that pay-phone calls were made to that same number.  Id.  It was determined by law enforcement officials that the number called by Mr. Gianelli was to Dukes Sport's which is an illegal offshore betting site maintained by co-defendant, Todd Westerman.  Calls made on February 3 and February 5, 2005, by Mr. Gianelli to Dukes Sport's, were intercepted and those calls clearly involved Mr. Gianelli's illegal gambling enterprise.  Govt. Exs. 9, 9A, 10 and 10A.

4.  At the time that Mr. Gianelli was arrested certain records were seized by the Government.  Govt. Ex. 7.  Co-Defendant, Todd Westerman, was arrested in connection with the Superseding Indictment sometime in the spring of 2005 and following his arrest, he began cooperating with the Government.  Mr. Westerman stated that he had continued to do business with Mr. Gianelli following Mr. Gianelli's arrest and release on conditions.  Additionally, Mr. Westerman provided the Government with a record of Mr. Gianelli's illegal business transactions with Duke Sport's.  Govt. Ex. 8.  An examination of Government Exhibit 8 and Exhibit 7 clearly demonstrate an overlap and a relationship between the records which indicate that Mr. Gianelli was continuing to do business following his release on conditions.

5.    A number of witnesses have testified before a Grand Jury
that Mr. Gianelli continued to do business with them following his
release on conditions in this Court.  <u>Govt. Ex. 13(Att. A)</u>.

6.    There was also evidence that following Mr. Gianelli's
release on conditions in this Court, he continued to have indirect
contact with co-defendant, Joseph Yerardi.

III.  <u>Discussion</u>

Section 3148(b) provides that the judicial officer shall enter
an order of revocation and detention if, after a hearing, the
judicial officer –

(1)  finds that there is –

    (A)  probable cause to believe that the person has
committed a Federal, State or local crime
while on release; or

    (B)  clear and convincing evidence that the person
has violated any other condition of release;
and

(2)  finds that –

    (A)  based on the factors set forth in section
3142(g) of this title, there is no
condition or combination of conditions of
release that will assure that the person
will not flee or pose a danger to the
safety of any other person or the
community; or

    (B)  the person is unlikely to abide by any
condition or combination of conditions of
release.

In this case the Government asserts that Mr. Gianelli's
conditions of release should be revoked on the grounds that there
is probable cause to believe that Ms. Gianelli committed criminal

10

offenses (illegal gaming) while on release and clear and convincing evidence that Mr. Gianelli has violated other conditions of release (contact with Joseph Yerardi).

A.   <u>Whether Mr. Gianelli Violated His Conditions of Release</u>

The Government has offered substantial evidence that Mr. Gianelli has continued to pursue his illegal gaming business while on release in this Court.  It is clear that Mr. Gianelli was in contact with Dukes Sport's on numerous occasions during January and February 2005 and from the transcripts of some of those calls, he was clearly continuing his illegal gaming business.  That fact is further supported by records produced by Todd Westerman concerning Mr. Gianelli's business activity with Dukes Sport's after his release.  Other individuals have testified that Mr. Gianelli continued his illegal business with them.  Therefore, I find that there exists probable cause to believe that Mr. Gianelli committed a crime while on release.  Secondly, I find by clear and convincing evidence that Mr. Gianelli violated his conditions of release by continuing to have contact, although indirectly, with Mr. Yerardi.

B.   <u>Whether Detention Is Warranted</u>

Since I have found that Mr. Gianelli has committed a criminal offense while on release, a rebuttable presumption arises that no condition or combination of conditions will assure that he will not pose a danger to the safety of any other person or the community if he were released.  In order to determine whether or not there are conditions of release that will assure that Mr. Gianelli will not

11

pose a danger to the community, I am required to examine the provisions of Section 3142.   In making that examination, I conclude, based on Mr. Gianelli's continuing pursuit of his illegal business that there are no conditions that I could impose that would protect the safety of the community if he were released.  Mr. Gianelli could make the argument that the conditions imposed for his temporary release prevented him from conducting business as usual.   I disagree.   Although Mr. Gianelli's letter to a co-defendant concerning his advice with respect to their continuing illegal business activities was never communicated to that co-defendant and was not a violation of Mr. Gianelli's temporary release, it is evident from that letter that he intends to continue with his illegal business enterprises.   It is also clear that Mr. Gianelli is a resourceful individual and if he were released, I am sure he would find ways to continue to do business regardless of whatever conditions I could impose for his release.  Additionally, I am aware of the law enforcement manpower required to monitor Mr. Gianelli while on release and do not find that twenty-four hour surveillance of Mr. Gianelli is a condition of release that should be imposed on the Government.

Finally, based on the totality of all of the evidence presented during the course of this revocation hearing, I find from that evidence that Mr. Gianelli is unlikely to abide by any condition or combination of conditions of release that I may impose to protect the safety of the community if he were released.

## V.  <u>Conclusion</u>

1.   Government's Motion For (1) Revocation Of Release Of Arthur Gianelli, Pursuant To 18 U.S.C. §3148(b), (2) Pretrial Detention Of Gianelli, Pursuant To 18 U.S.C. §3148(b); And (3) Forfeiture Of Gianelli's Bail, Pursuant To Rule 46(f) Of The Federal Rules of Criminal Procedure (Docket No. 93) is <u>allowed</u> to the extent that the Government seeks revocation of Mr. Gianelli's release and his detention pending trial; and

2.   Government's Ex Parte Motion For (1) Revocation Of Release Of Arthur Gianelli, Pursuant To 18 U.S.C. §3148(b), (2) Pretrial Detention Of Gianelli, Pursuant To 18 U.S.C. §3148(b); And (3) Forfeiture Of Gianelli's Bail, Pursuant To Rule 46(f) Of The Federal Rules of Criminal Procedure (Docket No. 93), to the extent that it seeks revocation of Mr. Gianelli's release and his detention pending trial is <u>denied</u> as moot and for the reasons set forth in this Memorandum.

The issue of forfeiture of Mr. Gianelli's bail, raised in both motions, remains pending.

## VI.  <u>Order of Detention Pending Trial</u>

In accordance with the foregoing memorandum,

IT IS ORDERED:

1.   That Mr. Gianelli be committed to the custody of the Attorney General, or her designated representative, for confinement in a corrections facility separate, to the extent practicable, from

13

persons awaiting or serving sentences or being held in custody pending appeal;

2.    That Mr. Gianelli be afforded a reasonable opportunity for private consultation with counsel; and

3.    On order of a court of the United States or on request by an attorney for the Government, the person in charge of the corrections facility in which Mr. Gianelli is detained and confined shall deliver Mr. Gianelli to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

<u>RIGHT OF APPEAL</u>

THE PERSON OR PERSONS DETAINED BY THIS ORDER MAY FILE A MOTION FOR REVOCATION OR AMENDMENT OF THE ORDER PURSUANT TO 18 U.S.C. § 3145(b).

<u>/s/Charles B. Swartwood, III</u>
CHARLES B. SWARTWOOD, III
MAGISTRATE JUDGE