UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.    ) | Crim. No. 05-10003-NMG |
| ) | |
| ARTHUR GIANELLI,   ) | |
| ) | |
| Defendant.   ) | |

**GOVERNMENT'S PRE-HEARING MEMORANDUM**
**REGARDING BAIL FORFEITURE**

The government respectfully submits this memorandum in advance of the bail forfeiture hearing scheduled for January 4, 2006.

Background

On May 18, 2005 and September 16, 2005, the government filed motions to (1) revoke the pretrial release of defendant Arthur Gianelli, pursuant to 18 U.S.C. §3148(b); (2) detain Gianelli pending trial in this case, pursuant to 18 U.S.C. §3148(b); and (3) forfeit Gianelli's bail, pursuant to Rule 46(f) of the Federal Rules of Criminal Procedure.

This Court first dealt with the issues of revocation of release and detention. This Court held an evidentiary hearing on September 23, 2005 and September 27, 2005, and then, on October 3, 2005, ordered that Gianelli's pretrial release be revoked and that Gianelli be detained pending trial.

In its fourteen-page Memorandum and Order, this Court "found that Mr. Gianelli has committed a criminal offense while on release." *Id*. at 11. In particular, this Court found that the government "offered substantial evidence that Mr. Gianelli has continued to pursue his illegal gaming business while on release in this Court." *Id*. In addition, this Court found "by clear and convincing evidence that Mr. Gianelli violated his conditions of release by continuing to have contact, although indirectly, with Mr. Yerardi." *Id*. This Court additionally found that "based on

Page 2 of 11

Mr. Gianelli's continuing pursuit of his illegal business that there are no conditions that I could impose that would protect the safety of the community if he were released." *Id*. at 12.

Gianelli was duly advised of his right to appeal, *id*. at 15, but did not file an appeal.

Now before the Court is the issue of bail forfeiture.

### The Reason Why This Court Required Security for Gianelli's Release

When Gianelli was arrested on the original indictment in this case during January 2005, this Court denied the government's motion for detention, but shared the government's concern that Gianelli would continue to commit crimes if granted pretrial release. Accordingly, this Court imposed a security requirement as part of Gianelli's bail package, making clear that this Court considered the security necessary to deter Gianelli from committing further crimes, and emphasizing that the $250,000 secured bond would be forfeited if Gianelli nonetheless committed further crimes:

> With respect to Mr. Gianelli and Mr. Albertelli ... I do not find either one poses a risk of flight.... I have a real concern that they may continue in business, and it's a concern that I have which I think that what I'm going to do in this case is impose a money requirement, a bond basically, that's going to be not, in addition to flight, it's also going to be <u>if there is a breach of at least the condition of continuing in illegal activity and if it should occur they're going to forfeit the bond</u>....

January 11, 2005 detention hearing transcript at 119-20 (emphasis added).

Addressing Gianelli directly, this Court reiterated:

> [T]he first thing that [the order setting conditions of release] says is the defendant ... <u>shall not commit any offense in violation of federal, state or local law while on release in this case, and that's an issue which I think is important in this case</u>. I base that on my experience not only as lawyer, but also a judge in this court for a number of years. So <u>I'm going to require a secured, a bond, a bond that will be forfeited</u> for failure to appear as required and also <u>for committing any offense in violation of federal, state, and local law</u>.

Page 3 of 11

*Id*. at 120-21 (emphasis added).

Gianelli elected to post his house as security, rather than a passbook or other property. *Id*. at 125. However, ownership of the house had been placed in a trust of which Gianelli's wife was the trustee. Mrs. Gianelli and the Gianellis' two children (both adults) were the beneficiaries of the trust.

Accordingly, this Court required that Gianelli's wife and children come to court to affirm their willingness to place this property in potential jeopardy. *Id*. at 125-26. As this Court explained to defendant Gianelli:

> [T]his [$250,000] is not only for your appearance in court but also on the condition that you not commit any offense while on release. ... I'm going to have to see Mrs. Gianelli and the two children because I've got to ask them questions on the record as to whether or not they agree with it.

*Id*. at 126. (Emphasis added).

<u>Notice and Warnings to Gianelli's Immediate Family</u>

Gianelli's wife and adult children duly appeared before this Court on January 25, 2005, so that this Court could personally apprise them of Gianelli's bail conditions and the risks they were assuming as sureties, and so that this Court could personally determine whether they were knowingly and voluntarily assuming this obligation.

This Court personally questioned Mrs. Gianelli:

> THE COURT: [Y]ou understand that if your husband, Arthur, fails to appear in this court <u>or commits a local, state or federal offense while on release of this court</u>, that the government then would have a right to come after that property up to $250,000.
>
> THE WITNESS: Yes, I do.
>
> THE COURT: Do you understand that?

>THE WITNESS: Yes, I do.
>
>THE COURT: All right. And are you, have you signed these documents willingly?
>
>THE WITNESS: Yes, I have.
>
>THE COURT: Voluntarily?
>
>THE WITNESS: Yes.
>
>THE COURT: And no one has promised you anything?
>
>THE WITNESS: No.
>
>THE COURT: And no one has threatened you?
>
>THE WITNESS: No.

