UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____ )
UNITED STATES OF AMERICA            )
                                    )
vs.                                 )   CRIMINAL ACTION
                                    )   NO. 05-10003-NMG
ARTHUR GIANELLI, ET AL,             )
         Defendants,                )
_____)

ORDER[1]
January 30, 2006

SWARTWOOD, C.M.J.

Nature of the Proceeding

This matter was referred to me by Order of Reference dated January 12, 2005, for determination of pretrial proceedings. On May 18 and September 16, 2005, the Government filed motions to: (1) revoke the pretrial release of the Defendant, Arthur Gianelli ("Mr. Gianelli" or "Defendant"); (2) detain Mr. Gianelli pending trial in this case for violating his conditions of release; and (3) forfeit Mr. Gianelli's bail pursuant to Rule 46(f) of the Federal Rules of Criminal Procedure on the grounds that Mr. Gianelli violated his conditions of release by engaging in criminal activity and

---

[1]This District's rules governing Magistrate Judges provide that Magistrate Judges have the authority to "[o]rder the . . . forfeiture of bonds". See R.U.S.M.J. D.Mass. 5.

continuing to have contact with co-defendant, Joseph A. Yerardi, Jr. ("Mr. Yerardi"). (See, Docket Nos. 93 and 123).

## Background

On January 5, 2005, an Indictment was returned charging Mr. Gianelli and others, in Count One, with conspiracy to commit various illegal activity, in violation of 18 U.S.C. §371; in Count Two, with arson, in violation of 18 U.S.C. §844(i) and aiding and abetting, in violation of 18 U.S.C. §2; in Count Three, with conspiracy to commit extortion, in violation of 18 U.S.C. §1951; in Count Four, with attempted extortion, in violation of 18 U.S.C. §1951 and aiding and abetting, in violation of 18 U.S.C. §2; and in Count Five, with interstate travel in aid of a racketeering enterprise, in violation of 18 U.S.C. §1952(a)(3) and aiding and abetting, in violation of 18 U.S.C. §2.

On January 7, 2005, Mr. Gianelli was arrested and had his initial appearance in this Court in connection with that Indictment. At that time, the Government moved for detention on the grounds of dangerousness and risk of flight.

On January 11, 2005, after a hearing, I ordered that Mr. Gianelli be released on conditions.

On April 7, 2005, a Superseding Indictment was returned, charging Mr. Gianelli and others, with racketeering, racketeering conspiracy, illegal gambling business, illegal use of wire communication facilities, money laundering, conspiracy to commit

arson, arson, conspiracy to commit extortion, attempt to commit extortion and interstate travel in aid of racketeering.

At Mr. Gianelli's arraignment on April 21, 2005 in connection with the Superseding Indictment, I continued Mr. Gianelli's release on the conditions previously imposed on January 11, 2005 in connection with the original Indictment.

On May 18, 2005, the Government filed a motion to revoke Mr. Gianelli's release for violation of his conditions of release (Docket No. 93).

On September 16, 2005, the Government filed a second motion for revocation of Mr. Gianelli's release for breach of conditions imposed for his temporary release for medical reasons (Docket No. 123).

On September 23 and September 27, 2005, a consolidated hearing was held in connection with among other issues, the Government's first and second motion for revocation of Mr. Gianelli's release. By Memorandum and Order dated October 3, 2005, I allowed the Government's first motion for revocation of Mr. Gianelli's release and as a result, ordered him detained pending trial. I denied as moot, the Government's second motion to revoke Mr. Gianelli's release. However, with respect to both motions, I reserved the issue of forfeiture of Mr. Gianelli's bail for a further hearing. That hearing was held on January 4, 2006.

Findings Of Fact

A.   Mr. Gianelli's Conditions Of Release

On January 11, 2005, I released Mr. Gianelli on the following relevant conditions:

> The defendant shall not commit any offense in violation of federal, state or local law while on release in this case.
>
> . . .
>
> (b)  execute a bond **IN THE AMOUNT OF $250,000 SECURED BY PROPERTY LOCATED AT: 420 MAIN STREET, LYNNFIELD, MASS**, and an agreement to forfeit upon failing to appear as required, **AND ALSO FOR COMMITTING ANY OFFENSE IN VIOLATION OF FEDERAL STATE OR LOCAL LAW**.
>
> . . .
>
> (k)  avoid all contact, directly or indirectly, . . . , including but not limited to: . . . Joseph Yerardi.

(Docket No. 19)(emphasis added).

