UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES

v.                                                                NO. 05-CR-10003-NMG

ARTHUR GIANELLI

### DEFENDANT ARTHUR GIANELLI'S MOTION TO DISMISS

More than three decades ago, the United States Supreme Court unequivocally held that the government may *not* use a witness's immunized grand jury testimony to later procure an indictment. See United States v. Kastigar, 406 U.S. 441 (1972). But that is exactly what prosecutors did in this case.

As discussed in more detail below, Gianelli testified before a grand jury after receiving court-ordered immunity. Yet -- in violation of his Fifth Amendment rights as well as his rights guaranteed in 18 U.S.C. § 6002 -- the prosecution used information it learned from Gianelli's grand jury testimony to obtain wiretap warrants aimed specifically at intercepting Gianelli's communications. More troubling, the subject matter of Gianelli's immunized testimony lies at the very heart of the charges now levied against him.

For these reasons, and those discussed in more detail below, Defendant Arthur Gianelli respectfully requests that this Honorable Court conduct an evidentiary hearing pursuant to Kastigar, then dismiss the indictments pending against him.

1

## I. FACTS

The following facts are relevant to this Motion:

### A. Gianelli's Immunized Grand Jury Testimony

In early 1993, Assistant United States Attorney Fred M. Wyshak – the same prosecutor leading the charges against Gianelli now – convened a grand jury to investigate Joseph Yerardi, an alleged bookmaker and loan shark with ties to organized crime.

During the Yerardi investigation, Wyshak subpoenaed Gianelli to appear before the grand jury. Gianelli, however, asserted his Fifth Amendment rights and declined to testify. Wyshak then sought an order of immunity pursuant to 18 U.S.C. § 6002. On May 7, 1993, The Honorable Robert E. Keeton entered an Order granting immunity to Gianelli. That Order plainly stated "that no testimony or other information compelled under this Order (or any information directly or indirectly derived from such testimony or other information) may be used against Arthur Gianelli in any criminal case except a prosecution for perjury, giving a false statement or otherwise failing to comply with this Order." See Exh. A.

When Gianelli appeared before the grand jury, after receiving immunity, Wyshak told Gianelli that the grand jury was investigating not just Yerardi, but also Gianelli's connection to Yerardi's illegal gambling business. See Exh. B, p. 10. Throughout, Wyshak confronted Gianelli about calls that had been intercepted during a 1991 wiretap investigation. Wyshak repeatedly asked Gianelli to explain the calls' contents, particularly where they were cryptic in nature.

Gianelli admitted that he had a long and close relationship with Yerardi. See id. at pp. 4-6. Gianelli testified that Yerardi was a bookmaker and a loan shark. See Exh. D, pp. 42-51. Gianelli admitted that he had helped Yerardi collect his usurious loans, referred people looking to borrow money to Yerardi and identified people Yerardi did business with, and Gianelli also

confessed that he, himself, loaned money at usurious rates. See Exh. D, p. 35. Gianelli also testified that Yerardi was a member of organized crime. See Exh. E, pp. 7-10.

And Gianelli admitted that he too was a bookmaker, as well as an agent for Yerardi. See Exh. C, pp. 3, 62-63; Exh. D, pp. 26-27; Exh. E, p. 9. He provided great assistance to the grand jury. He identified people who placed bets with him and those who were his agents. See Exh. C, pp. 77; Exh. D, pp. 38-41. Gianelli conceded he had been in the "illegal gambling business" for 15 years. See Exh. D, p. 27. Gianelli explained the way he kept his gambling records and how to decipher them, and admitted using "codes" to avoid detection by law enforcement. See Exh. C, p. 7; Exh. D, pp. 28-30).

Gianelli made additional incriminating statements. He admitted that he operated a gaming office, and had hired a person to answer the office phones and take wagers from bettors. He also testified that he routinely moved his gaming office to different locations to avoid detection by law enforcement agents. See Exh. C, pp. 63-68.

He also explained at length how gaming "agents" work. More specifically, Gianelli explained that an agent gathers bets from several bettors, and then calls in those bets to a bookmaker. Agents make commissions when, at the end of the week, his bettors have lost money. If an agent's bettors won, however, he would be placed on "make-up." That is, the agent would not receive any commissions until he "makes up" for the amount that his bettors won. See Exh. C, pp. 77-79. He further explained that bookmakers pay "rent" to members of organized crime so that they can operate their bookmaking ventures. Exh. E, pp. 29-30. Gianelli told the grand jury that did not have to pay rent, however, because he was "with" Yerardi. Exh. E, p. 30.

Although the machines were licensed by the Commonwealth, Gianelli explained that he had previously owned a vending machine company, and that, at the time of his testimony, he was

a commissioned salesman for another vending machine company. These vending machine companies owned and leased, inter alia, video poker machines. Gianelli admitted that he knew the machines were mostly used for illegal purposes, i.e., gambling. Exh. E, pp. 13-14; 19. Gianelli told the grand jury how the machines were used for gambling, and how the proceeds were divided. Exh. E, pp. 17-18. Wyshak questioned Gianelli at length about video poker machines and whether they were being used illegally to gamble. Gianelli confessed that he placed some of the machines with Yerardi, who, in turn, used his connections with organized crime to place the machines in various establishments. See Id.

