UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

UNITED STATES OF AMERICA,  )
                           )
V.                         )          Criminal No: 05-10003-NMG
                           )
ARTHUR GIANELLI            )

## DEFENDANT GIANELLI'S MOTION TO SUPPRESS FRUITS OF SEARCH WARRANT

For the reasons set forth below, Defendant Arthur Gianelli respectfully requests that, following oral argument, this Honorable Court issue an order suppressing the fruits of a search warrant executed at his home on March 5, 2004.

## I. SEARCH WARRANT AFFIDAVIT

On or about March 5, 2004, Massachusetts State Police Trooper Pasquale Russolillo sought and obtained search warrants for Gianelli's home (located at 420 Main Street in Lynnfield), automobile, and person.

Only the warrant to search Gianelli's home is at issue here.  That warrant purported to authorize the State Police to seize, inter alia, "[b]ooks, papers, documents, records, including written and computer generated records, evidencing the unlawful placement, receipt and registration of bets on the outcome of sports events….;[r]ecords, papers, statements, receipts, bills and notations reflecting financial transactions and financial condition….;[m]oney relating to the unlawful registration of bets…; computers and related hardware such as modems, monitors, CPU's and printers and computer software used to facilitate the unlawful registration of bets….; other paraphernalia used to facilitate the unlawful registration of bets, such as telephones, cellular telephones, beepers, facsimile machines and adding machines; [a]uthorization to make forceful entry

1

into any container, locked or otherwise, found on the person of Arthur Gianelli that can

be used or is being used to store or conceal money, records, or paraphernalia related to

illegal gaming; [and] [a]uthorization to make forceful entry into any locked room or

portion of the premises such as floors, walls, or ceilings that can be used or is being used

to store or conceal money records, or paraphernalia related to illegal gambling." <u>See</u>

Exh. A, Addendum A.

      In support of his application, Russolillo submitted a forty-nine page affidavit

which concerned not just Gianelli, but also the homes, cars, and persons of Dennis

Albertelli, Salvatore Ramasci, and Tony Daniels.

      As to Gianelli, to establish the commission prong of the probable cause

requirement, Russolillo cited several telephone calls which had been intercepted during

the execution of wiretap warrants (the subject of the Defendants' Motion to Suppress

Fruits of Wiretap Warrants). In essence, Russolillo alleged that Gianelli was the head of

an unlawful gaming organization.

      To establish the nexus prong of the probable cause requirement for the warrant to

search Gianelli's home, Russolillo's affidavit relied heavily upon generalities, not

specific, articulated facts. For example, he alleged that, in his opinion, "[p]ersons

involved in the operation of bookmaking/gaming offices often secrete their records and

money on their person, in their vehicles, in their residence, in bank safe deposit boxes and

other secure storage areas to which they have access (in addition to their gaming

offices.)" Exh. B at p. 8. Russolillo also alleged that, in his opinion, "…hidden areas of

residences and gaming offices are thought to provide a degree of security for the records

and money. By secreting these items in secure areas, such as safe deposit boxes and

hidden locations within their residences, these persons hope to minimize the likelihood that these items will be discovered by law enforcement officers who may execute search warrants at their gaming offices." Id.  In addition, Russolillo alleged that "[r]ecords, papers, statements, receipts, bills and notations reflecting a person's financial transactions and financial condition are typically found in a person's residence and amongst a person's personal possessions." Id. at p. 10.

Russolillo also relied upon "summaries" of intercepted calls to establish the nexus element.  For example, he alleged, "[b]y way of summary" that "[i]t was learned from intercepted conversations over the `Gianelli Cellular Telephone' that Gianelli would instruct only two people, Salvatore Ramasci and Dennis Albertelli, to come to his residence with regards to paying or collecting monies due or owed on account of bets registered with the Gianelli gaming organization.  Surveillance indicated that Ramasci and Albertelli would arrive at Gianelli's residence in furtherance of these activities." Exh. B, p. 13 (emphasis added).  He further alleged, without providing specifics, that "[p]hysical and electronic surveillance further revealed that on several occasions, Arthur Gianelli was present at his residence located at 420 Main Street, Lynnfield, Massachusetts, and used the `Gianelli Cellular Telephone' to review the winnings and losses incurred by the Gianelli gaming organization on account of bets placed by various `agents' and/or bettors, and otherwise conduct the business of the Gianelli gaming organization." Id. at p. 12.  Russolillo also claimed that "[i]t was learned from conversations between Arthur Gianelli and Dennis Albertelli that Dennis delivered money (derived from the gaming business) to Maryanne Gianelli [at the Gianelli home]."

Id. at p. 11.  Moreover, Russolillo alleged that Gianelli used two land-line telephones in his home "in furtherance of his gaming operation."  Id. at p. 17.

As for specifics, Russollillo alleged that, more than three months prior to the day the search warrant was executed:

> At 12:10 P.M. on November 24, 2003, a call between Arthur Gianelli and Salvatore "Lefty" Ramasci was intercepted over the "Gianelli Cellular Telephone."  During this call, Gianelli and Ramasci made arrangements regarding Ramasci delivering gaming material and money to the Gianelli residence…. On this same date, at approximately 4:04 P.M., Trooper Matthew Murphy observed Salvatore Ramasci (in his 2000 Cadillac Deville color black, bearing Massachusetts registration 442S) turn onto the driveway of the Gianelli residence which is located at 420 Main Street, Lynnfield, Massachusetts. Trooper Murphy also reported that he saw Ramasci lean into the trunk of his car.  Based on the above, it is my opinion that Ramasci delivered gaming related material and money to Gianelli at Gianelli's residence.

Id. pp. 13-14.

Rusolillo also alleged that "in his opinion," Gianelli was inside his residence during a series of telephone calls between him, Albertelli, and Ramasci on January 26, 2004.  As relating to Gianelli's residence, Russolillo alleges that "at approximately 12:34 P.M., a telephone calls was intercepted over the `Ramasci Cellular Telephone' … between Gianelli and Ramasci.  During this conversation, Ramasci asked Gianelli if he needed anything because Ramasci was en route to see one of their betting customer's [sic].  At the end of the conversation, Gianelli expressed to Ramasci that, `if he has something take it.'  At the end of the conversation, Gianelli asked Ramasci what time was he going to come over.  Ramasci said that he would be arriving at Gianelli's house at 2:00 P.M."  Id. at p. 15.

4

Russolillo further alleged that, on March 1, 2004, in another intercepted call, "Gianelli informed Albertelli that he was home. Later in the conversation, Gianelli instructed Albertelli to meet him tomorrow morning at the Polish Clude in Lowell and to bring with him the machine money. In addition, Gianelli stated to Albertelli that he will review all the sheets tonight and that he (Albertelli) should continue to take care of that thing with Ramasci." Id.

In conclusion, Russolillo claimed he had "probable cause to believe that Arthur Gianeilli utilizes [his residence] in furtherance of [his] gaming organization." "More particularly," Russolillo alleged, "this investigation has revealed that Arthur Gianelli resides at the aforementioned location, has used the two telephones that are installed upon the premises of 420 Main Street, Lynnfield, Massachusetts and has been within said location while communicating over the `Gianelli Cellular Telephone' to discuss various matters related to the Gianelli gaming organization." Id. at p. 18; see also p. 11. Tellingly, while Russolillo alleges that Gianelli discussed gaming matters while inside his home, he does not allege that he had any reason to believe that *evidence* of gaming would be found in that location. And a review of his affidavit reveals that there was no probable cause to believe that such was the case.

## II. ARGUMENT

As set forth below, this Court should order the fruits of the warrant to search Gianelli's home to be suppressed for two reasons:

- First, there was no probable cause to believe that evidence of unlawful gaming would be found at Gianelli's home; and

- Second, the warrant violated the particularity requirement.

Each reason is discussed below.

A. **Russolillo's Affidavit Fails To Establish Probable Cause To Search Gianelli's Residence.**

An affidavit in support of a search warrant must demonstrate probable cause to believe that (1) a particular person has committed a crime (the "commission" element), and (2) enumerated evidence of the offense will be found at the place to be searched (the "nexus" element).

To satisfy the nexus requirement, an affidavit must do more than establish probable cause to believe that a suspect committed a crime. See United States v. Feliz, 182 F.3d 82, 88 (1st Cir. 1999). Rather, to establish probable cause to search a premises, "the information available in the affidavit must show a fair probability that contraband or evidence of a crime will be found in a particular place[;]" there must be a "substantial basis" to conclude that such a "fair probability" exists. Id. "Put differently, the application must give someone of `reasonable caution' reason to believe that evidence of a crime will be found at the place to be searched." United States v. Ribeiro, 397 F.3d 43, 49 (1st Cir. 2005)(citation omitted). The nexus element also has a temporal component. "The issuing magistrate must not only consider the accuracy and reliability of the historical facts related in the affidavits, but must determine, inter alia, whether the totality of the circumstances reasonably inferable from the affidavits demonstrates a *fair probability that evidence material to the commission of the probable crime will be disclosed at the search premises at about the time the search warrant would issue ....*" United States v. Zayas-Diaz, 95 F.3d 105, 113 (1st Cir. 1996)(emphasis added)(citation and internal quotation marks omitted).

Here, Russolillo's affidavit fails to establish the nexus requirement as to Gianelli's home. That is, his allegations do not amount to a fair probability that evidence of unlawful gaming would be found in Gianelli's home at the time of the search:

Russolillo's allegations regarding Gianelli's dealings with Ramasci on November 24, 2003 fall short of the probable cause mark for two reasons. First, Russolillo does not allege that the State Police saw Ramasci take anything out of his trunk or that they saw Ramasci bring anything inside Gianelli's residence. Second, the allegations, which pre-date the search warrant by more than three months are too remote – or too "stale" – to make the requisite showing. See United States v. Dauphinee, 538 F.2d 1, 5 (1st 1976)("It is well established that the temporal proximity or remoteness of the events observed has a bearing on the validity of a warrant." ); United States v. Bizier, 111 F.3d 214, 219 (1st Cir. 1997)( "a long delay in seeking a search warrant can create difficulties if the information is stale...."); United States v. Wagner, 989 F.2d 69, 75 (2d Cir. 1993)("While there is no bright line rule for staleness, the facts in an affidavit supporting a search warrant must be sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search and not simply as of some time in the past.") Here, the age of the allegation is particularly troublesome since, as Russolillo alleges, the State Police continued to monitor Gianelli's telephones until just one day prior to the execution of the search warrant. See Exh. B, p. 12. Obviously, there were no other, more recent occasions where the State Police observed any of Gianelli's alleged co-conspirators go to Gianelli's home to handle a gaming-related matter.

The intercepted calls from January 26, 2004 do not add much to the probable cause equation either.  Indeed, Russolillo fails to allege that surveillance confirmed that Ramasci did in fact go to Gianelli's home that day.  And the cited telephone call on March 1, 2004 in no way buttresses probable cause to search Gianelli's home:  while Gianelli might have been at his residence during the intercepted call, Gianelli told Ramasci to meet him the following day at a different location.  Thus, it is not reasonable to conclude, nor did surveillance confirm, that Ramasci brought any evidence of unlawful gaming to Gianelli's residence on January 26, 2004 or March 1, 2004.

As for Russolillo's summaries of conversations, not only does he fail to back them up with reference to specific conversations, but they have no temporal reference.  As such, these allegations are worthless to a finding of probable cause.  See e.g. United States v. Huggins, 733 F.Supp 445, 449 (D. D.C. 1990).

Moreover, it should not go unnoticed that Russolillo refers to less than a handful of calls relating to Gianelli's home.  Yet the State Police intercepted thousands upon thousands of telephone calls.  Viewed against this backdrop, it can hardly be said that the "totality of circumstances" shows that evidence of unlawful gaming was likely to be found in, of all places, Gianelli's home.  To be sure, given the vast number of intercepted calls, the only logical inference to be drawn is that any relation between the alleged gaming organization and Gianelli's home was the exception rather than the rule.

Finally, each of the intercepted conversations specifically cited in Russolillo's affidavit was over Gianelli's cellular telephone; as such, Gianelli could have been virtually anywhere when conducting the alleged gaming-related calls.

In short, whether "Gianelli was within his residence…while conducting his supervisory role within the Gianelli criminal enterprise" is irrelevant. Rather, to establish probable cause to search Gianelli's residence, Russolillo was required, but failed, to allege facts showing a fair probability that contraband or evidence of a crime would be found inside Gianelli's home.

### B. The Warrant Violated The Particularity Requirement.

Gianelli adopts and incorporates by reference co-defendant Philip Puopolo's argument that the warrant was overbroad and violated the particularity requirement, set forth at pages 12 – 17 of Defendant Puopolo's Motion to Suppress Search of Residence and Revere Businessmen Association and Incorporated Memorandum of Law.

### III.    CONCLUSION

For the foregoing reasons, Defendant Arthur Gianelli respectfully requests that this Honorable Court grant his Motion to Suppress Fruits of Search Warrant.

Respectfully submitted,
Arthur Gianelli, Defendant,
by his counsel,


/s/ Patricia A. DeJuneas_____
Patricia DeJuneas BBO # 652997
Richard M. Egbert. BBO# 151800
Law Offices of Richard M. Egbert
99 Summer Street, Suite 1800
Boston, Massachusetts 02110
Telephone: 617-737-8222
Fax: 617-737-8223

9

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 26th day of March, 2008.

