United States District Court
District of Massachusetts

```
_____
                               )
UNITED STATES OF AMERICA,      )
                               )
          v.                   )
                               )    Criminal No.
ARTHUR GIANELLI                )    05-10003-NMG
          Defendant.           )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

In this criminal case the defendant Arthur Gianelli ("Gianelli") was convicted, after a jury trial, of racketeering, conspiracy, illegal gambling, arson and related crimes. He has renewed, post-trial, his previously filed motion to dismiss the charges against him on the grounds that they are the product of immunized grand jury testimony that he gave more than 15 years ago.

## I. Factual Background

After a jury trial lasting nearly two months, Gianelli was convicted of numerous crimes on April 22, 2009. More then ten years prior to being indicted for those crimes, Gianelli testified before a grand jury in connection with an investigation of Joseph Yerardi ("Yerardi"), a suspected bookmaker and loan shark who was, at one time, Gianelli's co-defendant in this case.

That grand jury was convened in early 1993, by Assistant

United States Attorney Fred M. Wyshak ("AUSA Wyshak").  AUSA Wyshak was lead counsel in the prosecution of Gianelli and his co-defendants in the present case.  In his initial appearance before the grand jury on April 8, 1993, Gianelli asserted his Fifth Amendment right not to testify and, consequently, on May 7, 1993, an immunity order ("the Immunity Order") was entered by United States District Judge Robert E. Keeton pursuant to 18 U.S.C. § 6002.  That order required Gianelli to testify but provided that

> no testimony or other information compelled under this Order (or any information directly or indirectly derived from such testimony or other information) may be used against Arthur Gianelli in any criminal case except a prosecution for perjury, giving a false statement or otherwise failing to comply with this Order.

Despite receiving immunity Gianelli continued his recalcitrance, claiming his Fourth Amendment rights had been violated by an illegal wiretap.  Judge Keeton determined that there had been no such violation, again ordered Gianelli to testify and, upon his refusal, found Gianelli in contempt of the Immunity Order on June 23, 1993.  On June 25, 1993, the day he was to surrender to the custody of the U.S. Marshall, Gianelli finally agreed to testify.  He subsequently appeared before the grand jury and gave testimony on July 1, 15 and 29, 1993.

Despite that testimony the government remained unsatisfied with Gianelli's cooperation and, by letter to United States

District Judge Rya W. Zobel dated August 5, 1993, renewed its motion for contempt. On August 17, 1993, Judge Zobel found that Gianelli

> continued to answer evasively, that he repeatedly and improperly claimed a lack of memory and that he responded directly only to questions obviously supported by evidence already in the government's hands

and, consequently, failed to purge himself of his contempt of the Immunity Order. Gianelli was thereafter committed to the custody of the U.S. Marshall where he remained for nearly two months before agreeing to resume his testimony on October 12, 1993. He finally purged his contempt through that testimony and further testimony in 1995.

During his grand jury testimony Gianelli admitted that 1) he had a close relationship with Yerardi (who he knew to be a bookmaker, loan shark and member of organized crime), 2) he helped Yerardi collect usurious loans, 3) he himself loaned money at usurious rates, 4) he acted as a bookmaker himself and as an agent for Yerardi and 5) he leased video poker machines that were used for illegal gambling. He also explained the gambling concepts of "make-up" and "rent" and explained how agents operate within a gambling organization. Yerardi was eventually convicted of racketeering and related crimes in 1995.

Long after his grand jury testimony law enforcement began investigating Gianelli and others for their involvement in illegal gambling, arson and extortion. In connection with that

investigation, on October 31, 2003, the Essex County District Attorney applied for and received authorization to conduct electronic monitoring of several telephone lines. Massachusetts State Police ("MSP") Trooper Nunzio Orlando ("Orlando") submitted several affidavits in support of those wiretaps. Those affidavits referred to information learned during the 1991 investigation of Yerardi, including information consistent with Gianelli's testimony before the grand jury. The affidavits made no mention of Gianelli's immunized testimony, however, but instead attributed most of the facts regarding the 1991 investigation to intercepted telephone calls.

Trooper Orlando's October 31, 2003, affidavit specifically stated that recorded conversations during the 1991 investigation proved Gianelli was a bookmaker and that a search of his home uncovered evidence of illegal gambling. It also described (in a manner consistent with Gianelli's testimony) the role of an agent in a gambling organization.

