UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Crim. No. 05-10003-NMG |
| v.            ) | |
| ) | |
| ARTHUR GIANELLI,   ) | |
| ) | |
| Defendant.   ) | |

## GOVERNMENT'S SENTENCING RECOMMENDATION

The Government has reviewed the revised Presentence Report recently prepared by the U.S. Department of Probation. While the Government does not dispute the Probation Officer's guidelines calculation that the defendant's sentencing range is 241 to 271 months based upon the offenses of conviction, the Government does dispute the Probation Officer's opinion that the information provided by the Government regarding the defendant's involvement in three additional arsons related to the victims in this case should not be considered as relevant conduct for purposes of sentencing the defendant. See U.S.S.G.§ 1B1.3.

For the reasons set forth below, the Government submits that a sentence within the guideline range of 241 to 271 months is inadequate to address the defendant's conduct, and that the Court should sentence the defendant to 360 months' incarceration, the statutory maximum for the charged arson and use of fire to commit extortion, to address the defendant's participation in these three additional arsons. In support of its position, the Government has attached the affirmation of Special Agent Matthew Kelsch of the Bureau of Alcohol, Tobacco, Firearms, and Explosives which sets forth the relevant facts.

I.    Argument

The evidence at trial overwhelmingly proved that the defendant was involved in a vicious

dispute with the victims in this case, Karen and Mark Colangelo, Edward Fitzsimons, and Richard Dalton. So too, the evidence of defendant's participation in a scheme to financially harm the Colangelos and Fitzsimons by burning down their North Reading business was also overwhelming.

It is no coincidence that on November 26, 2003 - within two weeks of the first fire at the North Reading Big Dog - there was a second fire that caused extensive damage. Philip Puopolo's presence in the vicinity of the North Reading Big Dog five hours after the second fire combined with the defendant's recorded November 21 conversation indicating that he had spoken with someone else about setting the fire are compelling facts linking the defendant to that second fire. (See Kelsch affirmation at ¶¶ 5 and 6.) Evidence at trial clearly indicated that the defendant utilized Puopolo to commit crimes of violence. Finally, the defendant's admission to inmate Gerald Kruger that the defendant had utilized Puopolo's associate Anthony Raymond to set some fires should leave no doubt about the defendant's responsibility for the second fire at the North Reading Big Dog. (See Kelsch affirmation at ¶ 16.)

Likewise, the December 3 and December 6, 2003 fires at the Sports Grille in Boston - another business owned by the Colangelos - were also orchestrated by the defendant and were committed as part of the same conspiracy to extort the Colangelos for which the defendant stands convicted. Again, the defendant's instructions to co-defendant Salvatore Ramasci to check the Sports Grille hours after the fire is compelling evidence of the defendant's involvement. (See Kelsch affirmation at ¶ 10.) Moreover, Puopolo's December 5 intercepted request to Ramasci to talk to the defendant about Puopolo's "fee" and Puopolo's subsequent conversation with the defendant in which he declined payment are consistent with Puopolo's involvement in the first

2

failed attempt to set fire to the Sports Grille. (See Kelsch affirmation at ¶¶ 11 and 12.)

Finally, the following factors compel the conclusion that the uncharged fires were all set pursuant to the extortion conspiracy for which the defendant stands convicted:

(1) the proximity in time of all the fires;

(2) the common identity of the victims;

(3) the similarity of the modus operandi of the three uncharged arsons - breaking the front glass and throwing containers of flammable liquid into the premises; and

(4) the defendant's admissions to fellow inmate Kruger.

II.     Legal Standard

With regard to sentence adjustments, U.S.S.G. § 1B1.3 provides that the Court should consider all acts and omissions committed, commanded, or willfully caused by the defendant as "relevant conduct." U.S.S.G. § 1B1.3(a)(1)(A). In the case of jointly undertaken criminal activity, the Courts should consider all reasonably foreseeable acts and omissions of others in furtherance of the criminal activity as relevant conduct. U.S.S.G. § 1B1.3(a)(1)(B).

The test for determining whether acts committed in a joint criminal enterprise constitute "relevant conduct" is subject to a three part test. In order to satisfy § 1B1.3(a)(1)(B), the conduct must be (1) within the scope of the joint criminal activity explicitly or implicitly agreed to by the defendants; (2) in furtherance of the jointly undertaken criminal activity; and (3) reasonably foreseeable in connection with the criminal activity. <u>U.S. v. Carozza</u>, 4 F.3d 70, 76 (1st Cir. 1993). In practice, however, the trial courts have combined the second and third prong of this test. <u>U.S. v. Patriarca</u>, 912 F.Supp. 596, 608 (D.Mass. 1995) ("to determine which acts were in

furtherance of jointly undertaken criminal activity, the court must decide if they 'likely would have been foreseeable by a reasonable person'"). See also, U.S. v. Marino, 277 F.3d 11, 37 (1st Cir. 2002).

