UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Crim. No. 05-10003-NMG |
| v. ) | |
| ) | |
| ARTHUR GIANELLI, ) | |
| DENNIS ALBERTELLI, and ) | |
| FRANK IACABONI, ) | |
| ) | |
| Defendants. ) | |

Affirmation of Special Agent Mattheu Kelsch

Mattheu Kelsch, under penalty of perjury, states,

1. I am a Special Agent of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, and have been so employed for over eight years. For the past six years, I have been assigned to the investigation and prosecution of the above defendants. In that capacity, I am fully familiar with all the facts and circumstances surrounding the arson related charges in this case.

2. I submit this affirmation in connection with the sentencing of the defendants and to inform the Court of three additional arsons committed pursuant to the conspiracy for which the defendants stand convicted.

3. As the Court is aware, the defendants Gianelli, Albertelli and Iacaboni stand convicted of, inter alia, conspiracy to commit arson, arson, using fire to commit a felony, conspiracy to commit extortion and attempted extortion. These crimes were committed pursuant to a conspiracy to wrest control of Canine Entertainment Corporation (hereinafter "Canine") from the majority shareholders, Karen Colangelo, Edward Fitzsimons, and Richard Dalton. At the time, Canine was in the process of renovating a bar/restaurant called the Big Dog Sports Zone in Lynnfield. Pursuant to this conspiracy, the defendants attempted to set fire to another Big Dog

bar/restaurant operated by Colangelo and Fitzsimons in North Reading in order to economically harm Colangelo and Fitzsimons, and prevent them from completing the renovation and opening of the Lynnfield business. The evidence at trial demonstrated that the defendants believed that if they could prevent the Lynnfield business from opening, they could force Colangelo, Fitzsimons and Dalton to capitulate.

The Second Big Dog Fire

4.    The North Reading fire for which the defendants stand convicted occurred on November 13, 2003. The evidence at trial demonstrated that minimal damage resulted from the fire due to the presence of the Massachusetts State Police (MSP) at the scene - who caused the fire to be extinguished immediately. The MSP had intercepted conversations pursuant to court authorized electronic surveillance which led them to the North Reading location that night. Less than two weeks later, there was a second arson at the North Reading Big Dog. On November 26, 2003 at approximately 5:14 A.M., a window in the vestibule leading to the bar was smashed and two glass containers of flammable liquid were thrown inside causing a fire which resulted in significant damage.

5.    I am familiar with information supplied by FBI Special Agent Stephen Landau to the U.S. Attorney's Office. SA Landau reported that less than five hours after the second arson at the North Reading Big Dog at approximately 9:42 A.M., SA Landau was engaged in physical surveillance of co-defendant Philip Puopolo.[1] SA Landau observed Puopolo and an unknown male drive in Puopolo's vehicle from the Revere Businessman's Association in Revere to the

---

[1] This surveillance was conducted in an investigation that, at the time, was not related to the investigation then being conducted by the MSP.

2

vicinity of Route 28 in North Reading. SA Landau observed that during the course of this trip, Puopolo had engaged in counter surveillance techniques, i.e., traveled by an indirect route and made several "u-turns." SA Landau observed that Puopolo pulled into a parking lot diagonally across Route 28 from the Big Dog. Puopolo remained for a short time and then returned to Revere. SA Landau, who had been routinely conducting surveillance of Puopolo, noted that this trip to North Reading was unusual.

6.      Further evidence of the defendants' involvement in this second arson at the North Reading Big Dog was a conversation intercepted five days earlier on November 21, 2003 between the defendants Gianelli and Albertelli. In that intercepted telephone conversation, Gianelli related to Albertelli that Gianelli heard that somebody had been arrested trying to set fire to the Big Dog.[2] Albertelli, apparently for the first time, admitted to Gianelli that he was also aware of that fact.[3] Gianelli, obviously confused, stated

| GIANELLI: | But I'm wondering who, I'm wondering who it was? |
| --- | --- |
| ALBERTELLI: | Well that's, that, that makes me think it was you telling me that you got someone else on it. |
| GIANELLI: | That's what I'm saying. You know? And I, I, I did that ah, Friday. So it very well could be. That's interesting. |

Gianelli subsequently stated,

> Cause I really don't think because it wouldn't have been that quickly, you know. It wouldn't have been that quickly, from Friday to now so. Ah, that's what I'm thinking now.

---

[2]     This conversation was played for the jury as part of Exhibit 217.

