# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) 05-cr-10003-NMG |
| | ) |
| ARTHUR GIANELLI, | ) |
| | ) |
| Defendant/Petitioner. | ) |

## GOVERNMENT'S MEMORANDUM IN OPPOSITION TO § 2255 MOTION

The government respectfully submits this memorandum in opposition to the 28 U.S.C. § 2255 motion that defendant Arthur Gianelli has filed (Document 982) in which he asks this Court to vacate and set aside the prison component of his sentence and to replace it with a prison term of either 12 years or 14 years. Gianelli's claim that attorneys Richard Egbert and Robert Sheketoff rendered ineffective assistance of counsel is without merit, and Gianelli's motion should be denied without a hearing.

### Gianelli's Conviction and Sentence

After an 8-week jury trial in 2009, Gianelli was found guilty of racketeering, Hobbs Act extortion, arson, use of fire to commit a felony, extortionate collection, operating large-scale illegal gambling businesses, money laundering, and related charges. The government's evidence at trial included proof of Gianelli's association with organized crime and Mafia figures through, *inter alia*, "rent" and "tribute" payments, as well as the use of organized crime figures to collect debts. *See United States v. Albertelli*, 687 F.3d 439, 450 (1st Cir. 2012); *cert. denied sub nom. Gianelli v. United States*, 133 S.Ct. 2390 (May 20, 2013).

Gianelli's Guidelines Sentencing Range (GSR) was 241 to 271 months (Document 893 at 25), and although this Court was fully aware that the Guidelines are not mandatory and that it could

sentence below the GSR,[1] this Court sentenced Gianelli to the high end of the GSR -- 271 months' imprisonment -- and explained why it was doing so:

> Mr. Gianelli, the crimes for which you are being sentenced are of a particularly egregious nature... Criminal organizations such as the one you lead inflict serious harm upon society in a variety of ways. Your crimes were pernicious and harmful beyond our knowing.
>
> The victims of such organizations, whom I very much have in mind as I impose this sentence, are often the poorest members of society and already on the brink of desperation. Further exploiting those individuals not only does great harm to them but also to the general public by increasing poverty, violence and the social costs they impose on all of us.
>
> Organized crime is not only despicable but also undermines respect for the law by discouraging citizens from applying their skills to productive endeavors and leading instead to the perception that the path to success and to the quick buck is a life of crime. It overburdens our law enforcement agency and further taxes their limited resources.
>
> And anyone else out there who thinks he or she can get away with such conduct, which might have started as an illegal gambling operation but ended up as a major crime enterprise, should get the message that they are going to go to jail for a significant portion of their lives if they do what you did.
>
> For those reasons, the substantial sentence that I am about to impose is justified and necessary to impress upon you and upon others the seriousness of your criminal acts and the immense harm they have caused.

(10/7/09 Sent. Tr. at 32-33).

The First Circuit affirmed Gianelli's conviction and found after thoroughly reviewing the evidence that "the government had a strong case." *Albertelli*, *supra*, 687 F.3d at 452.

---

[1] See 10/7/09 Sentencing Transcript at 31-32; *United States v. Booker*, 543 U.S. 220 (2005).

<u>The Defense Attorneys Who Allegedly Provided Ineffective Assistance of Counsel</u>

At Gianelli's initial appearance on January 7, 2005 on the original indictment in this case, Gianelli was represented by Richard Egbert, a very experienced and respected criminal defense attorney, whom Gianelli *retained*. Mr. Egbert continued to represent Gianelli until Mr. Egbert's untimely and unexpected death from a heart attack on July 24, 2008.

A Boston *Herald* news article on July 25, 2008 described Mr. Egbert as a "[r]enowned[,] ... [t]ough, combative Boston criminal defense lawyer" who had been a "champion of the rights of mob figures and powerbrokers accused of corruption." The Boston *Globe* obituary on July 26, 2008 described Mr. Egbert as "a criminal defense giant" who "often wreaked havoc on prosecutors' cases" and was a "top defense attorney" with a "tough courtroom demeanor."