January 25, 2005 hearing transcript at 5 (emphasis added).

>Similarly, this Court asked Gianelli's son, Michael Gianelli:
>
>>THE COURT: [D]o you ... understand that if your father fails to appear in this court or if he commits some offense, criminal offense while on release in this court, that as a result of the papers that have been signed by the trustee, your mother, of this trust, that you as a beneficial owner of the trust, could lose up to $250,000 equity in that property? Do you understand that?
>>
>>THE WITNESS: Yes, I do.
>>
>>THE COURT: And you have signed a release of beneficiaries approving your mother posting this property as security for your father's bond; is that correct?
>>
>>THE WITNESS: Yes, I have.
>>
>>THE COURT: Okay. You're doing this voluntarily?
>>
>>THE WITNESS: Yes.
>>
>>THE COURT: No one has threatened you?

>    THE WITNESS: No.

*Id*. at 7 (emphasis added).

>   This Court next questioned Gianelli's daughter, Marianne Gianelli:
>
>> THE COURT: And do you understand ... that if your father fails to appear in this court or if he is to commit, <u>or if he's to commit any state, local or federal offense</u> in this court, that the government could then come and take the property or at least take the value of the property up to $250,000?
>>
>> THE WITNESS: I do.
>>
>> THE COURT: You understand all of that?
>>
>> THE WITNESS: Yes.
>>
>> THE COURT: And you have signed a release by beneficiaries approving of this transaction; is that correct?
>>
>> THE WITNESS: Yes.
>>
>> THE COURT: And do you do that freely?
>>
>> THE WITNESS: Yes.
>>
>> THE COURT: Voluntarily?
>>
>> THE WITNESS: Yes.
>>
>> THE COURT: No one has threatened you?
>>
>> THE WITNESS: No.

*Id*. at 9-10 (emphasis added).

### The Property Securing Gianelli's Bond

Gianelli's $250,000 bail was secured by his home at 420 Main Street in Lynnfield. According to records that Gianelli filed with this Court on January 25, 2005:

- The lot size of the property is 101,930 square feet (2.339 acres)
- The living area of the house is 8,345 square feet

In addition to four bedrooms and five bathrooms (three being full bathrooms), the house contains a large outdoor fountain, an in-ground swimming pool, a large jacuzzi, an exercise room, a game room, and numerous other rooms and amenities. It is obviously worth far more than its tax-appraised value of $960,700.

### Relevant Statutory Provisions

Rule 46(f)(1) of the Federal Rules of Criminal Procedure provides:

> **Declaration**. The court <u>must</u> declare the bail forfeited if a condition of the bond is breached."

(Emphasis added.) However, that is not necessarily the end of the inquiry, because of certain other provisions. In particular, Rule 46(f)(2)(B) provides, in pertinent part:

> **Setting Aside**. The court may set aside in whole or in part a bail forfeiture upon any condition the court may impose if ... it appears that justice does not require bail forfeiture.

And, Rule 46(f)(4) states:

> **Remission**. After entering a judgment under Rule 46(f)(3), the court may remit in whole or in part the judgment under the same conditions specified in Rule 46(f)(2).

## DISCUSSION

Given this Court's unappealed findings of October 3, 2005 -- that (a) Gianelli committed a criminal offense while on release in this case, and (b) also violated his conditions of release by maintaining contact with convicted felon and co-conspirator Joseph Yerardi -- the forfeiture of Gianelli's bail is <u>mandatory</u>. Fed. R. Crim. P. 46(f)(1).

For the reasons set forth below, Gianelli's bail should be forfeited in its entirety, with no setting aside or remission.

As in initial matter, it is clear that "a bail bond and its collateral may be forfeited not only for the defendant's failure to appear, but also for other violations of bond conditions, including the defendant's commission of a crime." *United States v. Gigante*, 85 F.3d 83, 85 (2d Cir. 1996) (citing *United States v. Patriarca*, 948 F.2d 789, 793-94 & n.3 (1st Cir. 1991), and cases from the Fifth, Seventh, Ninth, and Tenth Circuits).

"The burden of establishing grounds for remission is on the party challenging the forfeiture." *United States v. Gambino*, 17 F.3d 572, 574 (2d Cir. 1994) (citation omitted).

The First Circuit has indicated (citing cases from the Seventh and Ninth Circuits), that "factors in determining whether forfeiture of bail should be set aside include (1) the willfulness of the defendant's breach of conditions; (2) the participation of the sureties in apprehending the defendant; (3) the cost, inconvenience and prejudice suffered by the government as a result of the defendant's breach; and (4) any explanation or mitigating factors presented by the defendant." *United States v. Donlon*, 909 F.2d 650, 657 (1st Cir. 1990) (recognized as being abrogated in part on other grounds, *see United States v. Omar*, 104 F.3d 519, 523 (1st Cir. 1997)) (internal quotation marks omitted).

In *Donlon*, the First Circuit affirmed the district court's refusal to set aside the forfeiture of bail that the defendant's brother had posted as collateral for the defendant's appearance.