Mr. Gianelli then signed an appearance bond in the amount of $250,000 secured by property located at 420 Main Street, Lynnfield, Massachusetts. The property located at 420 Main Street, Lynnfield, Massachusetts is owned by the Gianelli Lynnfield Trust (the "Trust"). Maryann Gianelli ("Mrs. Gianelli") is Mr. Gianelli's wife and is both a trustee and a beneficiary of the Trust. The other two beneficiaries of that Trust are Mr. Gianelli's son, Michael and daughter, Maryann. Mrs. Gianelli, as trustee and beneficiary of the Trust, and both of her children, as

beneficiaries of that Trust, acknowledged and agreed that the property located at 420 Main Street, Lynnfield, Massachusetts would be held as security for the $250,000 bond signed by Mr. Gianelli.

### Warnings To Mr. Gianelli

At the time that I released Mr. Gianelli on January 11, 2005, I stated him and another defendant:

> I do not find either one poses a risk of flight .... I have a real concern that they may continue in business, and it's a concern that I have which I think that what I'm going to do in this case is impose a money requirement, a bond basically, that's going to be not, in addition to flight, it's also going to be <u>if there is a breach of at least the condition of continuing in illegal activity and if it should occur they're going to forfeit the bond</u> ...

<u>Tr. of Det. Hearing Held January 11, 2005</u> (Docket No. 87, Part 2), at pp. 119-20 (emphasis added).

Addressing Mr. Gianelli directly, I stated:

> [T]he first thing that [the order setting conditions of release] says is the defendant ... <u>shall not commit any offense in violation of federal, state or local law while on release in this case, and that's an issue which I think is important in this case</u>. I base that on my experience not only as a lawyer, but also a judge in this court for a number of years. So <u>I'm going to require a secured, a bond, a bond that will be forfeited</u> for failure to appear as required and also <u>for committing any offense in violation of federal, state, and local law</u>.

<u>Id.</u>, at pp. 120-122 (emphasis added).

Since I insisted that there be security for the $250,000 bond, Mr. Gianelli and his family agreed to post their residence as security for the bond. Since the family residence was owned by a Trust, I required that the trustee and beneficiaries (Mrs. Gianelli and the two adult Gianelli children) come to Court to affirm their willingness to have their property posted as security for Mr. Gianelli's $250,000 bond. In this connection, I stated to Mr. Gianelli:

> [T]his [$250,000] is not only for your appearance in court but also on the condition that you not commit any offense while on release ... I'm going to have to see Mrs. Gianelli and the two children because I've got to ask them questions on the record as to whether or not they agree with it.

Id., at p. 126.  (Emphasis added).

## Warnings To The Gianelli Family

Mr. Gianelli's wife and two adult children appeared before me on January 25, 2005 in order for me to warn them of the risk involved in posting their property as security for a bond in connection with Mr. Gianelli's release and to determine whether they were knowingly and voluntarily assuming this obligation. I addressed Mrs. Gianelli as follows:

> THE COURT: [Y]ou understand that if your husband, Arthur, fails to appear in this court or commits a local, state or federal offense while on release of this court, that the Government then would have a right to come after that property up to $250,000.
>
> THE WITNESS: Yes, I do.

>   THE COURT: Do you understand that?
>
>   THE WITNESS: Yes, I do.
>
>   THE COURT: All right. And are you, have you signed these documents willingly?
>
>   THE WITNESS: Yes, I have.
>
>   THE COURT: Voluntarily?
>
>   THE WITNESS: Yes.
>
>   THE COURT: And no one has promised you anything?
>
>   THE WITNESS: No.
>
>   THE COURT: And no one has threatened you?
>
>   THE WITNESS: No.

<u>Tr. of Hearing Regarding Sureties Held January 25, 2005</u> (Docket No. 98), at p.5 (emphasis added).

I then addressed Michael Gianelli, Mr. Gianelli's adult son, as follows:

>   THE COURT: [D]o you ... understand that if your father fails to appear in this court <u>or if he commits some offense, criminal offense while on release in this court</u>, that as a result of the papers that have been signed by the trustee, your mother, of this trust, that you as a beneficial owner of the trust, could lose up to $250,000 equity in that property? Do you understand that?
>
>   THE WITNESS: Yes, I do.
>
>   THE COURT: And you have signed a release of beneficiaries approving your mother posting this property as security for your father's bond; is that correct?
>
>   THE WITNESS: Yes, I have.

> THE COURT: Okay. You're doing this voluntarily?
>
> THE WITNESS: Yes.
>
> THE COURT: No one has threatened you?
>
> THE WITNESS: No.

Id., at p.7 (emphasis added).