Gianelli further testified that Yerardi had introduced him to at least one other member of organized crime so that Gianelli could put his video machines, to be used illegally, in establishments in Rhode Island. See Exh. D, pp. 4-5; 14-15; Exh. E, pp. 6-7, 10-12, 28. Gianelli also admitted that he collected money from the illegally used machines. See Exh. E, p. 15.

**B. Information From Gianelli's Compelled Testimony Appeared in a Subsequent Application for a Wiretap.**

In 2003, Massachusetts State Trooper Nunzio Orlando submitted several affidavits along with applications for wiretap warrants under Massachusetts state law. See Exh. F.[1] This wiretap and its fruits provided the basis for the indictment at issue. In short, Orlando, alleged that he had probable cause to believe that Gianelli and others were "part of a highly organized and sophisticated group engaged in a continuing conspiracy to commit violations of the Massachusetts gaming statute[s]." Id., p. 4.

In the first of several affidavits, Trooper Orlando alleged several integral facts culled from the same 1991 wiretaps Wyshak questioned Gianelli about. In setting forth his allegation which purported to establish probable cause, several relevant material allegations match the

---

[1] Here, Gianelli focuses on the first affidavit. Similar allegations appear in later affidavits.

substance of Gianelli's grand jury testimony and mirror the admissions Gianelli made under the order of compulsion. As Gianelli testified, Orlando averred that:

- Gianelli was a bookmaker;
- Yerardi had been a bookmaker before being incarcerated;
- Gianelli had been an agent for Yerardi before Yerardi was convicted;
- Gianelli used his video poker machines for illegal gambling; and
- Gianelli, himself, collected money from the video poker machines.

See id., p. 22. Orlando's description of how the proceeds from the poker machines were split is identical to Gianelli's description of the same. See id. at p. 23

Moreover, Orlando's description of an agent and how he fits into a gambling organization is also markedly similar to the description Gianelli provided in his immunized testimony. See id., pp. 8-9.

### C. The Current Indictment is Based Upon the Same Information From Gianelli's Compelled Testimony.

In essence, the grand jury indicted Gianelli for the same things he testified about in his immunized testimony. The indictment names several defendants, including Gianelli and Yerardi. Notably, the indictment concerns, inter alia, the relationship between the two and explicitly, it avers that Gianelli was linked to Yerardi and his alleged criminal activities. Specifically, it alleges that:

> [t]he defendant, Joseph Yerardi, Jr., was convicted in 1995 for racketeering and related offenses, including the operation of an illegal gambling business. As a result, Yerardi was incarcerated from approximately January 1995 through February 2005… Despite his incarceration, Yerardi played a significant role in the management of the Gianelli Group's affairs by maintaining frequent contacts with members and associates of the enterprise. While Yerardi was incarcerated, the Defendant Gianelli operated Yerardi's gambling business and forwarded some of the proceeds

5

> of that illegal activity to Yerardi and Yerardi's wife, the defendant
> Rafia Feghi a/k/a Rafia Yerardi.

Exh. G at p. 3-4, ¶ 3b. Yerardi's conviction stemmed directly from the grand jury to which Gianelli gave his immunized testimony.

The indictment charges a RICO conspiracy, substantive RICO, various gambling offenses, conspiracy to and laundering money, arson, and several extortion offenses. The gist of the RICO count is based upon the same evidence that Gianelli gave in his immunized appearances before the grand jury. It alleges that that between 1999 (or earlier) and April 2005:

> [t]he defendant Arthur Gianelli was the leader of the Gianelli Group. In that capacity, Gianelli was responsible for the overall management of the group's criminal activities including the *operation of several illegal gambling businesses* and the laundering of the proceeds of those illegal gambling businesses by investing the proceeds in otherwise legitimate businesses. One of the illegal gambling businesses operated by the Gianelli Group was a sports betting business. A second gambling business operated by the Gianelli Group *involved the illegal use of electronic gaming machines*....

Exh. G, ¶ 3a (emphasis added).

The indictment is centered upon another facet of Gianelli's immunized testimony -- consistent with what Gianelli said before the grand jury investigating Yerardi; it alleges that the Gianelli Group associated with members of organized crime. According to the indictment, the Gianelli Group's relationship with organized crime made it easier for the Group to operate its criminal business and it protected the Group from its competitors. In exchange for these alleged benefits, the indictment avers, the leaders of the Gianelli Group paid La Cosa Nostra "rent." Exh.G, pp. 8-9, ¶ 6.