/s/ Patricia A. DeJuneas

# SEARCH WARRANT

G.L. c. 276, §§ 1-7

COURT DEPARTMENT

_____ DIVISION

SEARCH WARRANT DOCKET NUMBER

**TO THE SHERIFFS OF OUR SEVERAL COUNTIES OR THEIR DEPUTIES, ANY STATE POLICE OFFICER, OR ANY CONSTABLE OR POLICE OFFICER OF ANY CITY OR TOWN, WITHIN OUR COMMONWEALTH:**

Proof by affidavit, which is hereby incorporated by reference, has been made this day and I find that there is **PROBABLE CAUSE** to believe that the property described below:

- [X] has been stolen, embezzled, or obtained by false pretenses.
- [X] is intended for use or has been used as the means of committing a crime.
- [X] has been concealed to prevent a crime from being discovered.
- [X] is unlawfully possessed or concealed for an unlawful purpose.
- [X] is evidence of a crime or is evidence of criminal activity.
- [ ] other *(specify)* _____

**YOU ARE THEREFORE COMMANDED** within a reasonable time and in no event later than seven days from the issuance of this search warrant to search for the following property:

See Addendum A

_____

_____

_____

_____

_____

- [ ] at:

See Addendum B

_____

_____

which is occupied by and/or in the possession of: _____

_____

- [ ] on the person or in the possession of:

_____

You [ ] are [X] are not also authorized to conduct the search at any time during the night.

You [ ] are [X] are not also authorized to enter the premises without announcement.

You [X] are [ ] are not also commanded to search any person present who may be found to have such property in his or her possession or under his or her control or to whom such property may have been delivered.

**(A)**

**YOU ARE FURTHER COMMANDED** if you find such property or any part thereof, to bring it, and when appropriate, the persons in whose possession it is found before the _____ Division of the _____ Court Department.

DATE ISSUED: March 5, 2004

SIGNATURE OF JUSTICE, CLERK-MAGISTRATE OR ASSISTANT CLERK

X _Richard E. Welch_

FIRST OR ADMINISTRATIVE JUSTICE
WITNESS: _(A) Suzanne DelVecchio_

PRINTED NAME OF JUSTICE, CLERK-MAGISTRATE OR ASSISTANT CLERK
Richard E. Welch III

1556

# ADDENDUM A TO SEARCH WARRANT
for
420 Main Street
Lynnfield, Massachusetts

1.     Books, papers, documents, records, including written and computer generated records, evidencing the unlawful placement, receipt and registration of bets on the outcome of sports events, including, but not limited to records of bets registered; records of bets placed; records of the amounts of money won or lost on account of bets; records of the amounts of money due or owed on account of bets; records of the amounts of money paid or collected on account of bets; records of the names, telephone numbers, and addresses of bettors, bookmakers, "agents" and gaming offices; records of amounts of money earned by, paid to "agents", including "make-up figures" and commissions;

2.     Records, papers, statements, receipts, bills and notations reflecting financial transactions and financial condition, including, but not limited to bills, receipts and records pertaining to the purchase and sale of goods and services; credit card statements; monthly bank statements and records of bank deposits and withdrawals; loan documents and other documents evidencing debt; investment account statements and records of purchases and sales of stocks, certificates of deposit, bonds and other financial investments; tax returns; statements of income and gains, including income from employment, dividends and interest; and safe deposit box keys and lease records;

3.     Money relating to the unlawful registration of bets, including money won and lost on account of bets on the outcome of sports events; Computers and related hardware, such as modems, monitors, CPU's and printers, and computer software used to facilitate the unlawful registration of bets, including database, word processing and communications software;

4.     Other paraphernalia used to facilitate the unlawful registration of bets, such as telephones, cellular telephones, beepers, facsimile machines and adding machines;

5.     Authorization to make forceful entry into any container, safe, lock box or hidden compartment that can be used or is being used to store or conceal money, records, or paraphernalia related to illegal gaming;

6.     Authorization to make forceful entry into any locked room or portion of the premises such as floors, walls, or ceilings that can be used or is being used to store or conceal money, records, or paraphernalia related to illegal gaming.

## ADDENDUM B TO SEARCH WARRANT
### for
### 420 Main Street
### Lynnfield, Massachusetts

The premises located at 420 Main Street, Lynnfield, Massachusetts, including the room or rooms of said premises, as well as the attic, cellar, garage and storage areas, is specifically described as a white brick structure with a fountain located in the middle of the front circular driveway. In addition, a short brick wall surrounds the fountain.

COMMONWEALTH OF MASSACHUSETTS

ESSEX, SS                                                    SUPERIOR COURT

AFFIDAVIT OF TROOPER
PASQUALE F. RUSSOLILLO

I, Trooper Pasquale F. Russolillo, being duly sworn, hereby depose and say that:

I am a Massachusetts State Police Trooper assigned to the Special Service Section. For the past several months, I have participated in an investigation of illegal gaming, arson and narcotic activities in and around Essex, Middlesex and Suffolk Counties. During this period of time, I have worked with Trooper Nunzio Orlando in this investigation and we have conferred on a daily or near daily basis.

On October 31, 2003, Trooper Nunzio Orlando submitted an affidavit to Associate Justice Richard E. Welch of the Essex Superior Court in support of an application for wiretap warrants submitted to Justice Welch on the same date by Essex County Assistant District Attorneys Brian T. O'Keefe and Alexander Cain. That affidavit, which is dated October 31, 2003, is incorporated herein by reference. In this affidavit, Trooper Orlando had specifically relied on the facts and information set forth in said affidavit in establishing probable cause to believe that Arthur Gianelli, Dennis Albertelli, Salvatore Ramasci, Randy Albertelli, and others are involved in one or more on-going conspiracies and operations to provide gaming services in violation of Massachusetts General Law, Chapter 271, Section 17 which is a "designated offense" within Massachusetts General Law, Chapter 272, Section 99.

On October 31, 2003, Associate Justice Richard E. Welch issued an Order and Warrant authorizing the interception of certain wire communications of Arthur Gianelli, Dennis Albertelli, Salvatore Ramasci, and others relating to the provisions of unlawful gaming services occurring over telephones numbered (781) 710-2154, (978) 758-8575, and (617) 571-8262.

1



On November 13, 2003, Associate Justice Richard E. Welch issued an Order and Warrant authorizing the interception of certain wire communications of Arthur Gianelli, Dennis Albertelli, Salvatore Ramasci, Randy Albertelli, and others relating to the provisions of unlawful gaming services occurring over cellular telephones numbered (781) 640-3325, (781) 710-2154, and (617) 571-8262. In addition, the Order and Warrant authorized the interception of certain wire communications of Arthur Gianelli, Dennis Albertelli, and others relating to the provisions of conspiracy to commit arson, occurring over cellular telephones (781) 640-3325 and (781) 710-2154. The November 13, 2003, affidavit, is incorporated herein by reference.

On November 26, 2003, Associate Justice Richard E. Welch issued an Order and Warrant authorizing the interception of certain wire communications of Arthur Gianelli, Dennis Albertelli, Salvatore Ramasci, Randy Albertelli, and others relating to the provisions of unlawful gaming services occurring over cellular telephones numbered (781) 640-3325, (781) 710-2154, and (617) 571-8262. In addition, the Order and Warrant authorized the interception of certain wire communications of Arthur Gianelli, Dennis Albertelli, and others relating to the provisions of conspiracy to commit arson, occurring over cellular telephones (781) 640-3325 and (781) 710-2154. The November 26, 2003, affidavit, is incorporated herein by reference.

On December 12, 2003, Associate Justice Richard E. Welch issued an Order and Warrant authorizing the interception of certain wire communications of Arthur Gianelli, Dennis Albertelli, Salvatore Ramasci, Randy Albertelli, and others relating to the provisions of unlawful gaming services occurring over cellular telephones numbered (781) 640-3325, (781) 710-2154, and (617) 571-8262. In addition, the Order and Warrant authorized the interception of certain wire communications of Arthur Gianelli, Salvatore Ramasci, and others relating to the provisions of conspiracy to commit arson, occurring over cellular telephones (781) 640-3325 and (617) 571-8262. The December 12, 2003, affidavit, is incorporated herein by reference.

2

On December 23, 2003, Associate Justice Richard E. Welch issued an Order and Warrant authorizing the interception of certain wire communications of Arthur Gianelli, Dennis Albertelli, Salvatore Ramasci, Randy Albertelli, Robert Romboli, and others relating to the provisions of unlawful gaming services occurring over cellular telephones numbered (781) 640-3325, (781) 710-2154, (617) 571-8262, and (617) 839-9475. In addition, the Order and Warrant authorized the interception of certain wire communications of Arthur Gianelli, Salvatore Ramasci, Robert Romboli, and others relating to the provisions of conspiracy to commit arson, occurring over cellular telephones (781) 640-3325, (617) 571-8262, and (617) 839-9475. The December 23, 2003, affidavit, is incorporated herein by reference.

On December 22, 2003, electronic surveillance revealed that Arthur Gianelli warned Dennis Albertelli about the prolonged use of his cellular telephone (referred to as the "Albertelli Telephone A" in my previous affidavits). By December 29, 2003, electronic surveillance confirmed that Dennis Albertelli and Salvatore Ramasci had changed their respective cellular telephone numbers. It was discovered that the new cellular telephone numbers were (978) 758-4162 ("New Albertelli Cellular Telephone") and (617) 893-8559 ("New Ramasci Cellular Telephone").

On December 31, 2003, Associate Justice Patrick Riley issued an Order and Warrant authorizing the interception of certain wire communications of Arthur Gianelli, Dennis Albertelli, Salvatore Ramasci, and others relating to the provisions of unlawful gaming services occurring over telephones numbered (978) 758-4162 and (617) 893-8559. The December 31, 2003, affidavit, is incorporated herein by reference.

On January 9, 2004, Associate Justice Richard E. Welch issued an Order and Warrant authorizing the interception of certain wire communications of Arthur Gianelli, Dennis Albertelli, Salvatore Ramasci, Randy Albertelli, Robert Romboli, James Viglione, and others relating to the provisions of unlawful gaming services occurring over cellular telephones

3

numbered (781) 640-3325, (978) 758-4162, (617) 893-8559, (617) 839-9475, and (781) 838-1529. In addition, the Order and Warrant authorized the interception of certain wire communications of Robert Romboli and others relating to the provisions of the purchase and/or distribution of illegal narcotics, occurring over cellular telephone (617) 839-9475. The January 9, 2004, affidavit, is incorporated herein by reference.

On January 26, 2004, Associate Justice Richard E. Welch issued an Order and Warrant authorizing the interceptions of certain wire communications of Arthur Gianelli, Dennis Albertelli, Salvatore Ramasci, Randy Albertelli, Robert Romboli, James Viglione, Scott Martinelli and others relating to the provisions of unlawful gaming services occurring over cellular telephones numbered (781) 640-3325, (978) 758-4162, (617) 893-8559, (617) 407-8932 and (781) 838-1529. In addition, the Order and Warrant authorized the interception of certain wire communications of Robert Romboli, David DeAngelis and others relating to the provisions of the purchase and/or distribution of illegal narcotics, occurring over cellular telephone (617) 839-9475 and (781) 307-2166. The January 26, 2004, affidavit, is incorporated herein by reference.

On January 30, 2004, Associate Justice Richard E. Welch issued an Amended Order and Warrant authorizing the interceptions of certain wire communications of Christopher Dennis and others relating to the  provisions of the purchase and/or distribution of illegal narcotics, occurring over cellular telephone (781) 307-2166. The January 30, 2004, affidavit, is incorporated herein by reference.

On February 5, 2004, Associate Justice Richard E. Welch, issued a Search Warrant authorizing the search for the following:

(1)     61 Chestnut Street, apt. #1, Saugus, Massachusetts.

4

(1a)    a 2003 Chevrolet Silverado Pick Up, color gray, Massachusetts registration
8558WN, VIN: 1GCHK29U33E309676, registered to Sabrina Testa and driven by
Christopher Dennis.

(1b)    person of Christopher Dennis d.o.b. 06/29/71

(2)    3600 Mystic Valley apt. #801, Medford, Massachusetts.

(2a)    a 2004 Lincoln Aviator SUV, color gray, Massachusetts registration 6990RE, VIN:
5LMEU88H34ZJ07167, registered to David Cardavelli.

(2b)    Person of David Cardavelli, d.o.b. 12/20/48


On February 10, 2004, Associate Justice Richard E. Welch, issued a Search Warrant
authorizing the search for the following:


(1)    6 EverGreen Road, Stoneham, Massachusetts.

(1a)    a 1994 Dodge Intrepid,  color black, Massachusetts registration
6403ZN, VIN: 1B3HD56F5RF318336, registered to Robert Romboli.

(1b)    a 2002 Lincoln Town Car, color black, Massachusetts registration 6924LE,
VIN: 1LNH82W32Y628903, registered to Ford Motor Credit Co. and leased by Robert
Romboli.

(1c)    person of Robert Romboli d.o.b. 01/18/63

(2)    39 Acorn Street, Malden, Massachusetts.