Orlando's affidavit further stated that he learned from officers involved in the 1991 investigation, particularly from Detective Lieutenant John Tutungian ("Tutungian"), that Gianelli operated an illegal video poker machine business and described the manner in which profits from that business were divided between Gianelli and the establishments where machines were installed. The affidavit also described information learned

during 2003, through surveillance and an informant, which suggested that Gianelli was still involved in the video poker machine business and operated machines at a number of locations.

The investigation of Gianelli eventually culminated in an indictment which was returned on January 5, 2005, and superseded on April 7, 2005, and again on September 13, 2006. The Second Superseding Indictment ("the Indictment") alleged that Gianelli was the leader of a racketeering enterprise ("the Gianelli Group") that committed numerous crimes from 1999 through 2006. The Gianelli Group allegedly associated with members of organized crime and paid "rent" to La Cosa Nostra for the right to operate its criminal business.

The Indictment charged Gianelli with conspiracy, racketeering, illegal gambling (including video poker machines), use of a wire communication facility in connection with gambling, money laundering, arson, use of fire to commit a felony, interstate travel in aid of racketeering, extortion and extortionate collection of credit. After a jury trial Gianelli was convicted of all but two of the charges against him (interstate travel in aid of racketeering and running an illegal gambling business involving football cards).

## II. Procedural History

Gianelli originally moved to dismiss based on the alleged improper use of immunized testimony on February 16, 2006. After

receiving an extension of time to respond, the government filed a 59-page opposition on April 18, 2006. That motion remained pending in September, 2008, as trial approached.

At a status conference held on September 10, 2008, the Court instructed counsel for Gianelli to inform the Court within 30 days if he intended to press the motion to dismiss. When the motion was not pursued further, the Court denied it without prejudice, stating: "If Gianelli chooses to pursue the issue, the Court will consider convening a Kastigar hearing post-trial."

Trial of this case concluded on April 22, 2009, when a jury returned verdicts of guilty on almost all counts against Gianelli and his co-defendants. On May 29, 2009, Gianelli filed a motion for a hearing on his earlier motion to dismiss, which this Court will treat as a renewal of his motion to dismiss. Although the government has not opposed that specific motion, the Court will treat its previously-filed opposition as an opposition to it.

### III. Analysis

#### A. Legal Standard

In 1972, in Kastigar v. United States, the Supreme Court held that a witness can be compelled, consistent with the Fifth Amendment, to offer self-incriminating testimony provided that such testimony and any evidence derived directly or indirectly therefrom is not used against the witness in a subsequent criminal prosecution. 406 U.S. 441, 459 (1972). In doing so it

upheld the federal immunity statute, 18 U.S.C. § 6002, which authorizes courts to compel testimony provided the witness is granted "use and derivative use" immunity for any statements made. See id.

Immunized witnesses facing subsequent prosecution must not, however, rely "upon the integrity and good faith of the prosecuting authorities" for protection of their Fifth Amendment rights. See id. at 460. The Court explained:

> Once a defendant demonstrates that he has testified, under a . . . grant of immunity, to matters related to the federal prosecution, the federal authorities have the burden of showing that their evidence is not tainted by establishing that they had an independent, legitimate source for the disputed evidence.

See id. (internal quotation marks omitted). That "heavy burden," the Court elaborated, "imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived" from legitimate independent sources. See id. at 461.

Although the Supreme Court in Kastigar did not explicitly state that an evidentiary hearing is required for the government to meet its burden, the First Circuit has observed:

> The question of whether any use, derivative or otherwise, was made of the compelled testimony by the prosecution, is one of fact on which . . . the district court ordinarily holds a separate hearing.

United States v. Romano, 583 F.2d 1, 7 (1978) (citing United States v. DeDiego, 511 F.2d 818, 824 (D.C. Cir. 1975)). If a court elects not to hold an evidentiary hearing pre-trial,

however, the trial itself may obviate the need for such a hearing. See United States v. Biaggi, 705 F. Supp. 864, 867 (S.D.N.Y. 1988); United States v. Gregory, 611 F. Supp. 1033, 1042 (S.D.N.Y. 1985).

**B.    Application**

The defendant Gianelli asserts that his grant of immunity (and thus his Fifth Amendment rights) were violated by the government's alleged use of his 1993 immunized grand jury testimony in the present prosecution.  Specifically, he contends that 1) his immunized testimony was used by Trooper Orlando in affidavits submitted in support of wiretaps, 2) the Indictment in this case was based upon the same information that he testified about before the grand jury and 3) AUSA Wyshak's participation in the 1993 grand jury proceedings and this case taints the present prosecution.  Gianelli has not alleged that any evidence presented at trial was derived from his immunized testimony.  He has requested an evidentiary hearing and asserts that the government bears the burden of disproving a taint at such a hearing.