In the case at bar, the evidence at trial was clear that the defendants agreed to economically harm the victims to achieve the goal of the conspiracy, i.e., to gain control of Canine Entertainment Corp.  The chosen method was to disrupt the victims' cash flow by setting fire to the victims' active businesses.  Certainly, all the defendants participated in the conspiracy to set fire to the North Reading Big Dog.  The government submits that the two fires at the Boston Sports Grille were reasonably foreseeable acts committed in furtherance of the conspiracy.  Courts determine whether an act is reasonably foreseeable objectively.  U.S. v. Patriarca, 912 F.Supp. at 608. An act is reasonably foreseeable if it is one that a "reasonable person who knew everything the defendant knew at the time [he entered the conspiracy] would have been able to know in advance with a fair degree of certainty." U.S. v. LaCroix, 28 F.3d 223, 227 (1st Cir. 1994).

Furthermore in a racketeering case, any racketeering acts that the government could have charged as a predicate RICO offense constitute "relevant conduct." U.S. v Carozza, 4 F.3d at 77. Arson is a predicate RICO offense.  Similarly, whether the incidents were in the same course of conduct is material to whether they constitute "relevant conduct." Under either U.S.S.G. § 1B1.3(a)(1)(A) or U.S.S.G. § 1B1.3(a)(1)(B), the conduct must be part of the same course of conduct or common scheme as the offense of conviction in order for a sentencing court to consider conduct relevant.  U.S. v. Maxwell, 351 F.3d 35, 42 (1st Cir. 2003).  Clearly, the second Big Dog arson was committed pursuant to the same course of conduct as the offense of

conviction, because it manifested the achievement of one of the goals of the conspiracy. So too, the arsons at the Boston Sports Grille were committed within weeks of the Big Dog fires and were committed pursuant to the same conspiratorial plan.

The fact that the uncharged conduct was part of the conspiracy of conviction does not mean that it cannot be considered as relevant conduct. Acts or omissions are considered relevant conduct as long as they are "severable distinct offense[s]." U.S. v. Collazo-Aponte, 216 F.3d 163, 203 (1st Cir. 2000) (quoting U.S. v. Blumberg, 961 F.2d 787, 792 (8th Cir. 1992). Clearly each arson or attempted arson could have been charged as a separate offense.

The Government submits that the facts set forth above prove the defendant's involvement in the additional arsons by a preponderance of the evidence. U.S. v. Hoey, 508 F.3d 687, 690 (1st Cir. 2007) (preponderance of the evidence is the standard to be applied for relevant conduct).[1] See also, United States v. Rodriguez-Cardona, 924 F.2d 1148, 1155 (1st Cir. 1991) ("Factual findings at sentencing must satisfy only a preponderance of the evidence standard.") citing United States v. Blanco, 888 F.2d 907, 909 (1st Cir. 1989). Therefore, the Court should consider this evidence as relevant conduct in sentencing the defendant.

Separate and aside from considering the uncharged arsons as relevant conduct, the Court has broad latitude to "consider, without limitation, any information concerning the background, character and conduct of the defendant" in determining the appropriate sentence to be imposed.

---

[1] Some courts have imposed a heightened burden of proof in cases where the increase in defendants' sentence would be significant. See, e.g. U.S. v. Kikumura, 918 F.2d 1084 (3d Cir. 1990) (requiring "clear and convincing evidence"). Nonetheless, this approach and the underlying Supreme Court dicta from which courts derive this interpretation of § 1B1.3 has been largely repudiated. U.S. v. Grier, 449 F.3d 558, 567 (3d. Cir. 2006) (citing U.S. v. Booker, 543 U.S. 220, 259 (2005) (holding that findings of fact relevant to federal sentencing guidelines need not be submitted to jury and need only to be proven by a preponderance of the evidence).

U.S.S.G. §1B1.4.  Such information may provide a basis for an upward departure.  See *Commentary* U.S.S.G. §1B1.4.

Finally, 18 USC § 3553(a)(2) sets forth the factors to be considered in sentencing the defendant.  These factors militate in favor of imposing a severe sentence on defendant.  The defendant not only operated a broad based criminal enterprise that exploited hundreds of gamblers, but also manipulated the financial system to launder the proceeds of his criminal activity.  He used threats of force and violence to deal with those who opposed him and associated himself with members of organized crime to enhance the success of his criminal enterprise.

The defendant has demonstrated an utter disrespect for the law for most of his adult lifetime.  The Court's sentence should reflect the seriousness of the defendant's conduct, promote respect for the law, and provide fitting punishment.

III.    Conclusion

For the reasons set forth above, the Government respectfully recommends that the Court sentence the defendant to 360 months' incarceration.

                    Respectfully submitted,

                    MICHAEL K. LOUCKS
                    Acting United States Attorney

By:   */s/ Fred M. Wyshak, Jr.*
        Fred M. Wyshak, Jr.
        Michael L. Tabak
        Natashia Tidwell
        Assistant U.S. Attorneys

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                              */s/ Fred M. Wyshak, Jr.*
                                              Fred M. Wyshak, Jr.

Date:  September 23, 2009