[3]     The evidence at trial clearly demonstrated that Albertelli had not told Gianelli about the failed arson attempt on November 13, 2003 when Michael McCormack and Sean Slater were arrested by the MSP.

>It was something else. But ah, fuck it, well. We'll see.

7.  In my opinion, this conversation indicates that Gianelli as well as Albertelli was soliciting others to set fire to the Big Dog in North Reading. Gianelli admitted that he spoke to someone "Friday," but expressed surprise that it had already happened.[4]

8.  In a subsequent conversation between Gianelli and Albertelli on November 24, 2003, Albertelli admitted that the Big Dog arrest involved "someone else, that I had talked with earlier." Gianelli responded, "Oh, so we had three or four fuckin' parties goin' here." In my opinion, this conversation demonstrates that not only were Iacaboni and Albertelli involved in recruiting people to set the fire in North Reading, but also that Gianelli had recruited someone as well. Gianelli's relationship with Puopolo as well as the fact that Puopolo appeared at the fire scene within hours of the second Big Dog fire indicates that Gianelli recruited Puopolo to set the second fire.

The First Fire At The Sports Grille in Boston

9.  As part of my investigation, I investigated an incendiary fire at the Sports Grille, a Boston sports bar located at 132 Canal Street in the vicinity of the old Boston Garden. This arson occurred on December 3, 2003 at approximately 3:29 A.M. My investigation revealed that the front window of the Sports Grille had been smashed and two incendiary devices had been placed inside the front of the building through the broken window. Due to an interior water sprinkler and the quick detection of the fire by an MBTA employee, the fire caused minimal damage. I also learned that the Colangelos had an interest in the Sports Grille.

10.  At 12:29 P.M. that same day the following conversation was intercepted:

---

[4]  The Friday prior to this conversation was November 14, 2003.

4

| | |
|---|---|
| GIANELLI: | In your travels, I don't know..um, the Bos, I don't know how to......I don't know how to say it to you but um.... you that Boston Garden, you know near the Boston Garden there? |
| RAMASCI: | Auh huh. |
| GIANELLI: | I, I, I think it closed.....I think it closed or something, I, I heard something, I don't know. |
| RAMASCI: | Oh, I'll take a look, I know what all right I'll take a look over there yeah. |
| GIANELLI: | Yeah. |
| RAMASCI: | Then I got to go see um auh I have my friend auh Harry there... |
| GIANELLI: | Yeah like right there.... |
| RAMASCI: | Right on the corner. |
| GIANELLI: | Yeah exactly. |
| RAMASCI: | Yeah, I got to go see him. |
| GIANELLI: | Just, just see what the story is so I, I know for sure. |
| RAMASCI: | Yeah, all right I'll take a look because I'm on my way in there's only one more stop and I'm gonna see Harry in town anyway. |
| GIANELLI: | All right just page me back and say yes or no or whatever. |
| RAMASCI: | Okay. |

Ramasci, who testified at the defendants' trial, has told me and other investigators that this conversation related to the Sports Grille on Canal Street. Later, that day, Ramasci told Gianelli that the Sports Grille was closed. The following conversation was intercepted at 5:09 P.M.

| | |
|---|---|
| GIANELLI: | What's happening? |
| RAMASCI: | I had called you early, that place appears to be closed. |
| GIANELLI: | Oh the guy wasn't there? |

5

| | |
|---|---|
| RAMASCI: | What? Where? |
| GIANELLI: | Huh? |
| RAMASCI: | I didn't see any one there. I mean that I could tell. |
| GIANELLI: | Oh the guy wasn't there? |
| RAMASCI: | So, no I don't think he was there today. |
| GIANELLI: | Well. Okay. |
| RAMASCI: | So, as but As far as I could see, but I mean ahh, you know it's difficult to tell if ahh, if he was there so. |
| GIANELLI: | Ya, well maybe he'll be there tomorrow, you go back tomorrow. |
| RAMASCI: | Ya, I'll take another shot tomorrow. That's all. |

Ramasci also advised me and other investigators that he was not aware of the plan to set fire to the Sports Grille and did not understand why Gianelli wanted him to check that location.

11. Further evidence of Puopolo's involvement in the November 26 arson at the North Reading Big Dog and the December 3 arson at the Sports Grille were two conversations intercepted on December 5, 2003. At 9:33 a.m., Ramasci had an intercepted conversation with Puopolo about meeting to settle up for the gambling business. Puopolo, in coded language, told Ramasci that instead of settling up normally on the bookmaking, it would be "just like last week," and that Ramasci should check with "him" (Gianelli) about Puopolo's "fee." In my opinion, this fee was a reference to the December 3, 2003 arson at the Sports Grille.