After Mr. Egbert's death, Gianelli *selected* attorney Robert Sheketoff as his new attorney but said that he could not afford to pay him. Although Mr. Sheketoff was not a member of the Criminal Justice Act panel, the government conceded that exceptional circumstances existed in this case, and the Court granted Gianelli's request to appoint Mr. Sheketoff as Gianelli's counsel.[2] (Document 627). Reporter David Boeri of public radio station WBUR has described Mr. Sheketoff as a "well-respected veteran defense attorney," www.wbur.org/2012/10/31/robert-george-laundering, and Boston Magazine has listed Attorney Sheketoff as one of the best criminal defense lawyers in Boston, who is "equally adept at trials and appeals" and "very, very smart." www.bostonmagazine.com/2006/05/beyond-a-reasonable-doubt/.

---

[2] Section V.B. of this district's CJA Plan authorizes the Court to appoint an attorney who is not on the CJA panel "[i]n exceptional circumstances."

These are the attorneys whom Gianelli accuses of having been so incompetent that they each independently violated Gianelli's Sixth Amendment right to the effective assistance of counsel.

### Gianelli's Burden of Proof on His § 2255 Motion

A defendant has a constitutional right to effective assistance of counsel in considering whether to accept a plea bargain that the government has offered. *Lafler v. Cooper*, 132 S.Ct. 1376 (2012). In his § 2255 motion, Gianelli contends that the government made specific and extremely lenient plea bargain offers that Gianelli's attorneys discussed with Gianelli but that Gianelli did not accept due to ineffective assistance of counsel.

To prevail on his § 2255 motion, Gianelli must show that (1) sufficiently definite plea bargain offers were in fact made by the government; (2) Gianellis' lawyers' performance with regard to those offers was constitutionally deficient; and (3) his lawyers' ineffective assistance with regard to those offers resulted in prejudice to Gianelli. *Malone v. Clarke*, 536 F.3d 54, 63-64 (1st Cir. 2008); *Strickland v. Washington*, 466 U.S. 668, 687, 697 (1984); *Enright v. United States*, 347 F.Supp.2d 159, 165 (D.N.J. 2004).

Unless Gianelli can meet his burden of proof on all three of those elements, his claim of ineffective assistance of counsel fails. *See Collins v. Roden*, 749 F.3d 29, 32 (1st Cir. 2014); *Strickland*, 466 U.S. at 697; *Malone*, 536 F.3d at 64; *Enright*, 347 F.Supp.2d at 165.

In attempting to satisfy his burden of proof on his § 2255 motion, Gianelli must provide admissible evidence. As the First Circuit held in *Garuti v. Roden*, 733 F.3d 18, 25 (1st Cir. 2013) (§ 2254 proceeding), "The Federal Rules of Evidence generally apply in habeas proceedings in the district courts," so hearsay statements "should not have been considered by the district court."

Moreover, a § 2255 motion may be summarily denied if it the defendant has failed to provide "specific and detailed supporting facts." *United States v. Butt*, 731 F.2d 75, 77 (1st Cir. 1984) (citations omitted); *see also Barrett v. United States*, 965 F.2d 1184, 1186 (1st Cir. 1992); *Garuti*, 733 F.3d at 25.

As shown below, Gianelli has not met his burden in any respect.

1. <u>Gianelli Has Failed to Prove the Plea Offers That He Alleges</u>

Gianelli's motion is based on his claims that (a) the government conveyed to attorney Egbert a plea offer under which the government would have recommended a 12 year prison sentence, but Mr. Egbert incompetently failed to follow through on Gianelli's demand that the offer be accepted (Document 982 at 13), and that (b) after Mr. Egbert's death, the government conveyed through attorney Sheketoff a plea offer under which the government would have recommended a 14 year prison sentence, but that Gianelli relied on Mr. Sheketoff's incompetent recommendation to turn down that offer. *Id.* at 14.