Similarly, in *United States v. Gambino*, 17 F.3d 572 (2d Cir. 1994), the Second Circuit affirmed the district court's refusal to remit even a portion of the $2 million bond forfeiture, where the bond was secured by (a) the home of the defendant and his wife, and (b) an apartment building owned by the defendant's son. In finding that the district court did not abuse its discretion, the Second Circuit listed several factors to be considered, and held that it was also necessary to consider "the deterrence value of total forfeiture. We believe that the deterrence value served by total forfeiture is especially important in high-profile narcotics and racketeering cases such as the instant one." *Id*. at 575 (citations omitted).

And, in *United States v. Nguyen*, 279 F.3d 1112 (9th Cir.), *cert. denied*, 537 U.S. 888 (2002), the Ninth Circuit affirmed the district court's refusal to remit any portion of a $100,000 bond secured by property belonging to the defendant's sister-in-law and brother-in-law. Listing six factors to be considered within the Ninth Circuit concerning bail forfeiture remission, the court observed that those factors "are merely non-exclusive factors for consideration, and not all of the factors need to be resolved in the government's favor." *Id*. at 1115-16 (citations and internal marks omitted). The court further held that as sureties, "[i]t was [the in-laws'] duty to learn whether [the defendant] was in violation of the bond requirements, not the court's duty to give them notice." *Id*. at 1116 (citation omitted).

Moreover, in *United States v. Scott*, 1994 U.S. App. Lexis 20218, 1994 WL 399543 (6th Cir. 1994) (unpublished; see Local Rule 28(g) of the Sixth Circuit), the Sixth Circuit affirmed the district court's refusal to set aside or remit any part of the bail forfeiture, where a friend or relative of the

defendant stood to lose property that she had posted to guarantee the defendant's appearance. As the Sixth Circuit held:

> When friends or relatives post bond for a defendant, one of the restraints imposed is that a defendant normally would not want to put in jeopardy the friend or relative who has made it possible for him to be admitted to bail. If the courts were overly forgiving in those circumstances where professional bondsmen were not involved, the effectiveness of that restraint would disappear. Defendants have to know with reasonable certainty that if they skip[,] the friends or relatives will forfeit the money or property that was posted as bond; otherwise, the deterrent effect is simply eliminated. It is for this reason that we reject Maddox's principal argument that "justice does not require the forfeiture."

*Id*., 1994 U.S. App. Lexis 20218 at 7-8.

In Gianelli's case, this Court could not possibly have been clearer in warning Gianelli, his wife, and his two adult children that they stood to forfeit the bail if Gianelli committed any crimes while on release. This Court personally determined, after individually questioning Mary Ann Gianelli, Michael Gianelli, and Marianne Gianelli, that each of them understood, and voluntarily was choosing to post the property as security to guarantee that defendant Gianelli would not commit any further crimes while released in this case.

As this Court has already found after a full evidentiary hearing, defendant Gianelli committed further criminal acts while released on bail, and violated an additional condition by maintaining contact with Joseph Yerardi (a convicted felon and a co-defendant of Gianelli in the superseding RICO indictment). Gianelli's breach of his conditions of release was knowing and willful, in direct and repeated defiance of this Court's order of release and this Court's personal warnings to Gianelli and his family.

Gianelli's family played no role in halting Gianelli's criminal conduct, even though his wife and adult children undoubtedly knew that Gianelli had not taken up legitimate employment sufficient to maintain his and their ongoing lavish lifestyle.

Even if Gianelli's willful violation of his conditions of release had not resulted in the government and the investigative agencies expending significant additional resources, "a bond functions like liquidated damages in that it must be reasonable when set; it need not necessarily approximate the actual costs of breach." *Nguyen*, 279 F.3d at 1117.  Accordingly, forfeiture of the entire bond, with no remission, has been affirmed "where there was no showing of specific cost or prejudice to the government, but, like here, there was a willful breach of conditions and an absence of mitigating circumstances." *Id.*, citing *United States v. Stanley*, 601 F.2d 380, 382 (9th Cir. 1979) (denial of remission was within the district court's discretion where there was an intentional breach of bond conditions and a lack of mitigating factors, even though "there was no showing of specific prejudice, cost, or inconvenience to the Government resulting from [the] breach").

But, in fact, detecting and proving Gianelli's ongoing criminal conduct and continuing contact with Yerardi required substantial additional investigative work by federal and state law enforcement and additional grand jury work.  Moreover, the resulting motion practice and contested evidentiary hearings have involved significant expenditures of resources by the government and by this Court.

Finally, the defendant has not provided any explanation or mitigating factors for his criminal conduct while on release from this Court.

## Conclusion

The Court must forfeit Gianelli's bail, as provided by Rule 46(f)(1), and should not set aside or remit any of it.

        Respectfully submitted,

        MICHAEL J. SULLIVAN
        United States Attorney

By:   */s/ Michael L. Tabak*
        Michael L. Tabak
        Assistant U.S. Attorney

Date: December 27, 2005