Lastly, I addressed Maryann Gianelli, Mr. Gianelli's adult daughter, as follows:

> THE COURT: And do you understand ... that if your father fails to appear in this court or if he is to commit, <u>of if he's to commit any state, local or federal offense</u> in this court, that the government could then come and take the property or at least take the value of the property up to $250,000?
>
> THE WITNESS: I do.
>
> THE COURT: You understand all of that?
>
> THE WITNESS: Yes.
>
> THE COURT: And you have signed a release by beneficiaries approving of this transaction; is that correct?
>
> THE WITNESS: Yes.
>
> THE COURT: And do you do that freely?
>
> THE WITNESS: Yes.
>
> THE COURT: Voluntarily?
>
> THE WITNESS: Yes.
>
> THE COURT: No one has threatened you?
>
> THE WITNESS: No.

Id., at pp.9-10 (emphasis added).

<u>The Real Estate</u>

The real estate at 420 Main Street, Lynnfield, Massachusetts is located on 101.930 square foot lot; and the residence located on this lot was built in 1989, contains a total of 8,346 square feet, four bedrooms and five bathrooms.  According to a comparative market analysis presented to the Court on January 25, 2005, the property has a fair market value of $2,019,732.  I am informed and believe that this property is subject to criminal forfeiture in accordance with 18 U.S.C. §982(a)(1) and that the Government has recorded a notice to that effect.

<u>Discussion</u>

This Court's rules of criminal procedure, specifically, Fed.R.Crim.P. 46(f), provide, in relevant part, as follows:

> **(f) Bail Forfeiture.**
>
>> **(1) Declaration.**  The court must declare the bail forfeited if a condition of the bond is breached.
>>
>> **(2) Setting Aside.**  The court may set aside in whole or in part a bail forfeiture upon any condition the court may impose if:
>>
>>> **(A)** the surety later surrenders into custody the person released on the surety's appearance bond; or
>>>
>>> **(B)** it appears that justice does not require bail forfeiture.
>>
>> **(3) Enforcement**.
>>
>>> **(A) Default Judgment and Execution**. If it does not set aside a bail forfeiture, the court

> must, upon the government's motion, enter a default judgment.
>
> **(B) Jurisdiction and Service.** If it does not set aside a bail forfeiture, the court must, upon the government's motion, enter a default judgment.
>
> **(C) Motion to Enforce.** The court may, upon the government's motion, enforce the surety's liability without an independent action. The government must serve any motion, and notice as the court prescribes, on the district clerk. If so served, the clerk must promptly mail a copy to the surety at its last known address.
>
> **(4) Remission.** After entering a judgment under Rule 46(f)(3), the court may remit in whole or in part the judgment under the same conditions specified in Rule 46(f)(2).

Mr. Gianelli signed a $250,000 bond which he expressly acknowledged to the Court included not only the condition that he appear in court, as required, but also that he refrain from engaging in any criminal activity while on release. Mr. Gianelli's breach of either of these conditions could result in the forfeiture of his bond and the Lynnfield property which has been pledged as security for that bond. <u>United States v. Gigante</u>, 85 F.2d 83,85 (2$^d$ Cir. 1996)("a bail bond and its collateral may be forfeited not only for the defendant's failure to appear, but also for other violations of bond conditions, including the defendant's commission of a crime")(citing <u>United States v. Patriarca</u>, 948 F.2d 789, 793-94 & n.3 (1st Cir. 1991)).

In my Memorandum of October 3, 2005 (Docket No. 140)("Prior Order"), I concluded that there existed probable cause to believe

that Mr. Gianelli committed a crime while on release and clear and convincing evidence that Mr. Gianelli violated another condition of his release by continuing to have contact, although indirectly, with Mr. Yerardi.  Prior Order, at p.11.  The former violation constitutes a violation of Mr. Gianelli's bond.  Having found that Mr. Gianelli violated a condition of his bond, I am required to declare a forfeiture of that bond.  See Fed. R. Crim. P. 46(f)(1); United States v. Nguyen, 279 F.3d 1112, 1115 (9th Cir. 2002)(if condition of bond is breached, forfeiture of bail is mandatory)(interpreting previous but substantially similar version of bail forfeiture rule found at Fed.R.Crim.P.46(e)); United States v. Zuluagu-Berrio, 377 F.Supp.2d 611, 613 (W.D.Tex. 2005 (same)(interpreting current Rule 46(f)).