      II.     **PURSUANT TO <u>UNITED STATES V. KASTIGAR</u>, GIANELLI IS ENTITLED TO AN EVIDENTIARY HEARING AND ULTIMATELY, DISMISSAL.**

While the prosecution is authorized to seek an order compelling a witness to testify, "no testimony or other information compelled under the order [of immunity] (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case." 18 U.S.C. § 6002. Kastigar explains that "[t]his statute … affords the same protection [as the Fifth Amendment] by assuring that the compelled testimony can in no way lead to the infliction of criminal penalties." 406 U.S. at 461. If the prosecution uses immunized testimony, either directly or indirectly against a defendant, dismissal is warranted. See id.; see also United States v. Hubbell, 530 U.S. 27, 42 (2000); United States v. Underwood, 880 F.2d 612, 616 (1st Cir. 1989).

To obtain a hearing under Kastigar, a defendant must satisfy only two factors: first, that he previously testified under a grant of immunity, and second that the substance of his testimony is relevant to the case against him. See Kastigar, supra, at 460; United States v. Serrano, 870 F.2d 1, 15 (1st Cir. 1989).

Here, Gianelli has more than met the requirements of obtaining a hearing: As set forth above, he demonstrated that he testified before a grand jury pursuant to an order of immunity, that the substance of his testimony appeared in the affidavits used to obtain wiretap warrants aimed at him, and that the substance of his immunized testimony appears in the indictment. More specifically, he has amply demonstrated that in the grand jury, he confessed to being a bookmaker, an agent, that he had ties to organized crime, that he distributed video poker machines illegally used for gambling and that he collected money from those machines. He has further demonstrated the evidence's relevance. To be sure, the substance of immunized testimony forms the basis of the prosecution's case against him.

At the evidentiary hearing, the prosecution will have a "heavy" burden. It must disprove taint, and it must demonstrate that it has independent sources for the information at issue. See

7

United States v. Romano, 583 F.2d 1, 7 (1st Cir. 1978). The prosecution cannot meet its burden by simply asserting that it did not use or rely on the immunized testimony. Rather, this Court should conduct an evidentiary hearing[2] where the prosecution can be put to its proof. See, e.g., United States v. Tantalo, 680 F.2d 903, 908 (2d Cir. 1982).

In this case, the prosecution's burden will be even more difficult because Assistant United States Attorney Wyshak was involved in Mr. Gianelli's appearance before the grand jury as well as the case now before this Court. See United States v. Semkiw, 712 F.2d 891, 895 (1983). ("The possibility that the government compromised the defendant's immunity is heightened by the fact that it assigned the trial to an attorney who had 'access' to the compelled testimony."); United States v. Hsia, 131 F.Supp.2d 195 (D. D.C. 2001). In Hsia, the Court granted a motion to dismiss because the same supervising prosecutor was involved in both the grand jury proceedings where the defendant gave immunized testimony and the defendant's subsequent sentencing hearing. Unlike this case, however, the Hsia prosecutor had merely been briefed on the defendant's immunized testimony and had not read a transcript of the defendant's testimony. Id. at 201-202. This case is even more egregious – Assistant United States Attorney Wyshak (1) questioned Gianelli before the grand jury in 1993, (2) presumably presented the case to the grand jury which handed down the pending indictment, and (3) is lead counsel in the pending case.

### III.   CONCLUSION

For these reasons, Defendant Arthur Gianelli respectfully requests that this Court conduct an evidentiary hearing and, ultimately, dismiss the charges against him.

---

[2] If the prosecution used the compelled testimony directly, i.e., by providing it to the indicting grand jury, then this Court may dismiss the indictments without a hearing. See McGee, 798 F.Supp. at 58 (dismissing indictment without an evidentiary hearing where the prosecution read the defendant's immunized testimony to grand jury that indicted him).

          Respectfully submitted,
          Defendant, Arthur Gianelli,
          By his attorney,


          _____/s/ Richard M. Egbert_____
          Richard M. Egbert, BBO# 151800
          Patricia A. DeJuneas, BBO# 652997
          Law Offices of Richard M. Egbert, P.C.
          99 Summer Street, Suite 1800
          Boston, Massachusetts 02110


Dated: 2/16/06


## CERTIFICATE OF SERVICE

    I, Richard M. Egbert, hereby certify that I served the foregoing document upon Fred Wyshak and Heidi Briegar, Assistant United States Attorneys, in hand, on this 16th day of February, 2006.

          _____/s/ Richard M. Egbert_____
          Richard M. Egbert

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No: 05-10003-NMG |
| ARTHUR GIANELLI, et al | ) ) ) | |

**APPENDIX IN SUPPORT OF
ARTHUR GIANELLI'S MOTION TO DISMISS**

Exhibit A:   Order of Immunity

Exhibit B:   Grand Jury Testimony dated July 1, 1993

Exhibit C:   Grand Jury Testimony dated July 15, 1993

Exhibit D:   Grand Jury Testimony dated July 29, 1993

Exhibit E:   Grand Jury Testimony dated October 12, 1993

Exhibit F:   Affidavit of Trooper Nunzio Orlando

Exhibit G:   Superseding Indictment