(2a)    a 2003 GMC Denali SUV, color white, Massachusetts registration BNA 1,
VIN: 1GKFK66UX3J233727, registered to Scott Martinelli and Karen Martinelli.

(2a)    person of Scott Martinelli, d.o.b. 02/10/63

(3)    25 Boardman Avenue, Melrose, Massachusetts.

(3a)    a 1997 Cadillac Seville, color white, Massachusetts registration 4809NG,
VIN: 1G6KY5292VU810128, registered to James Viglione.

(3b)    person of James Viglione, d.o.b. 03/29/57


5

In addition to the search warrants signed on February 10, 2004, Associate Justice Richard E. Welch also issued an Order and Warrant authorizing the interception of certain wire communications of Arthur Gianelli, Dennis Albertelli, Salvatore Ramasci, and Randy Albertelli, and others relating to the provisions of unlawful gaming services occurring over cellular telephones numbered (781) 640-3325, (978) 758-4162, and (617) 407-8932.

On February 25, 2004, Associate Justice Richard E. Welch issued an Order and Warrant authorizing the interceptions of certain wire communications of Arthur Gianelli, Dennis Albertelli, Salvatore Ramasci, and Randy Albertelli, and others relating to the provisions of unlawful gaming services occurring over cellular telephones numbered (781) 640-3325, (978) 758-4162, and (617) 407-8932.

## INTRODUCTION

This affidavit is being submitted in support of applications for search warrants for the following locations, motor vehicles and individuals:

(1)    420 Main Street, Lynnfield, Massachusetts.

(1a)   a 1996 Mercedes Benz, color black, Massachusetts registration 6701LA, VIN: WDBGA43E8TA317001, registered to Mary Gianelli, of 420 Main Street, Lynnfield, Massachusetts.

(1b)   person of Arthur Gianelli, d.o.b. 07/07/57

(2)    151 Hudson Road, Stow, Massachusetts.

(2a)   1997 Jaguar VDP, color black, Massachusetts registration 1164XY, registered to Dennis Albertelli of 151 Hudson Street, Stow, Massachusetts.

(2b)   person of Dennis Albertelli, d.o.b. 12/16/52

(3)    48 Pleasant Street, Unit 11, Stoneham, Massachusetts.

(3a)  ·  a 2000 Cadillac Deville, color black, Massachusetts registration 442S, registered to Salvatore Ramasci of 66 Woods Road, Medford, Massachusetts

6

(3b)    person of Salvatore Ramasci, d.o.b. 07/06/56

(4)    14 Pine Tree Drive, Saugus, Massachusetts

(4a)    2000 Toyota Land Cruiser, color brown, Massachusetts registration 500Q,
VIN:JT3HT05J4Y0098347, registered to Tony Daniels, of 14 Pine Tree Drive, Saugus,
Massachusetts.

(4b)    person of Tony Daniels, d.o.b., 10/06/51

(5)    Dennele Trans, 75 Green Street, Clinton, Massachusetts


It is respectfully requested that members of the Massachusetts State Police, and other
law enforcement officers participate in the execution of the search warrants at the above-listed
locations, motor vehicles and individuals.


## GENERAL OPINIONS


Based on my training and experience, including my participation in this case and my
discussions with other experienced police officers, I know bookmaking operations to have the
following general characteristics:


Bookmaking operations are almost entirely cash businesses. The gaming debts of bettors
and bookmaking organizations are almost always satisfied with cash payments. Persons
associated with the operation of bookmaking offices often deal in large sums of money. This
means that such persons often are in the possession of, or have ready access to, large amounts of
money.


Bookmaking operations work on credit in that they register and place bets on a daily
basis. However, the debts occasioned by these bets are settled on a periodic basis (often weekly).
Since these operations work on credit, bookmakers frequently maintain written or computer


7

generated records of the bets registered and placed, the identities of the persons who have registered or placed bets, and the amount of money due to, or owed by, these persons.

Persons involved in the operation of bookmaking/gaming offices often secrete their records and money on their person, in their vehicles, in their residence, in bank safe deposit boxes and other secure storage areas to which they have access (in addition to their gaming offices). This is done for several reasons. First, bookmakers work throughout the day and evening. During "prime gaming hours" when they are in their gaming offices, they are registering bets and reviewing in conversations over the telephone the amounts of money won, lost, due and owed. During the day (before "prime gaming hours") and during the evening (after "prime gaming hours"), bookmakers talk by telephone and meet with bettors, "agents" and other bookmakers in order to "settle up", using their vehicles to go to and from these locations. That is, bookmakers use a telephone, often in their residence, to discuss amounts of money won, lost, due and owed; to arrange meetings for the purpose of paying or collecting money; and otherwise to conduct the business of their bookmaking operation. Bookmakers also meet during non-prime gaming hours with bettors, agents, and other bookmakers to pay and collect money, and to discuss bookmaking business. Since bookmakers conduct their business during non-prime gaming hours, they often take records with them when they leave their gaming offices, if it is not in their home, so that they are able to conduct business during non-prime gaming hours. Bookmakers also tend to leave some of their gaming sheets in their vehicles. Second, safe deposit boxes, secure storage areas, and hidden areas of residences and gaming offices are thought to provide a degree of security for the records and money. By secreting these items in secure areas, such as safe deposit boxes and hidden locations within their residences, these persons hope to minimize the likelihood that these items will be discovered by law enforcement officers who may execute search warrants at their gaming offices. Third, federal currency transaction reporting laws require financial institutions and businesses to report to the federal government cash transactions in excess of $10,000. Because individuals participating in bookmaking activities often deal in cash transactions greater than $10,000, they often store their monies in safe deposit boxes and other secure areas where they will have access to the money,

8

such as hidden locations within their residences and offices, to avoid the transactions being reported to the federal government.

Bookmakers and bettors may hide their money, rather than investing in bank accounts or other investment vehicles, for other reasons as well. For example, bookmakers and bettors often do not report their gaming income to the Internal Revenue Service and Department of Revenue, and by secreting their betting money in safe deposit boxes (or in other secure storage locations), they attempt to minimize the likelihood of detection by these agencies. Also, bookmakers often are familiar with the federal gaming forfeiture laws, and often attempt to conceal from law enforcement those assets which are used to facilitate their gaming activities. As such, monies, as well as ownership records for other assets such as vehicles and real estate, are often secreted in secure storage areas such as a safe deposit boxes and hidden locations in their residences.

Bookmakers often employ various methods to conceal the fact that their money, and assets acquired with their money, are traceable to their bookmaking activities. One common method of disguising the source of gaming money is to "launder" it through what appears to be a legitimate business. Bookmakers often associate themselves with cash businesses, or persons involved in cash businesses, and falsely attribute their gaming earnings to the cash business. This tends to establish a lawful source for the money, thereby insulating the bookmaker and his money and assets, from detection by law enforcement officers.

Other methods of "laundering" money exist. Whatever method a bookmaker employs, it allows him to invest his gaming money in bank accounts, certificates of deposit, securities, business ventures, and other investment vehicles, with some degree of confidence that the true source of the money will not be detected.

The specific types of gaming records generated and maintained by the people involved in bookmaking organizations such as the one(s) under investigation in this case and described

9

herein, typically include the following types of written and computer generated papers, documents and records: records of the bets registered with the organization on a daily or weekly basis; records of the bets (such as lay-off bets) placed by the organization on a daily or weekly basis; records of the amounts of money won or lost on account of bets registered or placed by the organization; records of the amounts of money due to or owed by the organization on account of bets registered or placed by the organization; records of the amounts of money paid by or collected to the organization on account of bets registered or placed by the organization; records of the names, telephone numbers, and addresses of the organization's customers and associates, including bettors, "agents" and gaming offices; records of the amounts of money earned by, and paid to the "agents" of the organization, including "makeup figures" and commissions.

Records, papers, statements, receipts, bills and notations reflecting a person's personal financial transactions and financial condition typically are found in a person's residence and amongst a person's personal possessions. These types of documents include, but are not limited to bills, receipts and records pertaining to the purchase and sale of goods and services; credit card statements; monthly bank statements and records of bank deposits and withdrawals; loan documents and other documents evidencing debt; investment account statements and record of purchases and sales of stocks, certificates of deposit, bonds and other financial investments; tax returns; statements of income and gains, including income from employment, dividends and interest; and safe deposit box lease records. Evidence of the income and expenditure of money derived from participating in bookmaking operations such as the ones described herein can be found in the various types of personal records, papers, statements, receipts, bills and notations described above. In my experience, a comprehensive analysis of these types of personal financial records, as part of an analysis of a person's financial transactions and financial condition, will produce evidence of their access to unexplained wealth (wealth that is not explained by lawful business and investment activities), which itself is evidence of participation in bookmaking, and evidence of (1) a financial motive to be involved in bookmaking, (2) the manner in which the money earned from being involved in bookmaking was hidden, stored, invested and/or spent, and

10

(3) the possession and use of sums of money in excess of the amount of money lawfully possessed, acquired or earned by the alleged bookmaker.

## 420 MAIN STREET, LYNNFIELD, MASSACHUSETTS

Based on the facts and information set forth herein and in the previously submitted affidavits that are incorporated herein, I believe that I have probable cause to believe that Arthur Gianelli utilizes the premises located at 420 Main Street, Lynnfield, Massachusetts, in furtherance of Gianelli's gaming organization. More particularly, I note that this investigation has revealed that Arthur Gianelli resides at the aforementioned location, and has been within said location while utilizing the " Gianelli Cellular Telephone" to discuss various matters related to the Gianelli gaming organization.

According to the Verizon New England Inc., telephones being numbered (781) 334-2191 and (781) 334-2198, are subscribed to by Maryanne Gianelli and installed upon the premises of 420 Main Street, Lynnfield, Massachusetts. I note that I have learned from this investigation that Maryanne Gianelli is the wife of Arthur Gianelli, and it is believed that they currently reside together in the above residence. I also note that several conversations intercepted over the " Gianelli Cellular Telephone " have been initiated by Arthur Gianelli dialing the above telephone numbers, whereupon he engages in conversations with his wife Maryanne. Pursuant to the monitoring instructions, these conversations are minimized forthwith by the monitoring officers upon the determination that Gianelli is conversing with his wife. It was learned from intercepted conversations between Arthur Gianelli and Dennis Albertelli that Dennis delivered money (derived from the gaming business) to Maryanne Gianelli at 420 Main Street, Lynnfield, Massachusetts. Furthermore, it was revealed that Maryanne needed the money to buy furniture.

Pursuant to wiretap warrants issued by Associate Justice Welch and Associate Justice Riley on October 31, 2003, November 13, 2003, November 26, 2003, December 12, 2003, December 23, 2003, December 31, 2003, January 9, 2004, January 26, 2004, January 30, 2004,

11

February 10, 2004, and February 25, 2004, communications occurring over the "Gianelli Cellular Telephone" were intercepted, monitored, and recorded from November 13, 2003 to March 4, 2004. This telephone is numbered (781) 640-3325. In the affidavits submitted to the courts in support of the applications for the wiretap warrants for this telephone, telephone numbered (781) 640-3325 was referred to as the "Gianelli Cellular Telephone". Herein, this telephone will be referred to in the same manner. This telephone was and is subscribed to by Anthony Picanso of 46 Murdock Drive, Peabody, Massachusetts, and is utilized by Arthur Gianelli to facilitate the operation of the Gianelli gaming organization. Physical and electronic surveillance further revealed that on several occasions, Arthur Gianelli was present at his residence located at 420 Main Street, Lynnfield, Massachusetts, and used the "Gianelli Cellular Telephone" to review the winnings and losses incurred by the Gianelli gaming organization on account of bets placed by various "agents" and/or bettors, and otherwise conduct the business of the Gianelli gaming organization. In addition to the above facts, it should be noted that Arthur Gianelli was intercepted over the cellular telephones that were utilized by Salvatore Ramasci and Dennis Albertelli, by talking to them via the two above listed telephones that are installed at 420 Main Street, Lynnfield, Massachusetts. Some of these conversations were related to the Gianelli gaming organization.

Between November 11, 2003 and March 4, 2004, several completed calls were intercepted over the "Gianelli Cellular Telephone", and the vast majority of these calls included gaming related matters, including conversations regarding the amounts of money won, lost, due and owed on account of bets were reviewed, and other matters pertaining to the operation of one or more bookmaking offices and operations. Transcripts and summaries of many of theses pertinent related calls that were intercepted over the "Gianelli Cellular Telephone" were included in affidavits submitted to the courts by Trooper Nunzio Orlando on November 13, 2003, November 26, 2003, December 12, 2003, December 23, 2003, December 31, 2003, January 9, 2004, January 26, 2004, January 30, 2004, February 10, 2004, and February 25, 2004 (all of said affidavits are incorporated herein).