In its lengthy opposition, the government responds that Gianelli's motion is without merit and was filed for strategic reasons (namely, to obtain pre-trial discovery about the government's case).  Specifically, the government makes five independent arguments as to why the motion should be denied: 1)

Gianelli's 1993 testimony was of no value, 2) the government had prior knowledge of all of the substantive information Gianelli testified about, 3) Gianelli's immunity does not extend to future crimes, 4) there is no connection between Gianelli's 1993 testimony and the Indictment in this case and 5) the government can, if need be, show that all evidence used against Gianelli derived from legitimate, independent sources. The government contends that an evidentiary hearing is not required if the Court relies on any of its first three arguments.

All of the government's arguments are well-taken and, because 1) it has shown prior knowledge of substantially all of the matters as to which Gianelli testified and 2) any use of such information was, in any event, harmless, the defendant's motion will be denied.

### 1. Government's Prior Knowledge

Dismissal of a criminal prosecution based on prior immunized testimony is not warranted if the government demonstrates that it was aware of all of the relevant testimony through other sources. See Romano, 583 F.2d at 8 (finding that government disproved any taint, in part through "documentary evidence indicating that the Government's case was largely established before [the defendant] testified"). Here, the government has proffered voluminous evidence showing that law enforcement had prior knowledge of substantially all relevant matters about which Gianelli testified

before the grand jury.

For example, the government has submitted affidavits from Detective Lieutenant Tutungian dated almost two years prior to Gianelli's grand jury testimony. Those affidavits show that, in 1991, law enforcement was aware that Gianelli was a bookmaker or agent working for Yerardi and that Yerardi was a loan shark with connections to organized crime. They also demonstrate an understanding of the concepts of "make-up" and "rent" and the role of agents within a gambling organization.

The questions asked of Gianelli during the grand jury proceedings further demonstrate that the government already had knowledge of many of the subjects on which he testified. For example, on July 1, 1993, AUSA Wyshak asked Gianelli a series of leading questions about the term "make-up" which on their face clearly establish that AUSA Wyshak had prior knowledge of the meaning of that term. See United States v. Catalano, 491 F.2d 268, 272 (2d Cir. 1974) (finding the government's burden satisfied in part because "the large bulk of the questions were of a leading nature from which it may be concluded that the prosecutor knew what the response would be").

The government has also submitted summaries and transcripts of intercepted telephone calls from 1991, again two years prior to Gianelli's grand jury testimony. Those calls show that law enforcement possessed substantial evidence of Gianelli's

involvement with video poker machines. Thus, the government has proven that it had prior knowledge of almost all inculpatory matters about which Gianelli testified before the grand jury and prior knowledge of substantially all the information that Gianelli claims was later used against him.

### 2. Any Use of Immunized Testimony Was Harmless

Despite the government's voluminous exhibits, Gianelli has identified at least one item of information which was allegedly used to procure the Indictment against him and of which the government has not shown prior knowledge. Although the government clearly had knowledge of Gianelli's involvement with video poker machines before he testified, the affidavits and intercepted calls do not reflect that the government knew exactly how the profits from those machines were divided between Gianelli and the establishments in which they were installed. Gianelli seizes on Trooper Orlando's description of that profit sharing arrangement in his affidavit and argues that it demonstrates improper use of the immunized testimony.

Even if the Court were to assume that Orlando's knowledge came from Gianelli's immunized testimony, the improper use of that testimony was harmless because it was so inconsequential that it could not have influenced the government's decision to seek a warrant or the magistrate judge's determination of probable cause. See United States v. Sasson, 334 F. Supp. 2d

347, 354-55 (E.D.N.Y. 2004) ("I must only consider whether the included immunized statements were so inconsequential that [issuing judge] would have, beyond a reasonable doubt, found a probability of criminal activity without their inclusion."). As this Court has already explained in great detail, the wiretaps in this case were supported by ample probable cause, see United States v. Gianelli, 585 F. Supp. 2d 150, 154-55 (D. Mass. 2008), and would have been issued regardless of Orlando's description of how video poker profits were split.