12. Additionally, at 1:39 p.m. on December 5, 2003, Puopolo engaged in a conversation with Gianelli, in which Puopolo volunteered that he should not receive a payment. I believe Puopolo declined payment because Puopolo had learned that the December 3, 2003

6

arson at the Sports Grill had not caused significant damage. As Puopolo told Gianelli,

> "Ah, on that thing there, ah, no pay, capisci (understand)? So, I'll talk to you when I see you, but don't worry about sending no fucking money down here. Fuck them in the ass! It wasn't, it wasn't what it was suppose to be. Capisci?"

### The Second Fire At The Sports Grille in Boston

13.     Three days after the first fire at the Sports Grille, a second fire occurred at 2:50 A.M. that caused more significant damage. My investigation revealed that, on this occasion, the glass in the front door of the Sports Grille was smashed and flammable liquid from two five gallon pails was poured on the floor and ignited. The pails were recovered at the scene. Again, the sprinkler system prevented extensive damage to the premises.

### Tony Raymond

14.     The perpetrators of the fires at the Sports Grille were caught on videotape by a security surveillance camera on a neighboring building. Although no positive identification of the perpetrators was able to be made due to the poor quality of the videotape, the physical characteristics of one of the individuals matched those of a close associate of Phil Puopolo, a man named Tony Raymond. Further, MSP investigators had received information from several sources that Raymond was involved in crimes of violence on behalf of Puopolo and had a criminal record for arson.

15.     Raymond was subpoenaed to appear before a federal grand jury and served with an immunity order issued pursuant to 18 USC §§ 6001, et seq. He refused to testify and was found in civil contempt on or about March 30, 2005.[5] Raymond was subsequently indicted for criminal contempt and pled guilty on November 18, 2005.

---

[5]     At the time, Raymond was incarcerated pending trial for bank robbery.

7

16.     During 2005, Gianelli and Raymond were both housed at Wyatt Correctional Facility in Providence, R.I. Also housed with them was a federal prisoner named Gerald Kruger. Kruger contacted the USAO and offered to cooperate regarding Gianelli and others. Kruger was subsequently interviewed on March 8, 2006 by ATF SA Konstantinos Balos .[6] Kruger stated that Gianelli told Kruger that Anthony Raymond had set some fires for Gianelli. Gianelli told Kruger that Gianelli used Raymond to collect money; that Raymond was "an enforcer and will set a fire and not talk about it." Kruger also stated that Raymond told Kruger that when Raymond had been questioned about an arson, Raymond "stood up" for Gianelli.

17.     For the reasons set forth above, I believe that the second Big Dog arson and the arsons at the Boston Sports Grille were committed pursuant to the same conspiratorial plan as the offenses of conviction, and should be considered by the Court in sentencing the defendants.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

                                            Mattheu Kelsch, Special Agent
                                            Bureau of Alcohol, Tobacco,
                                            Firearms, and Explosives

Executed this 22nd day of September 2009.

---

[6]     Kruger's information was filtered through a "taint team" at the USAO to prevent any attorney/client communications and/or trial strategy from reaching the prosecution team.

16.     During 2005, Gianelli and Raymond were both housed at Wyatt Correctional Facility in Providence, R.I. Also housed with them was a federal prisoner named Gerald Kruger. Kruger contacted the USAO and offered to cooperate regarding Gianelli and others. Kruger was subsequently interviewed on March 8, 2006 by ATF SA Konstantinos Balos .[6] Kruger stated that Gianelli told Kruger that Anthony Raymond had set some fires for Gianelli. Gianelli told Kruger that Gianelli used Raymond to collect money; that Raymond was "an enforcer and will set a fire and not talk about it." Kruger also stated that Raymond told Kruger that when Raymond had been questioned about an arson, Raymond "stood up" for Gianelli.

17.     For the reasons set forth above, I believe that the second Big Dog arson and the arsons at the Boston Sports Grille were committed pursuant to the same conspiratorial plan as the offenses of conviction, and should be considered by the Court in sentencing the defendants.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Mattheu Kelsch, Special Agent
Bureau of Alcohol, Tobacco,
Firearms, and Explosives

Executed this 22nd day of September 2009.

---

[6]     Kruger's information was filtered through a "taint team" at the USAO to prevent any attorney/client communications and/or trial strategy from reaching the prosecution team.

8