But, Gianelli has failed to provide *any* admissible evidence about the existence of these purported plea offers. Gianelli's account of what Mr. Egbert and Mr. Sheketoff allegedly told him that AUSA Wyshak had allegedly told them is rank hearsay and therefore inadmissible under Fed.R.Evid. 802. Moreover, Gianelli has not provided any written documentation of the alleged plea offers, and has not submitted an affidavit from Mr. Sheketoff or from Patricia DeJuneas (Mr. Egbert's associate, who worked with Mr. Sheketoff on Gianelli's behalf after Mr. Egbert's death). *See Spreitz v. Ryan*, 617 F. Supp. 2d 887, 936-937 (D. Ariz. 2009) ("Petitioner provides no affidavits from counsel or anyone else to support his assertion that counsel offered him no assistance.... Such unsupported, conclusory assertions are insufficient to establish ineffective assistance of counsel.");

*Hernandez v. Clark*, 10-cv-9392-JFW, 2013 WL 3052927 at *20 (C.D. Cal. June 17, 2013) ("Notably, Petitioner presents no affidavits from counsel ... which indicate what counsel did and why.... Petitioner has failed to demonstrate either deficiency or prejudice").

Gianelli has presented no details about the nature of the alleged plea offers, such as (a) the specific counts to which he would been required to plead guilty; (b) whether the guilty plea would have been presented to the Court under Fed.R.Crim.P. 11(c)(1)(B) or 11(c)(1)(C); (c) whether one or more departures, a variance, or some other means would have been recommended in an attempt to justify a sentence that was so far below Gianelli's Guidelines Sentencing Range; and (d) whether the alleged plea agreement was offered *only* as part of global plea agreement conditioned on *all* of the defendants entering guilty pleas. *See Enright*, 347 F.Supp.2d at 165 ("The short discussion that occurred between Bennett and Stahl was not sufficient.... Although a sentencing range was briefly discussed, no specific offer was made even informally, nor did the attorneys discuss the details of the charges Enright would plead to or the facts to which he would allocute.")

But, even more fundamentally, Gianelli's unsupported and uncorroborated assertion that the government offered to recommend a 12 year or a 14 year prison term for Gianelli is both inherently implausible and internally inconsistent with Gianelli's other assertions in his § 2255 motion.

It is *inherently implausible* that the government would have offered to recommend that the Court impose a 12 year or 14 year prison term on Gianelli even if Gianelli's codefendants Albertelli and Iacaboni were unwilling to plead guilty. Gianelli was facing a Guidelines Sentencing Range of 241 to 271 months (*i.e.*, more than 20 years to more than 22½ years), so a sentence of just 12 years (144 months) would have been 47% below the high end of the GSR and 40% below the low end, and

a sentence of 14 years (168 months) would have been 38% below the high end and 30% below the low end of the GSR.[3]

It would have made no sense for the government to offer Gianelli such a huge discount on his sentence when the government would not have been receiving a remotely comparable benefit. A trial against only Iacaboni and the two Albertellis would have taken approximately as long as a trial that also included Gianelli, since the racketeering, arson, extortion, and illegal gambling business charges against Gianelli were also charged against one or more of those other defendants (and, indeed, Dennis Albertelli was charged in *hundreds* of counts). The three Assistant United States Attorneys who spent many months on trial preparation and on the trial itself would have had to devote essentially the same amount of time to the case whether Gianelli went to trial or pled out while Iacaboni and the two Albertellis proceeded to trial.

Tactically, there would have been no advantage to the government to remove only Gianelli from the trial because (a) as the First Circuit found, the government's evidence was very strong; (b) Gianelli was the head of the "Gianelli Group" racketeering enterprise (Document 222 at 2); and (c) it was clear from the evidence that Gianelli was the least sympathetic of those defendants.

Moreover, Gianelli's claim that the government offered him a 12 year or 14 year prison recommendation is *internally inconsistent* with his claim that AUSA Fred Wyshak was engaging in "vindictive" prosecution and was intent on "us[ing] anything in his arsenal to get [Gianelli]." (Document 982 at 13; Document 982-1 at 1).

---

[3]  Even if Gianelli on a guilty plea had received a 3-level decrease in his offense level under U.S.S.G. §§ 3E1.1(a) and 3E1.1(b), a sentence of 12 years would have been 37% below the high end and 30% below the low end of the 3-level lower GSR of 207 months to 228 months, and a sentence of 14 years would have been 26% below the high end and 19% below the low end of that GSR.