 Since I have declared a bail forfeiture, I must now determine whether, as to Mr. Gianelli and/or the sureties, the forfeiture should "be set aside in whole or in part, upon [such] condition[s] as the court may impose . . . if it appears that justice does not require bail forfeiture."  Fed. R. Crim. P. 46(f)(2), (f)(2)(B). The First Circuit has indicated that factors in determining whether a bail forfeiture should be set aside include: (1) whether the defendant willfully breached his conditions; (2) whether the sureties assisted in locating the defendant; (3) the cost, inconvenience and/or prejudice to the Government as a result of defendant's breach; and (4) any extenuating circumstances or mitigating factors.  United States v. Donlon, 909 F.2d 650, 657

-11-

(1st Cir. 1990)(abrogated on other grounds). Other factors which may be considered by the Court include: "whether surety is a professional or a member of the family . . ., and . . . the appropriateness of the amount of the bond." Nguyen, 279 F.3d at 1116; see also United States v. Gallago, 2003 WL 119 35 36, No. 02-CV-5987(ILG)(E.D.N.Y. Jan. 29, 2003).

### Mr. Gianelli

There should be no set aside with respect to Mr. Gianelli as he intentionally and willfully breached his conditions of release by continuing to engage in illegal activities. Therefore, Mr. Gianelli is liable for the entire $250,000 and I find no justification for diminishing or reducing that amount.

### The Sureties

I should note at the outset that neither the trustee (Mrs. Gianelli) nor the beneficiaries (Mrs. Gianelli and her two adult children) of the Trust signed a bond as sureties. However, Mrs. Gianelli and her two adult children did acknowledge, on the record, that they were voluntarily posting their property as security for Mr. Gianelli's $250,000 bond and in that connection, signed a release by beneficiaries and Mrs. Gianelli as trustee of the Trust, signed an escrow agreement and a mortgage that essentially made this property available as surety for any forfeiture of Mr. Gianelli's bond. Since I have found that Mr. Gianelli's bond should be forfeited, the Government may seek to foreclose on the Lynnfield property in the event that Mr. Gianelli is unable to pay

the bond.  Assuming this latter situation exists, I must now address whether, as to the sureties, the bail forfeiture should be set aside, in whole or in part.

In considering the First Circuit's factors in determining whether forfeiture of bail should be set aside, I make the following findings:

    1.  <u>Willfulness Of The Defendant's Breach Of Conditions</u>

I have previously found that Mr. Gianelli willfully and intentionally breached his conditions by continuing to engage in illegal activities while on release.  However, there is no evidence that either Mrs. Gianelli or the adult Gianelli children assisted or enabled Mr. Gianelli in his efforts to continue his illegal activity or to contact Mr. Yerardi.  On the contrary, the evidence makes clear that Mr. Gianelli continued his illegal activity outside of the family residence away from his wife and children.

    2.  <u>Participation Of The Sureties In Apprehending The Defendant</u>

This factor, as stated, applies where the defendant fails to appear as required and therefore, is not relevant in this case. Furthermore, if I consider this factor in light of the nature of the breach, *i.e.,* engaging in ongoing criminal activity, I would find that the sureties did not assist the Government by disclosing Mr. Gianelli's ongoing criminal activity.  At the same time, there is no evidence that any of the sureties were aware of Mr.

Gianelli's ongoing criminal activity. Therefore, at best, this factor is neutral.

    3.    <u>The Cost, Inconvenience and Prejudice Suffered By The Government As A Result Of The Defendant's Breach</u>

Counsel for Mrs. Gianelli and her adult children argue that there was very little cost expended by the Government in discovering and proving that Mr. Gianelli breached his conditions of release. The Government argues, without substantiation, that it incurred substantial costs in discovering and proving that Mr. Gianelli breached his conditions of release.

The Government did not offer any evidence concerning the cost, inconvenience and/or prejudice it incurred as a result of Mr. Gianelli's breach, nor is it obligated to do so. See <u>Nguyen</u>, 279 F.3d at 1117 (government has no obligation to furnish a bill of costs). Rather, "the bond amount is a form of liquidated damages in the event of a breach". <u>United States v. Sar-Avi</u>, 255 F.3d 1163 (9th Cir. 2001). Nevertheless, the prevailing view, with which I agree, is that the forfeiture amount should bear some reasonable relation to the cost and inconvenience to the Government.

The Government first learned of Mr. Gianelli's illegal activities when a Deputy U.S. Marshal happened to be in an area in Lynnfield where he saw Mr. Gianelli, who he knew to be an indicted defendant, making telephone calls on a public telephone outside a convenience store. The Government then set up an elaborate method for monitoring that telephone and obtaining court permission to

intercept Mr. Gianelli's calls from that telephone. Finally, the Government incurred the cost of seeking revocation of Mr. Gianelli's release and these forfeiture proceedings.