I note that periodic surveillance of the premises at 420 Main Street, Lynnfield, Massachusetts, was conducted on November 4, 2003 and between November 13, 2003 and March 4, 2004, when electronic surveillance was being conducted of the "Gianelli Cellular Telephone". Some of these surveillance were detailed in affidavits submitted earlier in this investigation. By way of summary, these surveillance revealed a pattern of Arthur Gianelli utilizing the "Gianelli Cellular Telephone" to facilitate the gaming activities of the Gianelli enterprise. It was learned from intercepted conversations over the "Gianelli Cellular Telephone" that Gianelli would instruct only two people, Salvatore Ramasci and Dennis Albertelli, to come to his residence with regards to paying or collecting monies due or owed on account of bets registered with the Gianelli gaming organization. Surveillance indicated that Ramasci and Albertelli would arrive at Gianelli's residence in furtherance of these activities. These surveillance also revealed that Arthur Gianelli would utilize several vehicles to travel and meet people with regards to the aforementioned reasons. Gianelli would frequently utilize a 1996 Mercedes Benz, color black, Massachusetts registration 6701LA, VIN: WDBGA43E8TA317001, registered to Mary Gianelli, of 420 Main Street, Lynnfield, Massachusetts. It should be noted, that during this investigation, Arthur Gianelli had taken two trips to Florida for vacation, one on January 2, 2004 to January 25, 2004 and the other being from February 6, 2004 to February 29, 2004. During these times, Arthur Gianelli continued to supervise the Gianelli gaming organization. Examples of recently intercepted calls and recent physical surveillance are set forth below.

At 12:10 P.M. on November 24, 2003, a call between Arthur Gianelli and Salvatore "Lefty" Ramasci was intercepted over the "Gianelli Cellular Telephone". During this call, Gianelli and Ramasci made arrangements regarding Ramasci delivering gaming material and money to the Gianelli residence which is located at 420 Main Street, Lynnfield, Massachusetts. On this same date, at approximately 4:04 P.M., Trooper Matthew Murphy observed Salvatore Ramasci, (in his 2000 Cadillac Deville color black, bearing Massachusetts registration 442S) turn onto the driveway of the Gianelli residence which is located at 420 Main Street, Lynnfield, Massachusetts. Trooper Murphy also reported that he saw Ramasci lean into the trunk of his car.

13

Based on the above, it is my opinion that Ramasci delivered gaming related material and money to Gianelli at Gianelli's residence.

It had been learned from this investigation, that Arthur Gianelli has illegal poker machines located at several social clubs in the cities of Lowell, Dracut, Beverly, Malden, Revere and Plymouth, Massachusetts. Intercepted conversations revealed that Gianelli with the assistance of Albertelli would pick up money that was generated from each machine on a weekly basis. In addition, Gianelli and Albertelli were also responsible to pay out the money that people won from the machines. Furthermore, it was learned that a certain amount of points would indicate how much money was needed to be paid out. On December 9, 2003, it was learned from intercepted conversations, that Gianelli and Albertelli would meet in the city of Lowell, regarding the above matter related to the illegal poker machines. On this date, at approximately 8:45 A.M., Trooper Matthew Murphy conducted a surveillance and reported that he observed Gianelli operating a 1996 Mercedes Benz, color black, Massachusetts registration 6701LA, VIN: WDBGA43E8TA317001, registered to Mary Gianelli, of 420 Main Street, Lynnfield, Massachusetts, with Albertelli as a passenger. Trooper Murphy also reported that both subjects stopped at the Polish American Veterans Club and the Dom Polski Club, both located in the city of Lowell. It was learned from intercepted conversations that both clubs have illegal poker machines that are owned by Arthur Gianelli. Based on the above facts and coupled with my experience, it is my opinion that records and money pertaining to the Gianelli gaming business were inside the aforementioned vehicle.

On January 26, 2004, there were a series of intercepted telephone calls between Arthur Gianelli, Dennis Albertelli and Salvatore Ramasci. It is my opinion that during these telephone calls, Arthur Gianelli was within his residence which is located at 420 Main Street, Lynnfield, Massachusetts. I base my opinion from the following telephone calls:

14

On this same date at approximately 12:34 P.M., a telephone call was intercepted over the "Ramasci Cellular Telephone"(617) 893-8559 between Gianelli and Ramasci. During this conversation, Ramasci asked Gianelli if he needed anything because Ramasci was en route to see one of their betting customer's. Gianelli expressed to Ramasci that, " if he has something take it". At the end of the conversation, Gianelli asked Ramasci what time was he going to come over. Ramasci said that he would be arriving at Gianelli's house at 2:00 P.M.

On this same date at approximately 4:21 P.M., a telephone call was intercepted over the "Gianelli Cellular Telephone" between Gianelli and Dennis Albertelli. At the beginning of the conversation, Gianelli tells Albertelli that he has Ramasci with him. During the conversation, Gianelli and Albertelli mention several bettors and/or agents by their code names and discuss how much money could be bet on the Super Bowl. Several times Gianelli had to speak to Ramasci in the background explaining to him what Albertelli had just said in regards to the Gianelli gaming organization.

On this same date at approximately 4:25 P.M., a follow up telephone call was intercepted over the "Gianelli Cellular Telephone" between the above listed subjects. Gianelli and Albertelli continued with the same conversation related to their bettors and /or agents associated with the Gianelli gaming organization. Towards the end of this conversation, Gianelli asked Ramasci if he had anything else to say to Albertelli. Ramasci expressed to Gianelli to inform Albertelli that he would have a new telephone the following day.

On March 1, 2004, at approximately 5:36 P.M., an outgoing telephone call was intercepted over the "Gianelli Cellular Telephone" to the " Albertelli Telephone A". During this conversation, Gianelli informed Albertelli that he was home. Later in the conversation, Gianelli instructed Albertelli to meet him tomorrow morning at the Polish club in Lowell and to bring with him the machine money. In addition, Gianelli stated to Albertelli that he will review all the sheets tonight and that he (Albertelli) should continue to take care of that thing with Ramasci. Based on the above telephone call and that facts that I have learned from this investigation, it is

15

my opinion that Gianelli was within his residence at 420 Main Street, Lynnfield, Massachusetts while conducting his supervisory role within the Gianelli criminal enterprise. Furthermore, it is my opinion that the machine money that Gianelli is referring to is the revenue generated from the illegal poker machines that Gianelli has located within various social clubs throughout Massachusetts.

On March 2, 2004, at approximately 8:30 A.M., Trooper Matthew Murphy conducted a surveillance in the city of Lowell, Massachusetts regarding the above incident. On this same date, at approximately 9:30 A.M., Trooper Murphy reported that the Gianelli vehicle the 1996 Mercedes Benz, color black, Massachusetts registration 6701LA, VIN: WDBGA43E8TA317001, registered to Mary Gianelli, of 420 Main Street, Lynnfield, Massachusetts, was parked at the Dom Polski social club in Lowell, Massachusetts. At approximately 10:46 A.M., Trooper Murphy indicated that the Gianelli vehicle had just left the Polski Social Club, (which is also located in Lowell ), with Gianelli as the operator and Albertelli as the front passenger.

On March 2, 2004, at approximately 11:48 A.M., an outgoing telephone call was intercepted over the " Gianelli Cellular Telephone " to Charles " Chuckie " Vozzella. During this conversation, Gianelli and Vozzella made arrangements to meet on Wednesday, March 3, 2004, at 11: 30 A.M. at 10 Saratoga Street, "Central Park Bowling Lanes", in East Boston, Massachusetts.

On March 3, 2004, at approximately 11:00 A.M., Trooper Timothy Foley conducted a surveillance of the Central Park Bowling Lanes. At approximately 12:10 P.M., Trooper Foley reported that Gianelli had arrived in his 1996 Mercedes Benz, color black, Massachusetts registration 6701LA, VIN: WDBGA43E8TA317001, registered to Mary Gianelli, of 420 Main Street, Lynnfield, Massachusetts, and enter the above listed establishment. At 12:40 P.M., Trooper Foley indicated that Gianelli had left the bowling lanes and departed in his vehicle. Based on the above listed telephone call, physical surveillance and the intelligence that was gathered from this investigation, it is my opinion that Gianelli met with Vozzella regarding

16

picking up money that was generated from Gianelli's illegal poker machines that are located within the Central Park Bowling Lanes.

It should be noted that the above are only examples of numerous pertinent telephone calls and surveillance regarding Arthur Gianelli utilizing his cellular telephone, the "Gianelli Cellular Telephone". I also note that during this investigation, Arthur Gianelli utilized the two aforementioned telephone numbers that are installed upon the premises of 420 Main Street, Lynnfield, Massachusetts, in furtherance of his gaming operation. In addition, Gianelli used his 1996 Mercedes Benz, color black, Massachusetts registration 6701LA, VIN: WDBGA43E8TA317001, registered to Mary Gianelli, of 420 Main Street, Lynnfield, Massachusetts, and his residence of 420 Main Street, Lynnfield, Massachusetts in furtherance of the Gianelli gaming enterprise

Based upon the information set forth in this and prior affidavits, which are attached hereto and incorporated herein by reference for all purposes, I believe that there is probable cause to believe that Arthur Gianelli, both individually and in the course of joint ventures to operate the Gianelli gaming business, continues to use (1) telephones numbered (781) 640-3325, ("Gianelli Cellular Telephone"), including the two telephones (781) 334-2198 and (781) 334-2191 both subscribed to Maryanne Gianelli and are installed upon the premises of 420 Main Street, Lynnfield, Massachusetts the (2) his residence at 420 Main Street, Lynnfield, Massachusetts, and (3) the vehicle that he drives, the 1996 Mercedes Benz, color black, Massachusetts registration 6701LA, VIN: WDBGA43E8TA317001, registered to Mary Gianelli, of 420 Main Street, Lynnfield, Massachusetts.

I further believe there is probable cause to believe that evidence of Gianelli's illegal gaming criminal enterprise will be found on Gianelli's person, inside Gianelli's residence located at 420 Main Street, Lynnfield, Massachusetts, as well as inside the above listed vehicle that Gianelli utilizes. Based on the facts and information set forth herein and in the previously submitted affidavits that are incorporated herein, I believe that I have probable cause to believe

17

that Arthur Gianelli utilizes the premises located at 420 Main Street, Lynnfield, Massachusetts, in furtherance of Gianelli's gaming organization. More particularly, I note that this investigation has revealed that Arthur Gianelli resides at the aforementioned location, has used the two telephones that are installed upon the premises of 420 Main Street, Lynnfield, Massachusetts and has been within said location while communicating over the " Gianelli Cellular Telephone" to discuss various matters related to the Gianelli gaming organization.

It is respectfully requested that the court issue a search warrant authorizing the search of the room and or rooms which constitute and comprise the premises of 420 Main Street, in the town of Lynnfield, Massachusetts. The premises located at 420 Main Street, in the town of Lynnfield, Massachusetts, is specifically described as white brick structure with a fountain located in the middle of the front circular driveway. In addition, a short brick wall surrounds the fountain.

## 151 HUDSON ROAD, STOW, MASSACHUSETTS

Based on the facts and information set forth herein and in the previously submitted affidavits that are incorporated herein, I believe that I have probable cause to believe that Dennis Albertelli utilizes the premises located at 151 Hudson Road, Stow, Massachusetts, in furtherance of the Gianelli bookmaking activities and organization. More particularly, I note that this investigation has revealed that Dennis Albertelli resides at the aforementioned location, and has been within said location while utilizing the " Albertelli Cellular Telephones" to discuss various matters related to the Gianelli gaming organization, and Albertelli's illegal football card business. (It should also be noted that Dennis Albertelli utilized two cellular telephones during this investigation: (781) 710-2154 and (978) 758-4162). During this investigation, Dennis Albertelli further insulated himself from police detection by obtaining the latter cellular telephone with telephone number (978) 758-4162.

18

Furthermore, I believe that I have probable cause to believe that Dennis Albertelli resides at 151 Hudson Road, Stow, Massachusetts. Throughout the course of this investigation, Trooper Nunzio Orlando has provided numerous intercepted gaming conversations involving Dennis Albertelli and his dominant role in the Gianelli organization. I further believe that I have probable cause to believe that Dennis Albertelli is currently using his residence to keep records and proceeds related to the Gianelli gaming organization. Recent conversations have been intercepted which indicate that Dennis Albertelli continues to utilizes his residence to keep said records and proceeds. All of these calls are intercepted over the "Albertelli Cellular Telephones" which I have outlined above, (from hereinafter these telephones will be referred to as "Albertelli Telephone A" and "New Albertelli Cellular Telephone"), in furtherance of the Gianelli gaming organization. It was learned from these intercepted telephone calls, that Dennis Albertelli was either at his home which is located at 151 Hudson Street, Stow, Massachusetts, or in his vehicle, a 1997 Jaguar VDP, color black, Massachusetts registration 1164XY, registered to Dennis Albertelli of 151 Hudson Street, Stow, Massachusetts, while conducting matters related to the Gianelli illegal gaming enterprise. In addition, Dennis Albertelli utilizes a fax machine telephone numbered (978) 897-6817, within his residence in furtherance of the Gianelli gaming organization. According to AnyWho Internet Directory Assistance provided by ATT, telephone numbered (978) 897-6817 is listed to a Derrik Albertelli of 151 Hudson Road, Stow, Massachusetts. It was learned from this investigation that Derrik Albertelli is the son of Dennis Albertelli.