In fact, even if the Court were to assume that all of the evidence concerning the 1991 investigation was derived from Gianelli's grand jury testimony rather than from independent sources, the alleged use of such information in connection with the prosecution of Gianelli was so minimal as to make any Fifth Amendment violation harmless. Information about 10-year old crimes in the warrant applications simply could not have influenced the magistrate judge's determination of probable cause, particularly in light of the affidavits' substantial recitation of Gianelli's more recent criminal activity. See id.

Furthermore, there is no indication that immunized testimony was used in any way in the actual Indictment. Although the Indictment charged Gianelli with committing crimes similar to those about which he testified under a grant of immunity, the charges relate to crimes committed nearly 10 years later.

Moreover, the Indictment's reference to Gianelli's relationship with Yerardi is confined to the period of Yerardi's incarceration (1995 through 2005) and, thus, was obviously not something about which Gianelli could have testified in 1993.

### 3. AUSA Wyshak's Participation

This Court is also satisfied that AUSA Wyshak's participation in both this prosecution and the grand jury proceedings at which Gianelli provided immunized testimony is not fatal to the government's case. Although it would have been prudent to assign each task to a different prosecutor to avoid jeopardizing the case against Gianelli, the First Circuit Court of Appeals has explicitly stated that a prosecutor's exposure to immunized testimony does not, by itself, violate a defendant's Fifth Amendment rights. United States v. Serrano, 870 F.2d 1, 17 (1st Cir. 1989) ("[W]e do not think [the] purpose [of the Fifth Amendment] is automatically frustrated by the government's mere exposure to immunized testimony."). Gianelli has offered no specific examples of how AUSA Wyshak improperly used (or might have used) his grand jury testimony in connection with this prosecution. As the First Circuit has explained:

> [W]e agree with the Second Circuit that a prosecution is not foreclosed merely because the "immunized testimony might have tangentially influenced the prosecutor's thought process in preparing the indictment and preparing for trial."

Id. at 17-18 (quoting United States v. Mariani, 851 F.2d 595, 600

(2d Cir. 1988)).

### 4. Need for an Evidentiary Hearing

Although the First Circuit has observed that district courts "ordinarily hold[] a separate hearing" to resolve Kastigar disputes, see Romano, 583 F.2d at 7, such a hearing is unnecessary in this case for several reasons.

First, this judicial officer presided over the trial in this case and is fully aware of the evidence presented against Gianelli. That evidence did not reveal any connection to Gianelli's immunized testimony nor has the defendant identified any trial evidence as being tainted. See Biaggi, 705 F. Supp. at 867 (finding that trial obviated the need for an evidentiary hearing).

Second, the government submitted voluminous exhibits demonstrating prior knowledge of virtually all matters about which Gianelli testified before the grand jury. See United States v. Provenzano, 620 F.2d 985, 1006 (3d Cir. 1980) ("If the Government's documents conclusively demonstrate prior knowledge, we know of no reason why a hearing must be held.").[1]

---

[1] Although a subsequent case within the Third Circuit has suggested that Provenzano has been implicitly overruled, it did so based on the assumption that a showing of prior knowledge on the part of the government is insufficient because use of immunized testimony "in some other more subtle way" in preparation for trial would still violate a defendant's rights. See United States v. Smith, 580 F. Supp. 1418, 1424 n.6 (D.N.J. 1984). The First Circuit, however, has never held that such "non-evidentiary" use violates the Fifth Amendment and has

-14-

Third and finally, an evidentiary hearing would be of little use given this Court's finding that, even assuming the government lacked an independent source of its information, the only improper uses identified by Gianelli were harmless. Indeed it is difficult to conceive of <u>any</u> prosecutorial use of Gianelli's immunized testimony about crimes committed nearly a decade earlier that could have been anything other than harmless.

In sum, because the government was already aware of substantially all of the information to which Gianelli testified and further because any use of the immunized testimony was harmless, the defendants motion to dismiss will be denied without an evidentiary hearing.

---

suggested that it may not. <u>See</u> <u>Serrano</u>, 870 F.2d at 17-18 ("We . . . reject the notion that all nonevidentiary use necessarily violates the Fifth Amendment.").

**ORDER**

In accordance with the foregoing, the defendant's motion to dismiss and for a hearing (Docket No. 790) is **DENIED**.

**So ordered.**

                                              /s/ Nathaniel M. Gorton
                                              Nathaniel M. Gorton
                                              United States District Judge

Dated August 21, 2009