Furthermore, Gianelli's insistence that AUSA Wyshak was engaging in vindictive prosecution against Gianelli is demonstrably false. The wife of Gianelli's codefendant Yerardi, and the wife and son of Gianelli's codefendant Dennis Albertelli, were all added as new defendants in the first superseding indictment, on April 7, 2005 -- but Gianelli's wife was *not* charged at that time. Mary Ann Gianelli became a defendant almost a year and a half later, in the second superseding indictment on September 13, 2006, and that was only after Mary Ann Gianelli had been physically surveilled, on April 17, 2006, attempting to pick up cash from Arthur Gianelli's illegal video poker machine business. (Mary Ann Gianelli Presentence Report at 8-9). Moreover, she had personally engaged in money laundering during late April 2005, *after* the first superseding indictment in this case had been filed. *Id*. at 9. These facts completely undermine Gianelli's baseless suggestion that Mary Ann Gianelli was indicted out of prosecutorial vindictiveness.

Gianelli fares no better on his assertion (Document 982 at 13 n.1) that the large number of counts in the first and second superseding indictments "exemplified" prosecutorial vindictiveness. To the contrary, Gianelli *opposed* the government's suggestion that more than 450 money laundering counts (which had been charged separately for technical legal reasons) could and should be eliminated through the consolidation of related money laundering counts. *See* Document 535 at 1, Document 549 at 3 n.3.

Gianelli asserts that he had "the need to obtain a *swift* plea to the indictment ... especially [because he] had admitted in [his] 1993 grand jury testimony ... of engaging in a host of criminal activity...." Document 982 at 13. However, Gianelli's 1993 grand jury testimony did not cover -- and *could not possibly* have covered -- arson and extortion that Gianelli did not commit until 2003 (*e.g.*, Counts 274 - 278), other extortions that Gianelli did not begin committing until 1998 (*e.g.*,

Counts 280 - 283), or money laundering that Gianelli did not begin committing until 2002 (*e.g.*, Counts 284 - 329), and it was those crimes that drove his Guidelines Sentencing Range.[4] *See* Presentence Report (final version, as revised on September 18, 2009) at 29-39, 53.

### 2. Gianelli Has Failed to Prove Deficient Performance by Counsel

The record in this case reflects that there were negotiations to see whether a *global* plea agreement could be reached, in which *all* of the defendants would have taken guilty pleas -- but that at least one of the defendants refused to participate. Further, the record makes clear that the government (understandably) would not offer the same concessions for individual standalone guilty pleas as for a global plea agreement.

On May 22, 2008, Mr. Egbert -- along with counsel for other codefendants who were still facing trial in this case -- filed an assented-to motion to continue the suppression hearing that had been scheduled for May 27, 2008. Mr. Egbert wrote in the motion that "[a]s grounds [for the continuance], the parties state that they are in discussions to resolve the case." (Document 492).

At the pretrial conference on December 11, 2008, after Mr. Egbert had died and Mr. Sheketoff had entered the case, the government mentioned -- in discussing a severance motion that had been filed by the *wives* of Gianelli, Albertelli, and Yerardi -- that "it's the government's view that pleas from the women would be much less likely than it would be if the whole trial stays together because the counsel for the women have proposed plea resolutions that it's inconceivable to me would get approved *unless the whole case went away*, not if we had to try it twice." (12/11/08 Tr. at 15) (emphasis added).

---

[4] Gianelli had testified in 1993 about illegal gambing businesses. *See United States v. Gianelli*, 658 F.Supp.2d 255, 258 (D.Mass. 2009) (denying Gianelli's post-trial motion to dismiss based on alleged improper use of immunized grand jury testimony).

Peter Parker, counsel for Gianelli's wife, responded:

> *We've all in this room been in negotiations with the government*, and it's not the women defendants who have put forth a request for a certain resolution of this case. We've been discussing an offer pretty much from the government, and a number of us -- I think it's fair to say, the way that the case has shaken out, with the last couple of pleas, *all but one of us are pretty much prepared to plead guilty if we can agree with the government on sentencing*.
>
> And some of our colleagues have been peeled off and were permitted to plead guilty. The government, however, is insisting that the rest of us, *it has to be a global plea or nothing*. And I don't -- you know, we haven't been able to crack that except I don't know how Mr. Puopolo -- Mr. Goldstein was able to do it for Mr. Puopolo. Perhaps it's because Mr. Wyshak was in Florida and occupied.