While the cost and inconvenience to the Government is not insubstantial, I find that it does not approach $250,000. Additionally, I do not find that the Government has been prejudiced by Mr. Gianelli's breach. Therefore, as to the sureties, this factor favors a setting aside of at least a portion of the bond.

  4. <u>Extenuating Circumstances; Mitigating Factors; Whether The Sureties Are Professional</u>

I do not find that there are any extenuating factors which favor set aside of the bail forfeiture in this case. However, I do find the fact that the sureties are family members, whether considered as its own factor or as a mitigating factor, weighs in favor of setting aside the bail forfeiture, at least in part. I so find because although it is clear from my colloquy with the sureties that their agreement to post the Lynnfield property was made voluntarily and with full knowledge of the consequences if Mr. Gianelli was to breach his conditions of release, it is also clear that their willingness to suffer a potential significant financial loss was done for the purpose of keeping their husband/father out of jail. Furthermore, they relied on Mr. Gianelli's representations to them and this Court that he would abide by his conditions of release. Given their relationship to Mr. Gianelli, their trust in him, though misguided, was understandable.

5.   Appropriateness Of the Bond Amount.

Whether the bond amount of $250,000 was appropriate is determined as of the time that the bond was set. In this case, the bond was to ensure that Mr. Gianelli appeared in court, as required, and to prevent his engaging in criminal activity while on release. Considering the value of the Lynnfield property itself, the bond amount of $250,000 to ensure Mr. Gianelli's compliance with his conditions of release was eminently reasonable.

### Set Aside

The Government initially sought detention of Mr. Gianelli on two grounds: 1) he was a danger to the community, in that there was a risk he would continue to engage in criminal activities while on release; and 2) given the significant sentence he faced if convicted and the substantial assets available to him, there was a risk he would not appear as required. I agreed with the Government on both counts, but felt that I could impose conditions that would assure both Mr. Gianelli's appearance in court and that he would not engage in criminal activity while on release. Therefore, I required that Mr. Gianelli post a $250,000 bond, secured by real estate, which required his appearance in court and that he not commit any crimes while on release. Mrs. Gianelli and her two adult children voluntarily and knowingly agreed to post their beneficial interest in the Lynnfield property as surety for the aforementioned bond.

Almost immediately after his release in January 2005, Mr. Gianelli was observed using a pay telephone located away from his home (I had imposed conditions which prevented Mr. Gianelli from using his home telephone(s) and/or personal and family cellphones to engage in illegal activities). Further investigation by the Government established that Mr. Gianelli was using this pay telephone to engage in illegal activities. Mr. Gianelli's breach of the bond condition was intentional, willful and brazen.

The agreement made by Mrs. Gianelli and her children would then dictate that their property be forfeited in payment of the $250,000 bond. However, applying the factors which I have outlined above, including that the sureties were family members, that the sureties were not aware of Mr. Gianelli's illegal activities, and that the cost, inconvenience and prejudice to the Government does not approach $250,000, I find that the interest of justice favor reducing the sureties' obligation by one-half or $125,000. At the same time, for the reasons set forth below, for me to set aside any further amount that the sureties are obligated to pay in this case is both unwarranted and would undermine the credibility of the bail system in this Court.

As stated previously, the amount of the bond and the requirement that the bond be secured by real estate was, in significant part, for the stated purpose of ensuring that Mr. Gianelli did not continue with his illegal gaming business. Everyone involved in this case, including and most importantly, the

sureties, knew the purpose of the bond. If this Court's imposition of conditions of release are to be taken seriously, both the defendant and any sureties, who post property to ensure that defendant's release must understand that the consequences of violating those conditions are both real and severe. Furthermore, although in hindsight the sureties' confidence in Mr. Gianelli was misguided, I do not believe that it was an unreasonable risk for them to have posted a fraction of their equity in the Lynnfield property to ensure their husband's/father's compliance with the bond conditions. I fully intended and expected that the bond, secured by the Gianelli residence, would be a sufficient guarantee that Mr. Gianelli would not continue his illegal activities. For all these reasons, I do not find that any further setting aside of the bond amount as to the sureties in excess of fifty percent is justified.

## Conclusion

I declare a forfeiture of bail and order entry of default judgment against Arthur Gianelli in the amount of $250,000 and against the sureties in the amount of $125,000. Enforcement of the amount of the judgment against the sureties shall be stayed for six months from the entry of this Order to allow the sureties (Mrs. Gianelli and her two adult children) an opportunity to satisfy this default judgment as to them through some other means than forfeiture of the Lynnfield property.

```
                              /s/ Charles B. Swartwood III
                              CHARLES B. SWARTWOOD, III
                              CHIEF UNITED STATES MAGISTRATE JUDGE
```