Pursuant to wiretap warrants issued by Associate Justice Welch and Associate Justice Riley on October 31, 2003, November 13, 2003, November 26, 2003, December 12, 2003, December 23, 2003, December 31, 2003, January 9, 2004, January 26, 2004, January 30, 2004, February 10, 2004, and February 25, 2004, communications occurring over the two "Albertelli Cellular Telephones" were intercepted, monitored, and recorded from October 31, 2003 to March 4, 2004. These telephones are numbered (781) 710-2154 and (978) 758-4162). In the affidavits submitted to the courts in support of the applications for the wiretap warrants for these telephones, telephone numbered (781) 710-2154 was referred to as the "Albertelli Telephone A"

19

and telephone numbered (978) 758-4162 was referred to as the "New Albertelli Cellular Telephone". Herein, this telephone will be referred to in the same manner. According to records of Verizon Wireless, telephones numbered (781) 710-2154 is subscribed to by Dennis Albertelli with a billing address of 151 Hudson Street, Stow, Massachusetts, and (978) 758-4162 is subscribed to a Edward Gilbert of 15 B Barrows Street, Providence, Rhode Island. These telephones are utilized by Dennis Albertelli to facilitate the operation of the Gianelli gaming organization. Physical and electronic surveillance further revealed that on several occasions, Dennis Albertelli was present at his residence located at 151 Hudson Road, Stow, Massachusetts, and used the "Albertelli Telephone A" and the "New Albertelli Cellular Telephone" to review the winnings and losses incurred by the Gianelli gaming organization on account of bets placed by various "agents" and/or bettors, and otherwise conduct the business of the Gianelli gaming organization. In addition to the above facts, it should be noted that Dennis Albertelli was intercepted over the cellular telephone that was utilized by Salvatore Ramasci, by talking to him via the telephone numbered (978) 897-7015 that is installed at 151 Hudson Road, Stow, Massachusetts. According to the Verizon New England Inc., telephone being numbered (978) 897-7015 is subscribed to by Dennis Albertelli and installed upon the premises of 151 Hudson Street, Stow, Massachusetts. Some of these conversations were related to the Gianelli gaming organization.

Between October 31, 2003 and March 4, 2004, a high number of completed telephone calls were intercepted over the "Albertelli Telephone A" and the "New Albertelli Cellular Telephone", and the vast majority of these calls included gaming related matters, including conversations regarding the amounts of money won, lost, due and owed on account of bets were reviewed, other matters pertaining to the operation of one or more bookmaking offices and operations. In addition to these telephone calls there were intercepted calls regarding arson. Transcripts and summaries of many of theses pertinent related calls that were intercepted over the "Albertelli Telephone A" and the "New Albertelli Cellular Telephone" were included in affidavits submitted to the courts by Trooper Nunzio Orlando on October 31, 2003, November 13, 2003, November 26, 2003, December 12, 2003, December 23, 2003, December 31, 2003,

January 9, 2004, January 26, 2004, January 30, 2004, February 10, 2004, and February 25, 2004. (all of said affidavits are incorporated herein).

I note that periodic surveillance of the premises at 151 Hudson Road, Stow, Massachusetts, was conducted on November 11, 2003 and between October 31, 2003 and March 4, 2004, when electronic surveillance was being conducted of the "Albertelli Telephone A" and the "New Albertelli Cellular Telephone". Some of these surveillance were detailed in affidavits submitted earlier in this investigation. By way of summary, these surveillance revealed a pattern of Dennis Albertelli utilizing the above listed telephones, including his home telephone, to facilitate the gaming activities of the Gianelli enterprise. It was learned from intercepted conversations over the "Albertelli Telephone A" and the "New Albertelli Cellular Telephone", that his other son Randy Albertelli, who is a named party in this investigation, would go to Dennis Albertelli's residence at 151 Hudson Road, Stow, Massachusetts with regards to picking up money. It is my opinion that this money was generated from the illegal gaming business. These surveillance also revealed that Dennis Albertelli would utilize several vehicles to travel and meet people with regards to the aforementioned reasons. Dennis Albertelli would frequently utilize a 1997 Jaguar VDP, color black, Massachusetts registration 1164XY, registered to Dennis Albertelli of 151 Hudson Street, Stow, Massachusetts. Furthermore, Dennis Albertelli had received money via the mail from a bettor who resides in California. It should be noted, that during this investigation, Dennis Albertelli had taken two trips, one to New Jersey/New York and the other to Florida. During these times, Dennis Albertelli continued to assist and participate with the daily operations of the Gianelli gaming organization. Examples of recently intercepted calls and recent physical surveillance are set forth below.

On November 26, 2003, at approximately 4:47 P.M., an outgoing telephone call from the "Albertelli Telephone A", to Harry Marderosian (an agent for Albertelli's illegal football card business) was intercepted. During this call Dennis Albertelli asked Marderosian if he was going to come by his (Albertelli's) house. Marderosian responded, " no, tomorrow I was gonna, I was gonna stop by tomorrow about maybe auh nine thirty ten o'clock because I'll have what I picked

21

up". Later in the conversation Albertelli stated that he will be home the following day. On this date at approximately 6:25 P.M., a second outgoing telephone call from the "Albertelli Telephone A", to Harry Marderosian was intercepted. During this call Dennis Albertelli and Marderosian arrange for Marderosian to stop by Albertelli's residence and drop off the gaming material and put it in the freezer which is located in the garage. In the conversation Marderosian stated, "I'll put it in the freezer Dennis, like I always do". Based on the above conversations, it is my opinion that Marderosian is delivering money to Dennis Albertelli that was generated from the illegal football card business that Albertelli supervises. In addition, it is my opinion that Marderosian routinely delivers the money to Albertelli's residence.

On November 28, 2003, at approximately 7:07 P.M., an incoming telephone call was intercepted over the "Ramasci Cellular Telephone ", from telephone numbered (978) 897-7015, which is listed to Dennis Albertelli and installed upon the premises of 151 Hudson Road, Stow, Massachusetts. The subjects that were intercepted were Salvatore Ramasci and Dennis Albertelli. During this telephone call, Albertelli and Ramasci discuss gaming figures that are related to a bettor with the code name S11.

On December 13, 2003 at 2:30 P.M., an incoming telephone call was intercepted over the "Albertelli Telephone A", between Dennis Albertelli and Arthur Gianelli. During this conversation, Albertelli explained to Gianelli that he had just received a check for three thousand dollars from the bettor in California.

On December 22, 2003, at approximately 4:22 P.M., an incoming telephone call was intercepted over the "Ramasci Cellular Telephone ", from telephone numbered (978) 897-7015, which is listed to Dennis Albertelli and installed upon the premises of 151 Hudson Road, Stow, Massachusetts. The subjects that were intercepted were Salvatore Ramasci and Dennis Albertelli. During this telephone call, Albertelli and Ramasci reviewed the amounts of money that certain bettors and/or agents can bet with the Gianelli gaming organization.

22

On January 22, 2004, at approximately 8:57 A.M., a telephone call was intercepted over the "New Albertelli Cellular Telephone" between Dennis Albertelli and Harold Marderosian. During this conversation, Albertelli and Marderosian made arrangements to meet regarding the illegal football cards. Later in the conversation, Marderosian asked Albertelli where was he going to meet him, at Albertelli's house or office in Clinton which is located at 75 Green Street, Clinton, Massachusetts. Albertelli stated to Marderosian that he would meet him at his house (Albertelli's house 151 Hudson Road, Stow, Massachusetts) because all the monies were there.

On February 15, 2004, at approximately 10:56 A.M., an incoming telephone call was intercepted over the "New Albertelli Cellular Telephone" between Salvatore Ramasci and Dennis Albertelli. During this conversation, both subjects discuss meeting together to exchange figures that were generated from the Gianelli gaming organization. Furthermore, Albertelli provided Ramasci with a fax numbered (978) 897-6817, so that Ramasci can fax over the figures to Albertelli. It should be noted, this fax number was mentioned above and is installed upon the premises of 151 Hudson Road, Stow, Massachusetts. On this same date, at approximately 6:06 P.M., a telephone call was intercepted over the "New Albertelli Cellular Telephone" between Salvatore Ramasci and Dennis Albertelli. During this conversation, Ramasci explained to Albertelli that he attempted to send the fax but the telephone line was busy. Albertelli stated to Ramasci that he was on the computer and that he won't know if he got the fax until he returns home later that evening.

On February 16, 2004, at approximately 2:14 P.M., a telephone call was intercepted over the "New Albertelli Cellular Telephone" between Arthur Gianelli and Dennis Albertelli. During this conversation, Albertelli explains to Gianelli that he has everything from Lefty (Salvatore Ramasci) and that he will return home at 4:00 P.M. and at this time he will fax Gianelli the sheet. Based on the above listed telephone calls, it is my opinion that Ramasci faxed to Albertelli's home fax machine the gaming sheet (all figures indicating either monies won or lost from bettors and/or agents) for the week ending February 15, 2004. It is also my opinion that once the gaming sheet is reviewed by Albertelli, he would in return fax this sheet to Gianelli who is in Florida. It

23

should also be noted that on this same date it was learned from intercepted conversations that Dennis Albertelli and Salvatore Ramasci had arranged to meet regarding matters related to the Gianelli gaming operation. Based on what I have learned from this investigation, and having discussed it with Trooper Nunzio Orlando, it is my opinion that Salvatore Ramasci would be delivering gaming money and weekly sheets to Dennis Albertelli. On this same date at approximately 2:45 P.M., Trooper Matthew Murphy conducted a surveillance regarding the above matter. Trooper Murphy reported that he observed Dennis Albertelli's 1997 Jaguar VDP, color black, Massachusetts registration 1164XY, registered to Dennis Albertelli of 151 Hudson Street, Stow, Massachusetts, parked in the side parking area of the gas station located at Crosby's Corner in Concord, Massachusetts. Furthermore, Dennis Albertelli was the operator of the vehicle. Within minutes, Salvatore Ramasci drove into the gas station and pulled up next to Albertelli's vehicle. Trooper Murphy also reported that he saw Ramasci hand over something to Albertelli. On this same date at approximately 3:52 P.M., Trooper Murphy saw Albertelli's vehicle parked at his residence which is located at 151 Hudson Road, Stow, Massachusetts.

On February 25, 2004, at approximately 8:03 P.M., an incoming telephone call was intercepted over the "New Albertelli Cellular Telephone" between Dennis Albertelli and Thomas O'Brien, also known as N-38. During this conversation, O'Brien explained to Albertelli that he was all squared away on that thing and asked if he can get it again. Later in the conversation, Albertelli asked O'Brien how much he got last time and O'Brien responded twelve thousand. Albertelli asked O'Brien to call him on Friday and that it shouldn't be a problem. On February 26, 2004, at approximately 8:16 P.M., an outgoing telephone call was intercepted over the "New Albertelli Cellular Telephone" between Dennis Albertelli and Harold Marderosian. During this conversation, Albertelli explained to Marderosian that "N38 "(Tommy O'Brien) needed twelve thousand dollars back. Furthermore, Albertelli instructed Marderosian to go over to Albertelli's residence ( which is located at 151 Hudson Road, Stow, Massachusetts ), in the morning at approximately 10:00 A.M., on February 27, 2004, and pick up the money from Albertelli's wife Giselle. In addition, Albertelli informed Marderosian that the percentage on the loan was three points and the first week interest would be three hundred and sixty dollars. On February 27,

24

2004, at approximately 10:07 A.M., Sergeant Mark Caponette conducted a surveillance of the Albertelli residence which is located at 151 Hudson Road, Stow, Massachusetts. Sergeant Caponette reported that he observed a 1999 Oldsmobile Regency, color red, bearing Massachusetts registration 72TN14, registered to Harold Marderosian of 219 Crawford Street, Northborough, Massachusetts, backing out of the Albertelli residence which is located at 151 Hudson Road, Stow, Massachusetts. On February 27, 2004, an outgoing telephone call was intercepted over the " New Albertelli Cellular Telephone" between Dennis Albertelli and Thomas O'Brien. During this conversation, Albertelli told O'Brien that Harry will meet him (O'Brien) at the same place and time. From the gist of the conversation, O'Brien appeared to know the time and place with regards to meeting Marderosian. Based on the above listed facts and coupled with information that was learned throughout this investigation, it is my opinion that O'Brien had obtained a twelve thousand dollar loan with a three percent interest per week from Albertelli in the past and then received another twelve thousand dollar loan with the same percentage of interest from Albertelli. It is also my opinion that Albertelli utilized Harold Marderosian to deliver the aforementioned loan. Furthermore, it had been learned from intercepted telephone conversations and physical surveillance, that Dennis Albertelli's wife Giselle, is fully aware of the illegal business that her husband and son Randy are involved with. Based on this, it is my opinion that Giselle Albertelli has knowledge that records and evidence pertaining to the gaming business are within the residence. I further believe that Albertelli utilizes his aforementioned residence in furtherance of the Gianelli gaming organization.