(12/11/08 Tr. at 15-16) (emphasis added).

AUSA Tabak responded that AUSA Wyshak had discussed and supported the plea agreements that had been reached with certain defendants, and --

> the government has never said that we would not consider individual pleas by individual defendants, which is why there has been. *There are proposals that certain defense counsel have made that we have said we didn't think we could get approval for if the whole case doesn't go away*. But that doesn't mean that there couldn't be individual pleas by individual defendants to different proposals.

*Id*. at 16-17 (emphasis added).

Gianelli does not allege that he instructed Mr. Egbert and/or Mr. Sheketoff to work out a global plea agreement but even if he had made that claim, it obviously *cannot* be ineffective assistance of counsel for one defendant's lawyer to be unable to work out a global plea agreement when a codefendant -- who has his own, separate attorney -- simply refuses to plead guilty, because the first defendant's lawyer cannot do the impossible and must not engage in clearly unethical conduct. *See Beras v. United States*, 05-cv-2678-SAS, 2013 WL 1155415 at *19 (S.D.N.Y. Mar.

20, 2013) ("After the global plea offer, the possibility of Mr. Beras pleading guilty became moot, because this plea was contingent on co-defendant Mendoza pleading guilty -- something she never even considered") (citation and internal marks omitted); ABA Model Rules of Professional Conduct, Rule 4.2 (2011) ("In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order").

At the other extreme, depending on the circumstances,[5] it might have been ineffective assistance of counsel if Gianelli had demanded to plead "straight up" to the indictment -- pleading guilty to every single count in which he was charged, with no plea agreement, just throwing himself on the mercy of the court -- and his attorney never followed through. But, Gianelli does not claim that he was prepared to plead guilty to all counts in which he was charged, without a plea agreement.

Gianelli's claim that in a "heated conversation," Gianelli "told Mr. Egbert *in no uncertain terms*" (emphasis in original) to accept the alleged 12 year plea offer but that Mr. Egbert did not follow through (Document 982 at 13-14), is simply not credible. Aside from the fact that Gianelli has not shown that there ever was a 12 year plea offer for his guilty plea in isolation (*i.e.*, unrelated to a global plea agreement), it is not credible that attorney Egbert would have ignored such a demand by Gianelli or that Gianelli would not have fired and replaced attorney Egbert if he had ignored such a demand.

---

[5] For example, if the government had an extremely weak case, or if there was a valid dispositive motion that could have been filed, that would affect the analysis.

Indeed, the evidence at trial -- including wiretapped conversations of Gianelli as well as witness testimony -- clearly established that Gianelli was not a shrinking violet, and instead demanded that he get his way. Both Iacaboni and Albertelli referred to Gianelli as "the jumping bean" (Trial Exhibit 105, Tab 105; Exhibit 217, Tab 12) because he was so impatient.

Gianelli claims that during the "heated conversation," Gianelli demanded that Mr. Egbert "get this over with before my wife has a nervous breakdown." (Document 982 at 13). Yet, Gianelli continues his story by saying that "[a]fter Mr. Egbert's death, *and a significant time after I directed Mr. Egbert to take the 12 year plea offer*, the offer increased from 12 years to 14 years." *Id*. at 14 (emphasis added). Clearly, if Gianelli had been demanding "in no uncertain terms" that the purported 12 year plea offer be accepted before Gianelli's wife would suffer an imminent nervous breakdown, Gianelli would have not waited for "a significant time" before repeating his demand, and Gianelli would not have *selected* Mr. Sheketoff as his new attorney without telling Mr. Sheketoff about the purported 12 year plea offer and of Gianelli's demand that it be accepted immediately.