On March 2, 2004, at approximately 11:47A.M., an outgoing telephone call was intercepted over the " New Albertelli Cellular Telephone" to the " Ramasci Cellular Telephone III ". During this conversation, Albertelli and Ramasci made arrangements to meet at Crosby's Corner in Concord, Massachusetts. On this same date, at approximately 12:15 P.M., Trooper Matthew Murphy conducted a surveillance at the above listed location. At approximately 12:20 P.M., Trooper Murphy reported that Albertelli had arrived at this location in his 1997 Jaguar VDP, color black, Massachusetts registration 1164XY, registered to Dennis Albertelli of 151 Hudson Street, Stow, Massachusetts. At approximately 12:27 P.M., Trooper Murphy indicated

that Ramasci had turned into this location in his 2000 Cadillac Deville, color black, Massachusetts registration 442S, registered to Salvatore Ramasci of 66 Woods Road, Medford, Massachusetts, and parked his vehicle next to Albertelli's car. Furthermore, Trooper Murphy reported that he observed both Albertelli and Ramasci exchange items. Based on the above listed facts and coupled with the information that I learned from this investigation, it is my opinion that Ramasci had delivered gaming money and sheets, in furtherance of the Gianelli gaming organization.

It should be noted that the above are only examples of numerous pertinent telephone calls and surveillance regarding Dennis Albertelli utilizing his cellular telephones, the "Albertelli Telephone A" and the "New Albertelli Cellular Telephone", some examples of Dennis Albertelli using the telephone number that is installed upon the premises of 151 Hudson Road, Stow, Massachusetts, the fax number that is installed upon the premises of 151 Hudson Road, Stow, Massachusetts, 1997 Jaguar VDP, color black, Massachusetts registration 1164XY, registered to Dennis Albertelli of 151 Hudson Street, Stow, Massachusetts, and his residence of 151 Hudson Road, Stow, Massachusetts, in furtherance of the Gianelli gaming enterprise.

Based upon the information set forth in this and prior affidavits, which are attached hereto and incorporated herein by reference for all purposes, I believe that there is probable cause to believe that Dennis Albertelli, both individually and in the course of joint ventures to operate the Gianelli gaming business, and is involved in the lending of money at usurious interest rates in excess of twenty percent per anum in violation of the criminal usury statute, Massachusetts General Law Chapter 271, section 49, continues to use (1) telephones numbered (781) 710-2154, (it should be noted that Dennis Albertelli had instructed several people related to the gaming business, to just call him on this telephone number for emergency situations), (978) 758-4162, the "Albertelli Telephone A" and the "New Albertelli Cellular Telephone", including the two telephone lines (978) 897-7015 and (978) 897-6817, the first subscribed to Dennis Albertelli and the second to Derrik Albertelli, and both lines are installed upon the premises of 151 Hudson Road, Stow, Massachusetts, (2) his residence at 151 Hudson Road, Stow, Massachusetts, and (3)

26

the vehicle that he drives, the 1997 Jaguar VDP, color black, Massachusetts registration 1164XY, registered to Dennis Albertelli of 151 Hudson Street, Stow, Massachusetts, and his residence of 151 Hudson Road, Stow, Massachusetts.

I further believe there is probable cause to believe that evidence of Gianelli's gaming criminal enterprise, and Albertelli's Criminal Usury business, will be found on Dennis Albertelli's person, inside Dennis Albertelli's residence located at 151 Hudson Road, Stow, Massachusetts, as well as inside the above listed vehicle that Dennis Albertelli utilizes. Based on the facts and information set forth herein and in the previously submitted affidavits that are incorporated herein, I believe that I have probable cause to believe that Dennis Albertelli utilizes the premises located at 151 Hudson Road, Stow, Massachusetts, in furtherance of Gianelli's gaming organization. More particularly, I note that this investigation has revealed that Dennis Albertelli resides at the aforementioned location, has used the two telephones lines that are installed upon the premises of 151 Hudson Road, Stow, Massachusetts and has been within said location while communicating over the "Albertelli Telephone A" and the "New Albertelli Cellular Telephone", to discuss various matters related to the Gianelli gaming organization.

It is respectfully requested that the court issue a search warrant authorizing the search of the room and or rooms which constitute and comprise the premises of 151 Hudson Road, in the town of Stow, Massachusetts. The premises located at 151 Hudson Road, in the town of Stow, Massachusetts, is specifically described as a two story structure, color brown, made up of wood and brick with a single car garage to the right. The front door which is brown in color is located at the center of the house with brick steps.

## 48 PLEASANT STREET, UNIT 11, STONEHAM, MASSACHUSETTS

Based on the facts and information set forth herein and in the previously submitted affidavits that are incorporated herein, I believe that I have probable cause to believe that Salvatore "Lefty" Ramasci utilizes the premises located at 48 Pleasant Street, Unit 11, Stoneham,

27

Massachusetts, in furtherance of the Gianelli bookmaking activities and organization. More particularly, I note that this investigation has revealed that Salvatore Ramasci resides at the aforementioned location, and has been within said location while utilizing the " Ramasci Cellular Telephones" to discuss various matters related to the Gianelli gaming organization. (It should be noted that Salvatore Ramasci utilized three cellular telephones during this investigation: (617) 571-8262, (617) 893-8559 and (617) 407-8932. It is my opinion that Salvatore Ramasci changed his telephones to further insulate himself from police detection.

Furthermore, I submit that I have probable cause to believe that Salvatore Ramasci resides at 48 Pleasant Street, Unit 11, Stoneham, Massachusetts. Throughout the course of this investigation, Trooper Nunzio Orlando has provided numerous intercepted gaming conversations involving Salvatore Ramasci and his prominent role in the Gianelli organization. I further believe that I have probable cause to believe that Salvatore Ramacsi is currently using his residence to keep records and proceeds related to the Gianelli gaming organization. Recent conversations have been intercepted which indicate that Salvatore Ramasci continues to utilizes his residence to keep said records and proceeds. All of these calls are intercepted over the "Ramasci Cellular Telephones" which I have outlined above, (from hereinafter these telephones will be referred to as the "Ramasci Cellular Telephone ", "New Ramasci Cellular Telephone", and "Ramasci Cellular Telephone III ", in furtherance of the Gianelli gaming organization. It was learned from these intercepted telephone calls, that Salvatore Ramasci was either at his home which is located at 48 Pleasant Street, Unit 11, Stoneham, Massachusetts, or in his vehicle, a 2000 Cadillac Deville, color black, Massachusetts registration 442S, registered to Salvatore Ramasci of 66 Woods Road, Medford, Massachusetts. It was also learned from this investigation that 66 Woods Road in Medford is an address belonging to a relative of Salvatore Ramasci. In addition, Salvatore Ramasci utilized a fax machine telephone numbered (781) 435-1330, within his residence in furtherance of the Gianelli gaming organization. According to AnyWho Internet Directory Assistance provided by ATT, telephone numbered (781) 435-1330 is listed to a Salvatore Ramasci of 48 Pleasant Street, Stoneham, Massachusetts.

28

Pursuant to wiretap warrants issued by Associate Justice Welch and Associate Justice Reilly on October 31, 2003, November 13, 2003, November 26, 2003, December 12, 2003, December 23, 2003, December 31, 2003, January 9, 2004, January 26, 2004, January 30, 2004, February 10, 2004, and February 25, 2004, communications occurring over the three "Ramasci Cellular Telephones" were intercepted, monitored, and recorded from October 31, 2003 to March 4, 2004. These telephones are numbered (617) 571-8262, (617) 893-8559 and (617) 407-8932. In the affidavits submitted to the courts in support of the applications for the wiretap warrants for these telephones, telephone numbered (617) 571-8262 was referred to as the "Ramasci Cellular Telephone", telephone numbered (617) 893-8559 was called the "New Ramasci Cellular Telephone"and the telephone numbered (617) 407-8932 was labeled as " Ramasci Cellular Telephone III ". Herein, this telephone will be referred to in the same manner. According to records of Verizon Wireless, telephone numbered (617) 571-8262 is subscribed to by Dennis Albertelli with a billing address of 151 Hudson Street, Stow, Massachusetts. It was learned from Cellular One that telephone numbered (617) 893-8559 had no billing information regarding this number. Furthermore, billing information from T-Mobile USA for telephone numbered (617) 407-8932 had no billing information and it only indicated that it was a prepay telephone. These telephones were and are being utilized by Salvatore Ramasci to facilitate the operation of the Gianelli gaming organization. Physical and electronic surveillance further revealed that on several occasions, Salvatore Ramasci was present at his residence located at 48 Pleasant Street, Unit 11, Stoneham, Massachusetts, and used either the "Ramasci Cellular Telephone ", "New Ramasci Cellular Telephone", or "Ramasci Cellular Telephone III ", to review the winnings and losses incurred by the Gianelli gaming organization on account of bets placed by various "agents" and/or bettors, and otherwise conduct the business of the Gianelli gaming organization.

Between October 31, 2003 and March 4, 2004, numerous completed telephone calls were intercepted over the "Ramasci Cellular Telephone ", "New Ramasci Cellular Telephone", and "Ramasci Cellular Telephone III ", and the vast majority of these calls included gaming related

matters, including conversations regarding the amounts of money won, lost, due and owed on account of bets were reviewed, and other matters pertaining to the operation of one or more bookmaking offices and operations. In addition to these telephone calls there were intercepted calls regarding arson and cryptic conversations concerning the "UnderBoss" of the New England Mafia, Carmen DiNunzio. Transcripts and summaries of many of theses pertinent related calls that were intercepted over the "Ramasci Cellular Telephone ", "New Ramasci Cellular Telephone", and "Ramasci Cellular Telephone III ", were included in affidavits submitted to the courts by Trooper Nunzio Orlando on October 31, 2003, November 13, 2003, November 26, 2003, December 12, 2003, December 23, 2003, December 31, 2003, January 9, 2004, January 26, 2004, January 30, 2004, February 10, 2004, and February 25, 2004 (all of said affidavits are incorporated herein).

I note that periodic surveillance of the premises at 48 Pleasant Street, Stoneham, Massachusetts, was conducted on November 24, 2003 and between October 31, 2003 and March 4, 2004, when electronic surveillance was being conducted of the "Ramasci Cellular Telephone ", "New Ramasci Cellular Telephone", and "Ramasci Cellular Telephone III ". Some of these surveillance were detailed in affidavits submitted earlier in this investigation. By way of summary, these surveillance revealed a pattern of Salvatore Ramasci utilizing the above listed telephones, including his home fax telephone, to facilitate the gaming activities of the Gianelli enterprise. It was learned from intercepted conversations over the "Ramasci Cellular Telephone", "New Ramasci Cellular Telephone", and "Ramasci Cellular Telephone III ", that Dennis Albertelli would go to Ramasci's residence with regards to picking up money. It is my opinion that the money was generated from the illegal gaming business. These surveillance also revealed that Salvatore Ramasci would utilize his vehicle to travel and meet bettors and/or agents with regards to the aforementioned reasons. Salvatore Ramasci would utilize a 2000 Cadillac Deville, color black, Massachusetts registration 442S, registered to Salvatore Ramasci of 66 Woods Road, Medford, Massachusetts. Examples of recently intercepted calls and recent physical surveillance are set forth below.

30

Massachusetts. Based on these telephone calls coupled with the surveillance and what I have learned from this investigation, it is my opinion that Albertelli was going to Ramasci's residence to pick up gaming sheets and money that was generated from the Gianelli gaming organization.

On February 16, 2004, at approximately 1:51 P.M., an incoming telephone call was intercepted over the "New Albertelli Cellular Telephone" from the "Ramasci Cellular Telephone III ". During this conversation, Albertelli and Ramasci agreed to meet at Crosby's Corner in Concord, Massachusetts at 2:45P.M. On this same date, at approximately 2:25 P.M., Trooper Matthew Murphy conducted a surveillance of Ramasci's residence which is located at 48 Pleasant Street, Unit 11, Stoneham, Massachusetts. Trooper Murphy reported that he observed a 2000 Cadillac Deville, color black, Massachusetts registration 442S, registered to Salvatore Ramasci, exit the garage of the above listed residence. Trooper Murphy continued with the surveillance and saw Albertelli and Ramasci meet at the above listed location. In addition, prior to Ramasci leaving his residence, telephone calls of Ramasci were intercepted over the"Ramasci Cellular Telephone III" in furtherance of the Gianelli gaming organization. Based on the above facts, it is my opinion that Salvatore Ramasci was within his residence while utilizing his cellular telephone and conducted matters related to the Gianelli gaming business.

On February 19, 2004, at approximately 1:11 P.M., an outgoing telephone call was intercepted over the " Ramasci Cellular Telephone III " to Christopher Willcox, an agent for the Gianelli gaming organization. During this conversation, both subjects agreed to meet at the East Side Athletic Club, in Malden, Massachusetts, at approximately 2:30 P.M. On this same date, Trooper Timothy Foley conducted a surveillance of the above listed location. Trooper Foley reported that he saw Ramasci park his 2000 Cadillac Deville, color black, Massachusetts registration 442S, registered to Salvatore Ramasci, in the area of the East Side Athletic Club. Furthermore, Trooper Foley indicated that he observed Ramasci open the truck of his vehicle, retrieve an item and then enter into the club. On this date at approximately 2:42 P.M., Trooper Foley noted that he saw Dennis Willcox enter the club. Based on the above facts and having

32

talked to Trooper Nunzio Orlando, it is my opinion that Willcox was picking up gaming money that he won from the Gianelli gaming organization.