Gianelli's claim that Mr. Sheketoff dissuaded Gianelli from his urgent demand to plead guilty (Document 982 at 14) also lacks the ring of truth. It seems extremely unlikely that a very intelligent and very experienced defense attorney would "instruct" (*id*. at 14) his strong-willed and volatile client to turn down what the client regarded as a very favorable plea offer, or that a very intelligent and very experienced defense attorney would categorically inform his client that there was "no way possible" (*id*.) that Gianelli could be convicted of the count that carried a mandatory consecutive 10-year prison sentence.

Not only is that scenario -- given Gianelli's personality and Mr. Sheketoff's many years as a highly regarded criminal defense attorney -- inherently incredible, but it presumably was not in

Mr. Sheketoff's personal interest to turn down a favorable guilty plea and then spend almost two months on trial, plus time preparing for that trial, in a case where the government's evidence was strong and Mr. Sheketoff -- who was not even a member of the CJA panel -- was working for CJA rates instead of his presumably much higher normal compensation. Gianelli has not shown that his "will was overborne," *see Garuti*, 733 F.3d at 27, by Mr. Egbert and/or Mr. Sheketoff, or provided any reason why they would have wanted to pressure him to go to trial.

Even if Mr. Sheketoff or Mr. Egbert had made a prediction about the outcome of the trial that was not borne out in the end, that would not have constituted ineffective assistance of counsel. As the Supreme Court stated in *Lafler*, "an erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance." 132 S.Ct. at 1391; *see Siraj v. United States*, 2013 WL 7811753 at *5-*6 (E.D.N.Y. Aug. 30, 2013). Moreover, as another district judge has explained:

> A lawyer should, of course, advise his client of his exposure at trial, but in order to avoid the risk that the specter of an extreme sentence may unduly pressure the defendant to accept a plea, the lawyer must provide a *realistic* assessment of the sentence the defendant might expect if convicted at trial. This is an extremely challenging task. In doing so, he must predict the strength of the Government's evidence on each count and the likelihood of conviction, as well as present his own view of the applicable Sentencing Guidelines range following adjustments and the possibility that the sentencing court might apply a non-Guidelines sentence upon considering the factors set out in 18 U.S.C. § 3553(a). Because this assessment requires the attorney to give his client advice on matters that are contingent and, to some degree, subject to chance, an inaccurate prediction as to the sentence a defendant is likely to receive after trial should only rarely be susceptible to an ineffective assistance claim. *See United States v. Sweeney*, 878 F.2d 68, 70 (2d Cir.1989).

*Colotti v. United States*, 11-cv-1402-DLC, 2012 WL 1122972 at *14 (S.D.N.Y. Apr. 4, 2012).

For Gianelli to satisfy this portion of his burden of proof -- that is, Gianelli's burden of proving deficient performance by counsel -- Gianelli would have to show that "counsel's representation fell below an objective standard of reasonableness" and, in making such a showing, Gianelli would have to overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance...." *Strickland*, 466 U.S. at 688-89.

Gianelli has failed to make that showing.

### 3. Gianelli Has Failed to Show Prejudice

To satisfy the final portion of his burden of proof -- *i.e.*, showing prejudice -- Gianelli would have to prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see also Collins v. Roden*, 749 F.3d at 32. In particular, Gianelli has the burden of proving that "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), *[and] that the court would have accepted its terms*." *Lafler*, 132 S.Ct. at 1385 (emphasis added).

Focusing on that final component, the Supreme Court held in the companion case to *Lafler*, *Missouri v. Frye*, 132 S.Ct. 1399, 1411 (2012), that unless the defendant "show[s] a reasonable probability that the trial court would have accepted the plea, there is no *Strickland* prejudice." Thus, Gianelli must lose his § 2255 motion unless he can show that there was a "reasonable probability" (not merely a possibility) that if he had entered a guilty plea in which the parties had jointly recommended a prison sentence of 12 years (when Mr. Egbert was representing Gianelli) or 14 years (when Mr. Sheketoff had taken over), this Court *would have accepted that sentencing*

*recommendation and would have imposed that sentence on Gianelli*, rather than the 271 month (22 years plus 7 months) sentence that this Court imposed after trial.

Gianelli has not even attempted to make that showing.