On February 26, 2004, at approximately 10:27 A.M., an outgoing telephone call was intercepted over the " Ramasci Cellular Telephone III " to a subjected named Stevie. During this conversation, Stevie complains to Ramasci that the Duke Sports web site had the wrong score posted for a game that Stevie bet on. Ramasci explained to Stevie that when he (Ramasci) got home he would look into the above problem. Based on this call and other facts that I have learned from this investigation, it is my opinion that Ramasci utilizes his residence which is located at 48 Pleasant Street, Unit11, Stoneham, Massachusetts, in furtherance of the Gianelli gaming operation.

It should be noted that a physical surveillance of Salvatore Ramasci utilizing his vehicle in furtherance of the Gianelli gaming organization was conducted on March 2, 2004 and is outlined above in the Dennis Albertelli section.

Based upon the information set forth in this and prior affidavits, which are attached hereto and incorporated herein by reference for all purposes, I believe that there is probable cause to believe that Salvatore Ramasci, both individually and in the course of joint ventures to operate the Gianelli gaming business, continues to use (1) telephones numbered (617) 571-8262, the ("Ramasci Cellular Telephone"), telephone numbered (617) 893-8559, the (New Ramasci Cellular Telephone) and (617) 407-8932, the ( Ramasci Cellular Telephone III), (2) his residence at 48 Pleasant Street, Unit 11, Stoneham, Massachusetts, and (3) the vehicle that he drives, the 2000 Cadillac Deville, color black, Massachusetts registration 442S, registered to Salvatore Ramasci of 66 Woods Road, Medford, Massachusetts.

I further believe there is probable cause to believe that evidence of Gianelli's gaming criminal enterprise will be found on Salvatore Ramasci's person, inside Salvatore Ramasci's residence located at 48 Pleasant Street, Unit 11, Stoneham, Massachusetts, as well as inside the

33

above listed vehicle that Salvatore Ramasci utilizes. Based on the facts and information set forth herein and in the previously submitted affidavits that are incorporated herein, I believe that I have probable cause to believe that Salvatore Ramasci utilizes the premises located at 48 Pleasant Street, Unit 11, Stoneham, Massachusetts, in furtherance of Gianelli's gaming organization. More particularly, I note that this investigation has revealed that Salvatore Ramasci resides at the aforementioned location, has used the fax telephones line that is installed upon the premises of 48 Pleasant Street, Unit 11, Stoneham, Massachusetts and has been within said location while communicating over the "Ramasci Cellular Telephone " the "New Ramasci Cellular Telephone", and the " Ramasci Cellular Telephone III ", to discuss various matters related to the Gianelli gaming organization.

It is respectfully requested that the court issue a search warrant authorizing the search of the rooms which constitute and comprise the premises of 48 Pleasant Street, Unit 11, Stoneham, Massachusetts. The premises located at 48 Pleasant Street, Unit 11, in the city of Stoneham, Massachusetts, is specifically described as a multi unit condo complex color beige with green shutters and doors. Located at the entrance way of this complex is a sign with the numeral " 48 " and the words Pleasant Street ". In addition, the numeral "11" is located on the rear door leading into Ramasci's residence.

## 14 PINE TREE DRIVE, SAUGUS, MASSACHUSETTS

Based on the facts and information set forth herein and in the previously submitted affidavits that are incorporated herein, I believe that I have probable cause to believe that Tony "Sonny" Daniels utilize the premises located at 14 Pine Tree Drive, Saugus, Massachusetts, in furtherance of Gianelli's bookmaking organization. More particularly, I note that this investigation has revealed that Tony Daniels resides at the aforementioned location, and utilizes his home telephone numbered (781) 231-2372 to discuss matters related to the Gianelli gaming organization.

34

According to the Verizon New England Inc., telephone being numbered (781) 231-2372 is subscribed to by Tony Daniels and installed upon the premises of 14 Pine Tree Drive, Saugus, Massachusetts.

It was learned from the billing records of Nextel Communications, that telephone numbered (617) 828- 9089 is subscribed to by Tony Daniels of 14 Pine Tree Dr., Saugus, Massachusetts.

Pursuant to wiretap warrants issued by Associate Justice Welch and Associate Justice Riley on October 31, 2003, November 13, 2003, November 26, 2003, December 12, 2003, December 23, 2003, December 31, 2003, January 9, 2004, January 26, 2004, January 30, 2004, February 10, 2004, and February 25, 2004, communications occurring over the, "Gianelli Cellular Telephone", the "Ramasci Cellular Telephone", the "Albertelli Telephone A" and the "New Albertelli Cellular Telephone", revealed that Tony Daniels is the conduit between the Gianelli gaming organization and Duke Sports. It has been explained in a past affidavit of Trooper Nunzio Orlando, (which has been incorporated herein and attached hereto), that Duke Sports charges the Gianelli gaming organization a certain amount of money per month. This amount is based upon the service that is provided by Duke Sports and the number of bettors that either telephonically call into the betting service or use the internet to place wagers. Daniels provides a vital role to the Gianelli gaming organization by facilitating the transfer of monies related to illegal gaming activities in the greater Boston area to an off shore location. In addition, Daniels usually settles up with either Salvatore Ramasci, Arthur Gianelli or Dennis Albertelli (sometimes would meet Gianelli and Albertelli together) every month to receive the money for the service that is provided by Dukes Sports in furtherance of the Gianelli gaming organization.

Between November 8, 2003 and March 2, 2004, several completed calls were intercepted over the "Gianelli Cellular Telephone", the "Ramasci Cellular Telephone", the "Albertelli Telephone A" and the "New Albertelli Cellular Telephone", and the vast majority of these calls included gaming related matters, including conversations regarding Tony Daniels. During some

35

of these telephone calls, Tony Daniels was intercepted discussing matters pertaining to the operation of the Gianelli gaming organization in relation to Duke Sports.

I note that periodic surveillance of Tony Daniels and his residence which is located at 14 Pine Tree Drive, Saugus, Massachusetts, Massachusetts, was conducted between December 8, 2003 and March 4, 2004, when electronic surveillance was being conducted of the "Gianelli Cellular Telephone", the "Ramasci Cellular Telephone", the "Albertelli Telephone A" and the "New Albertelli Cellular Telephone". By way of summary, some of these surveillance revealed a pattern of Tony Daniels utilizing his home telephone numbered (781) 231-2372 and his cellular telephone numbered (617) 828-9089, to conspire with Gianelli, Albertelli and Ramasci, in the gaming activities of the Gianelli gaming organization. It was learned from physical surveillance and intercepted conversations over the above listed telephones that Gianelli, Albertelli and Ramasci would discuss matters related to Tony Daniels and his role within the Gianelli gaming organization. During one of these calls it was learned that Ramasci delivered a package to Daniel's residence, located at 14 Pine Tree Drive, Saugus, Massachusetts. In addition, other intercepted telephones calls revealed a pattern that Daniels would meet Albertelli regarding the Gianelli gaming business. These surveillance also revealed that Tony Daniels would utilize his vehicle to travel to meet with Gianelli and Albertelli with regards to the aforementioned reasons. Tony Daniels would utilize a 2000 Toyota Land Cruiser, color brown, Massachusetts registration 500Q, VIN:JT3HT05J4Y0098347, registered to Tony Daniels, of 14 Pine Tree Drive, Saugus, Massachusetts. Examples of recently intercepted calls and recent physical surveillance are set forth below.

On November 8, 2003, at approximately 7:49 A.M., an incoming telephone call was intercepted over the " Albertelli A Telephone " from Arthur Gianelli. During this conversation, Gianelli stated, "You what I been meaning to ask you was um, Sonny called me". " I, I got to go over these fucken numbers in my head so I get them right. Auh, auh, I just can't be paying this guy twenty-four dimes every month, I mean this is fucken asinine." ( It should be noted that it was learned from this investigation that the name "Sonny" is a nickname for Tony

36

Daniels) Later in the conversation, Albertelli and Gianelli make arrangements to meet with Daniels the following week. Based on the above and coupled with what I have learned in this investigation, it is my opinion that Gianelli is not pleased with the amount of money that his gaming organization pays monthly to Daniels regarding the services provided by Duke Sports in furtherance of the Gianelli gaming organization.

On December 4, 2003, at approximately 9:32 A.M., an outgoing telephone call was intercepted over the "Gianelli Cellular Telephone" to a telephone numbered (617) 828-9089, which is Tony Daniels' cellular telephone. At the beginning of this telephone call, Gianelli stated that he was on a bad telephone within his residence which is located at 420 Main Street, Lynnfield, Massachusetts. During this conversation, Gianelli and Daniels review the number of bettors that participate in the illegal gaming operation which is controlled by Gianelli. In addition, Gianelli and Daniels made arrangements to meet at the breakfast place on December 9, 2003, at two o'clock. Immediately following this conversation, a telephone call was intercepted over the "Gianelli Cellular Telephone" between Arthur Gianelli and Dennis Albertelli. During this conversation, Gianelli explains to Albertelli that he just had spoken to Sonny and that all the numbers had came out right. On December 9, 2003, at approximately 1:50 P.M., Trooper Matthew Murphy conducted a surveillance of the Brother's Deli located at 404 Main Street, Wakefield, Massachusetts. Trooper Murphy reported that he saw Gianelli's vehicle, a 1996 Mercedes Benz, color black, Massachusetts registration 6701LA, VIN: WDBGA43E8TA317001, registered to Mary Gianelli, of 420 Main Street, Lynnfield, Massachusetts, parked in the area of the deli. Trooper Murphy also indicated that Gianelli and Albertelli were seated within the deli with Daniels. On this date at approximately 3:10 P.M., Daniels departed the area in his 2000 Toyota Land Cruiser, color brown, Massachusetts registration 500Q, VIN:JT3HT05J4Y0098347, registered to Tony Daniels, of 14 Pine Tree Drive, Saugus, Massachusetts. Based on all the above listed facts and the intelligence that was gathered from this investigation, it is my opinion that Gianelli, Albertelli, and Daniels met to discuss matters related to Gianelli gaming organization.

37

On December 10, 2003 at approximately 1:45 P.M., an outgoing telephone call was intercepted over the "Ramasci Cellular Telephone" between Salvatore Ramasci and an unknown female that answered telephone number (781) 231- 2372, which is installed upon the premises of 14 Pine Tree, Saugus, Massachusetts, (Daniels' residence). During this call, Ramasci asked for Sonny and stated that he had a package in his vehicle that he needed to deliver for Arthur. The female was well aware who Arthur was and proceeded to give directions to the residence located at 14 Pine Tree, Saugus, Massachusetts. Based on the above, it is my opinion that Ramasci was delivering money to Daniels to pay for the service which is provided by Daniels and Duke Sports, to assist with Gianelli's illegal gaming enterprise.

On January 6, 2004 at approximately 12:57 P.M., an incoming telephone call was intercepted over the "New Albertelli Cellular Telephone" from telephone numbered (781) 231 -2372 which is installed upon the premise of 14 Pine Tree, Saugus, Massachusetts. During this conversation, Albertelli and Daniels discussed the number of bettors that placed bets with the Gianelli gaming organization and the amount of money that Albertelli needed to give to Daniels for the service that is provided by Duke Sports. Later in the conversation, Daniels and Albertelli made plans to meet the following week at Brother's Deli. On January 14, 2004 at approximately 11:57 A.M., Trooper Matthew Murphy conducted a surveillance of Brother's Deli, in Wakefield. Trooper Murphy reported that he saw the Albertelli vehicle a 1997 Jaguar VDP, color black, Massachusetts registration 1164XY, registered to Dennis Albertelli of 151 Hudson Street, Stow, Massachusetts, parked in the area of the deli. At approximately 12:03 P.M., Trooper Murphy noted that Albertelli and Daniels were seated within the deli. In addition, Trooper Murphy saw the Daniel's vehicle, a 2000 Toyota Land Cruiser, color brown, Massachusetts registration 500Q, VIN:JT3HT05J4Y0098347, registered to Tony Daniels, of 14 Pine Tree Drive, Saugus, Massachusetts, also parked in the area. Based on the aforementioned facts coupled with information learned from this investigation, it is my opinion that Albertelli was meeting Daniels to pay money for the bettors affiliated with the Gianelli gaming organization that utilize Duke Sports in furtherance of the Gianelli gaming syndicate.

38

On February 16, 2004, at approximately 2:14 P.M., an incoming telephone call was intercepted over the "New Albertelli Cellular Telephone" between Arthur Gianelli and Dennis Albertelli. During this conversation, Albertelli explains to Gianelli that he had talked to Sonny and that he was unable to get a break from the total numbers of bettors that had used Duke Sports for the last five weeks. In addition, Albertelli told Gianelli that Sonny didn't want the thirty and that he would discuss it with him (Albertelli) the following day.