This Court reached a carefully considered determination that a top of the GSR sentence of 271 months was "*justified and necessary* to impress upon you and upon others the seriousness of your criminal acts and the immense harm they have caused" (10/7/09 Sent. Tr. at 33) (emphasis added), and this Court set forth its reasoning at some length, as set forth at page 2, above.

Gianelli has failed to show a reasonable probability that if Gianelli had entered a guilty plea, this Court would have imposed a sentence that was *47% lower* than the sentence that this Court actually imposed. Aside from the fact that Gianelli has not proven (by admissible evidence or otherwise) that he was offered a standalone plea recommendation of 12 years (or of 14 years), the government respectfully submits that Gianelli has not shown and cannot show a reasonable probability that this Court would have imposed such a light sentence given this Court's strong reasons for imposing a 271 month sentence and the facts that Gianelli never offered to (and never did) provide any assistance to the government in investigating or prosecuting others, and that a standalone plea by Gianelli would not have spared the Court, the government, and the jury the necessity of an almost two-month trial against the remaining defendants in this case.[6]

---

[6] Gianelli's other claims, raised perfunctorily, do not warrant extended discussion. Gianelli complains (Document 982 at 14) that at trial, Mr. Sheketoff failed to present testimony that the investigators' original theory was that revenge (rather than extortion) was the motive for the arson. But, Mr. Sheketoff *did* elicit from Agent Kelsch that Trooper Orlando had submitted a wiretap affidavit in 2003 stating that the purpose of the arson was revenge and to ruin the reputation of Colangelo, and that Sgt. Russolillo had testified at the detention hearing in 2005 that the motivation for the arson was revenge. Tr. 25-103 - 25-104. Gianelli's unsupported allegation (Document 982 at 14) that Mr. Sheketoff "promis[ed]" that the government would not "change" its theory from a revenge arson to an extortion arson is belied by the fact that Count 275 had been

## Gianelli's Motion Should Be Denied Without a Hearing

As the First Circuit has held, "[t]he district court summarily may dismiss a section 2255 motion, without an evidentiary hearing, if its claims are inadequate on their face. Therefore, plenary presentation is not required unless the motion contains assertions of fact *that a petitioner is in a position to establish by competent evidence*. Thus, the threshold issue is whether, if the evidence should be offered at a hearing, it would be admissible proof entitling the petitioner to relief." *Barrett*, 965 F.2d at 1995 (emphasis in original) (internal citations and marks omitted).

Moreover, "a petition can be dismissed without a hearing if the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or if the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Dziurgot v. Luther*, 897 F.2d 1222, 1225 (1st Cir. 1990) (citations omitted).

In *David v. United States*, 134 F.3d 470 (1st Cir. 1998), the First Circuit affirmed the district court's denial of a § 2255 motion without having held an evidentiary hearing, and discussed the standard for when evidentiary hearings are required on a § 2255 motion:

> [A] habeas petitioner is not automatically entitled to a hearing and normally should not receive one if his allegations are vague, conclusory, or palpably incredible. This is true ... even if the record does not conclusively and expressly belie the claim.
>
> * * *
>
> [T]he district court was not obliged to credit the petitioner's threadbare allusions to a phantom plea bargain. Who, what, when, where, and how details might have placed matters of ascertainable fact at issue and thus have bolstered the case for an evidentiary hearing, but none were forthcoming.

---

included in the second superseding indictment in 2006 -- two years *before* Mr. Sheketoff entered the case and long before the trial.

134 F.3d at 478 (citations and internal marks omitted).

For the foregoing reasons, Gianelli's motion should be denied without a hearing.

> Respectfully submitted,
>
> CARMEN M. ORTIZ
> United States Attorney
>
> By:     */s/ Michael L. Tabak*
>         Michael L. Tabak
>         Assistant United States Attorney

CERTIFICATE OF SERVICE

     I hereby certify that this document is being electronically filed through the Court's CM/ECF system and thereby being served upon all counsel in this case, and that a copy is being sent today by e-mail and by certified mail to Arthur Gianelli, Prisoner Number 04599-748, at FCI Fort Dix.

> */s/ Michael L. Tabak*
> Michael L. Tabak
> Assistant U.S. Attorney

Date: June 13, 2014