On February 17, 2004, at approximately 12:49 P.M., an incoming telephone call was intercepted over the "New Albertelli Cellular Telephone" between Arthur Gianelli and Dennis Albertelli. During this conversation, Albertelli explains to Gianelli that he is with Sonny and he asked Gianelli to call back in ten minutes. Arthur proceeds to talk and tells Albertelli that the figure of six ninety seven is correct. On February 17, 2004, at approximately 12:18 P.M., Sergeant Mark Caponette and Trooper Matthew Murphy reported that Tony Daniels had entered the Wakefield Brother's Deli and was shortly followed by Albertelli. Both the Albertelli and Daniels vehicle's were parked in the area. At 1:01 P.M., both subjects exited the deli and departed in their vehicles. The officers followed Daniels in his 2000 Toyota Land Cruiser, color brown, Massachusetts registration 500Q, VIN:JT3HT05J4Y0098347, registered to Tony Daniels, of 14 Pine Tree Drive, Saugus, Massachusetts, back to his residence. On this date, at approximately 1:01 P.M., an outgoing telephone call was intercepted over the "New Albertelli Cellular Telephone" between Arthur Gianelli and Dennis Albertelli. During this conversation, Gianelli asked Albertelli if everything was all right with Daniels and he (Gianelli) also inquired about the thirty thousand. Albertelli explained to Gianelli that Daniels did not want to wire out any more money from his account and that he (Daniels) suggested to him (Albertelli) that he gather up thirty thousand dollars worth of money orders. Furthermore, Albertelli countered by stating that he may write out a thirty thousand dollar check. Gianelli balked at the above suggestions and told Albertelli that it's Daniels responsibility. In addition, Albertelli stated that Daniels will get back to him after he (Daniels) talked to someone from Duke Sports. Based on what I have outlined above and intelligence gathered from this investigation, it is my opinion that

39

Daniels plays a very important role in conspiring with Albertelli and Gianelli in furtherance of the Gianelli gaming organization.

On March 2, 2004, at approximately 12:19 P.M., an outgoing telephone call was intercepted over the " New Albertelli Cellular Telephone " to telephone numbered (617) 828-9089. (Cellular telephone that is utilized by Tony "Sonny" Daniels). During this conversation, Albertelli and Daniels made arrangements to meet on Thursday March 4, 2004 at their usual spot. Albertelli also stated to Daniels that Gianelli would attend this meeting. Based on this telephone call and other information gathered from this investigation, it is my opinion that Albertelli, Gianelli and Daniels will meet at the Brother's Deli in Wakefield to discuss matters related to the Gianelli gaming organization and Duke Sports.

On March 4, 2004, at approximately 9:00 A.M., Sergeant Michael Scanlan and Trooper Timothy Foley conducted a surveillance of Brother's Deli in Wakefield, Massachusetts. At approximately 9:30 A.M., Trooper Foley entered the deli and reported that he observed Arthur Gianelli, Dennis Albertelli and Tony Daniels, all seated together at a table. At approximately 11:00 A.M., Trooper Foley indicated that Daniels had exited the deli. Trooper Foley then noted that Daniels entered his 2000 Toyota Land Cruiser, color brown, Massachusetts registration 500Q, VIN:JT3HT05J4Y0098347, registered to Tony Daniels, of 14 Pine Tree Drive, Saugus, Massachusetts, and followed him back to his above listed residence. Based on the above listed telephone call, physical surveillance and intelligence gathered from this investigation, it is my opinion that Gianelli, Albertelli and Daniels met regarding the issue with how the payments were to made from the money generated from the Gianelli gaming organization to Duke Sports.

Based upon the information set forth in this and prior affidavits, which are attached hereto and incorporated herein by reference for all purposes, I believe that there is probable cause to believe that Tony Daniels, both individually and in the course of joint ventures to operate the Gianelli gaming business, continues to use (1) telephones numbered (781) 231-2372, this telephone is installed upon the premises located at 14 Pine Tree, Saugus, Massachusetts and

40

(617) 828-9089, a cellular telephone that is utilized by Tony Daniels, (2) his residence at 14 Pine Tree, Saugus, Massachusetts, and (3) the vehicle that he drives, the 2000 Toyota Land Cruiser, color brown, Massachusetts registration 500Q, VIN:JT3HT05J4Y0098347, registered to Tony Daniels, of 14 Pine Tree Drive, Saugus, Massachusetts.

I further submit there is probable cause to believe that evidence of Gianelli's gaming criminal enterprise will be found on Tony Daniels' person, inside Tony Daniels' residence located at 14 Pine Tree Drive, Saugus, Massachusetts, as well as inside the above listed vehicle that Tony Daniels utilizes. Based on the facts and information set forth herein and in the previously submitted affidavits that are incorporated herein, I believe that I have probable cause to believe that Tony Daniles utilizes the premises located at 14 Pine Tree Drive, Saugus, Massachusetts, in furtherance of Gianelli's gaming organization. More particularly, I note that this investigation has revealed that Tony Daniels resides at the aforementioned location, has used the telephone line that is installed upon the premises of 14 Pine Tree Drive, Saugus, Massachusetts, to discuss various matters related to the Gianelli gaming organization.

It is respectfully requested that the court issue a search warrant authorizing the search of the room and or rooms which constitute and comprise the premises of 14 Pine Tree Drive, in the city of Saugus, Massachusetts. The premises located at 14 Pine Tree Drive, in the city of Saugus, Massachusetts, is specifically described as a large red brick contemporary with oversized wooden front doors. Located at the front of the driveway are two brick pillars. Located on the right pillar is the numeral "14 ".

## 75 GREEN STREET, CLINTON, MASSACHUSETTS

Based on the information set forth herein and in my affidavits incorporated herein, I believe that I have probable cause to believe that Dennele Trans at 75 Green Street, Clinton, Massachusetts, had been used by Dennis Albertelli and Randy Albertelli as a place where agents are directed to pay monies due or owed related to their activities with the Albertelli illegal

41

football card business. In addition, this office was used to secure the instruments/proofs used to print illegal football cards. I further believe that I have probable cause to believe that records, proceeds and printing instruments and proofs related to Albertelli illegal football card business are kept within said premises. Furthermore it has been learned from this investigation, that Dennis Albertelli and Randy Albertelli would print thousands of illegal football cards at 75 Green Street, Clinton, Massachusetts. Based on what I have learned from this investigation, it is my opinion that this location is the central processing (printing) center for the Albertelli gaming business and that the proofs and instruments used in furtherance of this illegal enterprise are still stored within the safe which is within 75 Green Street. As noted in some of Trooper Nunzio Orlando's past affidavits, Dennis Albertelli and Randy Albertelli are associated with "Dennele Trans". I also note that although the football season is over, there have been several recent intercepted telephone calls wherein Dennis Albertelli and Randy Albertelli discussed matters related to the gaming business. During some of these conversations, Dennis Albertelli was within the Dennele Trans office as he proceeded to discuss the activities related to the Gianelli gaming business. These conversations have also indicated that Dennis Albertelli and Randy Albertelli would instruct "agents", to pick up the football cards and/or drop money there, or to meet him there in order to pay or collect money related to the football card business. Examples of some of these conversations are set forth below:

On November 1, 2003, at approximately 2:21 P.M., a telephone call was intercepted over the " Albertelli Telephone A " between Dennis Albertelli and a subject named Harold Marderosian. During this conversation, Harold told Dennis that Yogi wanted to know if the football cards can be packaged a certain way instead of just putting them in a box. Based on this call and other information listed in past affidavits, it is my opinion that Dennis Albertelli controls the printing and sales of illegal football cards.

On Monday, November 10, 2003, at approximately 2:54 P.M., an outgoing telephone call was intercepted over the " Albertelli A Telephone " between Dennis Albertelli and Frank Iacaboni. During this conversation, Albertelli asked Iacaboni if he knew the whereabouts of

42

Robert Davies. (Davies was routinely picking up football cards every week from Dennis and Randy Albertelli). Later in the conversation, Albertelli explains to Iacaboni that he is at the office hanging around waiting for him. It should be noted that the football cards were printed every Monday. Based on this telephone call and coupled with what I have learned from this investigation, it is my opinion that Albertelli was waiting at the office which is located at 75 Green Street, Clinton, Massachusetts, for Davies to come by and pick up football cards.

On November 11, 2003, at approximately 5:24 P.M., an incoming telephone call was intercepted over the "Albertelli Telephone B", between Dennis Albertelli and Randy Albertelli. During this conversation, Dennis explains to Randy that he (Randy) shorted Bobby (Robert Davies) seven hundred and fifty football cards. Later in the conversation, Dennis and Randy discussed that the proofs to print the football cards were in the safe. In addition, Dennis asked Randy how to open the safe so he can get the proofs to print more football cards for Bobby. Based on this telephone call and other facts that I have obtained from this investigation, it is my opinion that the proofs needed to print the illegal football cards are secured in the safe which is located at 75 Green Street, Clinton, Massachusetts. Since the termination of the football season, there has been no indication that the proofs or documents have been removed. I have learned from this investigation that Dennele Trans is equipped with the printing machine necessary to mass produce football cards with the use of the proofs. Based on my training and experience individuals involved with the printing of these football cards maintain the aforementioned equipment at one location, as it would be too cumbersome to relocate such a large piece of machinery. It is my opinion that the Dennele Trans office will be utilized to manufacture illegal football cards prior to the up coming football season.

On December 16, 2003, at approximately 7:14 P.M., a telephone call was intercepted over the " Albertelli Telephone A" between Dennis Albertelli and his son Randy Albertelli. During this conversation, Randy explained to his father Dennis that he had to go up stairs and print more football cards for Bullet. ( this is a nickname for Robert Davies) Randy then asked Dennis if he should charge Davies for printing an additional five hundred football cards. Later in

43

the conversation, Dennis advised Randy that they had only a few weeks left to print the football cards. Furthermore, Dennis stated that they printed the wrong lines on Neil's ( a weekly football card customer) football cards.

On January 3, 2004, at approximately 12:12 P.M., an outgoing telephone call was intercepted over the " New Albertelli Cellular Telephone" between Dennis Albertelli and Robert Davies. During this conversation, Albertelli asked Davies what was going on. Davies stated that he was on his way to Dennis. Albertelli explained to Davies that he was at the Dungeon. (It was learned that Albertelli referred to his office as the Dungeon.)  On this date at approximately 2:10 P.M., Dennis Albertelli called Robert Davies and stated to him that he turned in too much money. Based on these telephone calls and other facts listed above, it is my opinion that Davies met Albertelli with regards to Albertelli's illegal football card business.

On January 12, 2004, there were several telephone calls that were intercepted over the " New Albertelli Cellular Telephone". It was learned from theses telephone calls that Dennis Albertelli had made arrangements to meet with Harold Marderosian and Robert Davies at his office, which is located at 75 Green Street, Clinton, Massachusetts, in regards to the illegal football card business. Based on this information, Trooper Matthew Murphy conducted a surveillance of 75 Green Street, Clinton, Massachusetts. At approximately 12:57 P.M., Trooper Murphy reported that a 1999 Oldsmobile Regency, color red, bearing Massachusetts registration 72TN14 was exiting the rear of 75 Green Street. This vehicle was registered to a Harold Marderosian of 219 Crawford Street, Northborough, Massachusetts. At approximately 1:20 P.M., Trooper Murphy indicated that he saw a 1995 Hyundai Elantra, color green, bearing Massachusetts registration 716RSL parked in the area of 75 Green Street, Clinton, Massachusetts. This vehicle was registered to Robert Davies of 30 Beacon Street, 2F, Fitchburg, Massachusetts. At 1:20 P.M., the Davies vehicle departed the area. Furthermore, Trooper Murphy reported that both the Dennis Albertelli vehicle a 1997 Jaguar VDP, color black, Massachusetts registration 1164XY, registered to Dennis Albertelli of 151 Hudson Street, Stow, Massachusetts and a 2002 Honda Civic, color green, bearing Massachusetts registration 3413TB,

44

registered to Randy Albertelli of 151 Hudson Road, Stow, Massachusetts, were parked at 75 Green Street, Clinton, Massachusetts. In addition, during the above listed surveillance, Dennis Albertelli was intercepted over the "New Albertelli Cellular Telephone" discussing matters and reviewing gaming sheets related to the Gianelli gaming organization. Based on the above listed telephone calls and coupled with other information that was revealed from this investigation, it is my opinion that Dennis Albertelli utilizes 75 Green Street, Clinton, Massachusetts in furtherance of his illegal football card business and the Gianelli gaming organization.

On February 26, 2004, there were two intercepted telephone calls over the "New Albertelli Cellular Telephone", between Dennis Albertelli and Salvatore Ramasci. During these conversations, Albertelli and Ramasci discussed gaming matters related to the Gianelli gaming organization. It should be noted that it had been learned from this investigation, that Randy and Dennis Albertelli had purchased a bottle grinding machine which is located at 75 Green Street, Clinton, Massachusetts. In addition, that during the above telephone calls, a machine can be heard in the background. Based on the above and coupled with other information learned from this investigation, it is my opinion that Albertelli was at his office located at 75 Green Street, Clinton, Massachusetts, utilizing his cellular telephone in furtherance of the Gianelli gaming operation.

On March 2, 2004, at approximately 6:43 P.M., an outgoing telephone call was intercepted over the " New Albertelli Cellular Telephone " to the " Ramasci Cellular Telephone III ". During this conversation, ( in the background can be heard the bottle grinding machine), Albertelli and Ramasci discussed some issues pertaining to betting customers and agents that are associated with the Gianelli gaming organization. Based on this telephone call, it is my opinion that Dennis Albertelli was within 75 Green Street while conversing on his cellular telephone, discussing matters related to the Gianelli gaming organization.

Based upon the information set forth in this and prior affidavits, which are attached hereto and incorporated herein by reference for all purposes, I believe that there is probable cause

45