UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.                                          CR. NO. 05-CR-10003-NMG

ARTHUR GIANELLI

**DEFENDANT'S MOTION FOR COMPASSIONATE
RELEASE AND MODIFICATION OF SENTENCE**

Defendant Arthur Gianelli, ("Gianelli"), by his attorney, pursuant to the First Step Act ("FSA") and 18 U.S.C. § 3582(c)(1)(A), moves that this Court order his compassionate release and modify his sentence.

**I.      INTRODUCTION**

Gianelli is a 63 year-old man who has served approximately 185 months (15.5 years) of his 271 month (22.5 year) term of imprisonment imposed by the Court in 2009. Throughout his 15.5 years in the Bureau of Prisons ("BOP"), Gianelli has been a model inmate with an exemplary record. Notwithstanding a referral to home confinement by Gianelli's counseling unit team at FCI, Fort Dix ("Fort Dix"), the BOP denied Gianelli's request for a compassionate release and subsequent administrative appeal.

Today, COVID-19 infections due to the coronavirus pandemic are raging out of control at Fort Dix and the situation has become dire. Presently, Fort Dix has the highest number of COVID-19 infected inmates and staff in the entire federal prison system. Despite this troubling statistic, Fort Dix still has failed to adequately implement the safety measures outlined by the Center for Disease

1

Control ("CDC"). The conditions inside Fort Dix are life-threatening: inmates are still crammed into overcrowded housing units and common areas; there is no social distancing between inmates and staff; and there is no testing. Gianelli is particularly vulnerable and susceptible to serious health issues or death if he contracts COVID-19 due to his age coupled with a family history of diabetes.

Gianelli requests the Court to modify the remainder of his term of imprisonment (less than 4 years) to home confinement with any conditions that the Court deems appropriate and to allow him to reside with his daughter within the District of Massachusetts. There are now "extraordinary and compelling reasons" warranting a compassionate release.

## II.  PROCEDURAL AND FACTUAL BACKGROUND

1. On April 22, 2009, after a two (2) month jury trial, Gianelli was found guilty of, *inter alia,* racketeering conspiracy, extortionate collection of credit, Hobbs Act extortion, arson, illegal gaming business, money laundering, and other related charges.

2. On October 7, 2009, the Court sentenced Gianelli to a total term of imprisonment of 271 months followed by three (3) years of supervised release.

3. Gianelli has been in federal custody since September 19, 2005. According to the BOP, Gianelli's scheduled release date is October 16, 2024. Presently, Gianelli is incarcerated at FCI Fort Dix (Low), a low-security facility in Burlington County, New Jersey, where he has been housed for the past 11.5 years.

4. In Spring of 2020, the coronavirus pandemic was surging throughout the United States and particularly within the BOP, including at Fort Dix. *See* Elizabeth Weill-Greenberg et al., "*Coronavirus Is Ready To Explode Inside Fort Dix Federal Prison, Incarcerated People and Their Loved Ones Say*" The Appeal, https://theappeal.org/fort-dix-prison-new-jersey-coronavirus/ (last visited Nov 28, 2020). Around that same time, the counseling unit team at Fort Dix made a referral

for Gianelli's release to home confinement.

5. On March 26, 2020, Attorney General Barr issued a memorandum and directive to the director of BOP regarding guidelines to follow in assessing which inmates should be released to home confinement due to the ongoing COVID-19 pandemic. Most of the enumerated factors favored Gianelli's release to home confinement.[1]

6. On April 16, 2020, based upon a referral from the Fort Dix counseling team unit, United States Probation Officer ("USPO") James Woody of the District of Massachusetts interviewed Marianne Gianelli ("Ms. Gianelli") regarding the placement of her father to home confinement at her residence. Ms. Gianelli is a homeowner who lives in Melrose, MA.[2] She is currently employed by Gibson Sotheby's International Realty as a licensed realtor. At the conclusion of the interview USPO James Woody informed Ms. Gianelli that he would approve placement of her father at her home.

7. In late April of 2020, Gianelli was informed by his counselor at Fort Dix, Ms. Iris Rivera, that he would not be released to home confinement. Gianelli submitted an Informal Resolution Form (BP-8). On May 5, 2020, Gianelli received a response to his BP-8 denying his release to home confinement stating:

> You were reviewed and referral was generated, however, due to violence in your instant offense, your referral was denied. The offense conduct excludes you from direct home confinement at this time. *See* Exhibit "A" - Form BP-8.

8. Gianelli immediately appealed the denial of his request for compassionate release to home confinement, and on May 9, 2020, received a response from Warden David Ortiz denying his appeal. *See* Exhibit "B"-Form BP-9.

---

[1] https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf
[2] USPO James Woody was able to verify the address provided to him by Ms. Gianelli.

9. Thirty days have lapsed from Gianelli's request for compassionate release and the denial by the warden at Fort Dix. *See* 18 U.S.C. § 3582(c)(1)(A).

10. To date, Gianelli has not been tested for COVID-19 at Fort Dix.

11. At the time of filing the instant motion, the United States has had 13.1 million cases of COVID-19, compared to a population of 331 million people[3]. This is a rate of 3.95%. The BOP has 124,994 federal inmates in BOP-managed institutions and 14,038 in community-based facilities[4]. The BOP staff complement is approximately 36,000. *Id.* There are 4,523 federal inmates and 1,381 BOP staff who have confirmed positive test results for COVID-19 nationwide. *Id.* Currently, 19,775 inmates and 1,843 staff have recovered. *Id.* There have been 145 federal inmate deaths and 2 BOP staff member deaths attributed to COVID-19 disease. *Id.* The BOP infection rate is 17.6%. Fort Dix currently has 268 infected inmates, which is the highest of all BOP facilities. *Id.*

12. The novel coronavirus of 2019 is a serious disease, ranging from no symptoms or mild ones for people at low risk, to respiratory failure and death in older patients and patients with chronic underlying conditions. *See* Centers for Disease Control and Prevention Coronavirus Disease 2019 Frequently Asked Questions, https://www.cdc.gov/coronavirus/2019-ncov/faq.html#How-COVID-19-Spreads (last visited November 28, 2020). According to the CDC, "[t]he best way to prevent illness is to avoid being exposed to the virus." *Id.* The CDC recommends, among other things, that people clean their hands often or use hand sanitizer when soap is unavailable, avoid close contact with other people (at least six feet in distance), and clean and disinfect frequently touched surfaces daily, such as tables, doorknobs, light switches, and countertops. *Id.* The CDC also recommends that if an individual becomes sick, he or she should isolate from others by staying in a specific sick room and using a

---

[3] The New York Times, "*Covid in the U.S.: Latest Map and Case Count*" (2020), https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html (last visited Nov 28, 2020).
[4] https://www.bop.gov/coronavirus/

4

separate bathroom if possible. *Id.* The CDC has also indicated that certain classes of individuals are at higher risk for developing severe illness if exposed to the novel coronavirus of 2019. *Id*.

13. Older adults[5] are both more susceptible to contract COVID-19, and have a significantly higher risk of serious illness or death if infected with COVID-19. *Id*. Adults in the age group of 50 – 64 years-old are four (4) times more likely to be hospitalized and 30 times more likely to die if infected. *Id*. Once adults turn 65, they become five (5) times more likely to be hospitalized and 90 times more likely to dieif infected. *Id*. Older adults with preexisting conditions, such as diabetes, are particularly susceptible. *Id*.

14. Despite being incarcerated for the past 15.5 years, Gianelli maintains a close, stable, and loving relationship with his entire family. Gianelli's wife of 39 years, Mary Ann Gianelli ("Mrs. Gianelli"), works full-time as a registered nurse at Arnold House: a nursing home in Stoneham, MA. Mrs. Gianelli also resides in Stoneham, MA where she cares for her 92 year-old mother, Marjorie Moore, and her 94 year-old Aunt, Carmel Killoran.

15. Gianelli's son, Michael (35), a graduate of Bentley University with a B.S. in Business, is employed as a computer software sales rep and resides in Chelsea, MA. Gianelli's daughter, Ms. Gianelli (36), is a graduate of Boston University with a B.S. in Journalism. She maintains her willingness to allow her father to live with her at her residence in Melrose, MA under home confinement.

16. Gianelli's mother, Gloria Gianelli (92), resides in Lighthouse Point in Broward County, Florida. She has been diagnosed with Type 1 diabetes and has been prescribed Glipizide. Two (2) years ago she was diagnosed with colon cancer and the cancerous portion was successfully removed. She is now in the late stages of Macular Degeneration and is almost completely blind. Her son and Gianelli's

---

[5] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html

brother, Michael Gianelli (54), resides in St. Augustine, FL and sporadically travels to South Florida to assist with his mother's medical condition.

17. Although Gianelli has not been diagnosed with diabetes, the Gianelli family has a history of diabetes. Those with Type 1 diabetes in their family have a predisposition to develop Type I diabetes because it is passed through generations in families.[6] Type 1 diabetes can occur at any age, from early childhood to late adulthood. *Id*.

### III. LEGAL STANDARD

As part of the FSA, signed into law on December 21, 2018, Congress overhauled sentence modification procedures codified at 18 U.S.C. § 3582(c)(1)(A). Pub. L. No. 115-391, 132 Stat. 5194 (2018). Prior to the change in law, the power to seek sentence modification resided exclusively with the Director of the BOP, who exercised it rarely and, often, delinquently. *See* U.S. Dep't of Justice Office of the Inspector General, The Federal Bureau of Prisons' Compassionate Release Program (Apr. 2013).

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), provides that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) [18 USCS § 3553(a)] to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is

---
[6] https://medlineplus.gov/genetics/condition/type-1-diabetes/

> currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i)and(ii).

The Policy Statement issued by the United States Sentencing Commission, § 1 B 1.13 of the Sentencing Guidelines, ("U.S.S.G"), was last amended in November 2018, before the FSA was passed. The application note to U.S.S.G. § 1B1.13 further defines the "extraordinary and compelling reasons" required to merit consideration for compassionate release:

> Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant.—
>> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>> (ii) The defendant is--
>>> (I) suffering from a serious physical or medical condition,
>>> (II) suffering from a serious functional or cognitive impairment, or
>>> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.--The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.--
>> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons. --As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

7

U.S.S.G. 1B1.13 (Application Note 1).

Subdivision 2 to § 1B1.13 notes that compassionate release cannot be ordered unless "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

## IV. ARGUMENT

Gianelli submitted a formal request for compassionate release to Warden David Ortiz at Fort Dix on May 5, 2020, that was denied. Gianelli has fully exhausted all of his administrative remedies and the Court may now consider the requested relief.

The Court should grant Gianelli's request for a compassionate release. The escalating, dangerous and worsening conditions inside Fort Dix caused by the recent spike of COVID-19 infections have heightened the likelihood of severe health risk or death to 63 year-old Gianelli (As stated *supra* at ¶ 13, Adults in the age group of 50 – 64 years-old are four (4) times more likely to be hospitalized and 30 times more likely to die, if infected.[7] Once adults turn 65, they become five (5) times more likely to be hospitalized and 90 times more likely to die, if infected. *Id.*).

As the Court is well aware, the situation throughout the country has rapidly devolved due to the spread of the coronavirus pandemic. The situation inside BOP facilities is even more grave as the infection rate among inmates is five (5) times higher compared to the broader US population. To date, the BOP has repeatedly failed to contain outbreaks of COVID-19 throughout its facilities and the "prisons are like tinderboxes for infectious disease," *United States v. Rodriguez*, No. 2:03-CR-00271, 2020 WL 1627331, at *1 (E.D. Pa. Apr. 1, 2020).

District courts around the country are finding "extraordinary and compelling reasons"

---

[7] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html

to grant compassionate release for vulnerable inmates due to the coronavirus pandemic. *See United States v. Jaen*, 91-cr-814- FAM, ECF No. 505 (S.D. Fla. July 6, 2020) (reducing life sentence to time served for 81-year old convicted of 600-lb cocaine distribution and assault on federal officer); *United States v. Rice*, 90-cr-0768-PAS, ECF No. 421 (S.D. Fla. June 8, 2020) (reducing life sentence to time served for defendant convicted of drug, weapon, and assault charges); *United States v. Rice*, Case No. 1:03-cr-441 (D.D.C. July 8, 2020) (reducing life sentence to approximately 16.5 years); *United States v. Naranjo*, No. 93-cr-418 (D.D.C. May 11, 2020) (granting compassionate release reducing life sentence to time served due to age and health conditions placing him at risk for COVID); *United States v. Smith*, 6:04-cr-2002 (N.D. Iowa July 10, 2020) (reducing mandatory life sentence to time served based on health conditions and COVID after serving approximately 16 years of sentence); *United States v. Parker*, Case No. 2:98-cr-00749-CAS- 1, 2020 WL 2572525, at *14 (C.D. Cal. May 21, 2020) (reducing life sentence to approximately 22 years, time served for 65-year-old defendant experiencing deteriorating health and particularly susceptible to COVID-19 due to several conditions resulting from the aging process); *United States v. Rachal*, No. CR 16-10043-NMG, 2020 WL 3545473, at *1 (D. Mass. June 30, 2020) (compassionate release granted for 68 year-old man convicted of armed robbery who served over half of his sentence and suffers from hypertension and tested positive for COVID-19).

Throughout the COVID-19 crisis, the BOP has been unable to prevent, contain, and control COVID-19 infections at Fort Dix. One of the reasons COVID-19 is difficult to control is because the disease is highly contagious. The CDC advises that the coronavirus is "spread mainly from person-to-person . . . [b]etween people who are in close contact with one another . . ."[8] Despite this, Fort Dix still has no social distancing among inmates and staff; inmates are

---

[8] CDC, *Coronavirus Disease 2019* (COVID-19), *How It Spreads* (Mar. 4, 2020), https://www.cdc.gov/coronavirus/2019-

9

packed into overcrowded housing units; inmates share showers and toilets; and there is inadequate sanitation throughout the facility; and there is no meaningful testing.[9]

Since September 2020, as the situation has become unmanageable due to the outbreaks of COVID-19 infections inside Fort Dix, district courts have granted compassionate release for 12 inmates. *See United States v. McNish*, No. CR 10-524, 2020 WL 5646443, at *3 (E.D. Pa. Sept. 22, 2020) (finding "extraordinary and compelling reasons" for a reduction in sentence and stating that Fort Dix is a heavily populated correctional institution that has seen a number of COVID-19 cases. Even with certain precautions taken at the prison, the virus finds a way to infect and to spread); *United States v. Brown*, No. CR 13-176-1, 2020 WL 5801494, at *1 (E.D. Pa. Sept. 29, 2020) (finding "extraordinary and compelling reasons" for a reduction in sentence and noting that "the large population at Fort Dix, along with the lack of testing at the facility, may fail to accurately portray the crisis at the prison."); *United States v. Naik.*, No. 18-CR-190-WJM, 2020 WL 6156715, at *3 (D.N.J. Oct. 21, 2020) (D.N.J. Oct. 21, 2020) (finding "extraordinary and compelling reasons" for a reduction in sentence in part because of "the rising number of confirmed cases among both inmates and staff at FCI Fort Dix after months of the campus having no known cases[.]"); *United States v. Mongelli,* No. 02-CR-307 (NGG), 2020 WL 6449237, at *1 (E.D.N.Y. Nov. 3, 2020) (granting second compassionate release request after noting changed circumstance and the prevalence of COVID-19 at FCI Fort Dix); *United States v. Powell*, No. CR 16-CR-163-YK, (M.D. Pa. Nov. 12, 2020) (granting compassionate release for a defendant in Fort Dix that was sentenced to 188 months and had been incarcerated for five years because he had chronic kidney disease and did not pose a threat

---

ncov/prepare/transmission.html.
[9] Elizabeth Weill-Greenberg et al., "*Coronavirus Is Ready To Explode Inside Fort Dix Federal Prison, Incarcerated People and Their Loved Ones Say The Appeal*" (2020), https://theappeal.org/fort-dix-prison-new-jersey-coronavirus/ (last visited Nov 30, 2020).

to the public); *United States v. Weikel*, No. 16-20659, 2020 WL 6701914, at *3 (E.D. Mich. Nov. 13, 2020) (granting compassionate release to sixty-eight year old man incarcerated at Fort Dix and scheduled for release on June 1, 2023 noting the outbreak of COVID-19 at Fort Dix and the lack of testing); *United States v. Hankewycz,* No. 7:19-cr-00649-KMK (S.D.N.Y. Nov. 18, 2020) (granting compassionate release for defendant in Fort Dix who served 2/3 of his sentence and suffering from Still's Disease); *United States v. Davis*, No. CR TDC-15-0116, 2020 WL 6785351, at *2 (D. Md. Nov. 18, 2020) (granting compassionate release and noting that Fort Dix is presently one of the hardest hit federal prisons); *United States v. Steven Smith*, No. 14-20814, 2020 WL 6822831, at *1 (E.D. Mich. Nov. 20, 2020); (granting compassionate release and stating that "FCI Fort Dix, is experiencing an outbreak of infections and has dormitory-style housing which makes social distancing impossible."); *United States v. Elliott*, No. 3:17-CR-00051 (PGS), 2020 WL 6874869, at *1 (D.N.J. Nov. 23, 2020) (granting compassionate release and noting that when the court denied the defendant's first compassionate release motion in August 2020, only two inmates had tested positive at Fort Dix and since then the cases of COVID-19 at Fort Dix have increased at an extraordinary rate); *United States v. Mark Staats*, No. CR 17-461-1, 2020 WL 6888224, at *2 (E.D. Pa. Nov. 24, 2020) (granting compassionate release and stating that "[p]risons are tinderboxes for infectious disease, and at Fort Dix, the match has already been lit. Fort Dix is experiencing an uncontrolled outbreak of COVID-19."); *United States v. Patrick Jansen*, No. 108CR00132SEBTAB12, 2020 WL 6946504, at *1 (S.D. Ind. Nov. 25, 2020) (granting compassionate release and stating that Fort Dix is experiencing a significant outbreak of COVID-19).

Based on the foregoing, Gianelli submits that he has established "extraordinary and compelling reasons" and the Court must now consider the factors contained in § 3553(a) to

determine whether a sentence modification is warranted. 18 U.S.C. § 3582(c)(1)(A).

A modification of the remaining four (4) years of Gianelli's incarceration to home confinement is supported by and consistent with the § 3553(a) factors and Gianelli is not a danger to the safety of any other person, or in the community.

The sole reason given by the BOP for denying Gianelli's request for his release to home confinement was based upon the nature and seriousness of the offenses for which he was convicted. *See* Exhibit "B"-Form BP-9. Gianelli readily acknowledges that the crimes for which he was convicted are serious and caused harm to people in the community. He accepts full responsibility for his conduct that occurred almost two (2) decades ago.

The Court, having presided over Gianelli's lengthy jury trial and sentencing, is in the best position to assess the nature of the offenses for which Gianelli was convicted. The primary offense conduct for which Gianelli was convicted centers around his operation of an illegal bookmaking and loansharking business. As part of the collection of debt, there were threats of violence, but no actual violence.

Regarding the arson[10] at the Big Dog Sports Grille in 2003, as law enforcement was already on the scene and notified the local fire department, the fire was extinguished quickly and there was only "minimal damage" caused to the building. PSIR at ¶ 56. None of the owners of the establishment sought restitution. PSIR at ¶ 82.

Gianelli emphasizes that his request for a modification of his sentence to home confinement in no way minimizes his conduct in this case. Gianelli clearly is a different and better person today than he was during the offense conduct in the instant case. He has spent

---

[10] Recently, the 11th Circuit found that Hobbs Act robbery "does not qualify as a crime of violence under U.S.S.G. § 4B1.2(a)." *United States v. Eason*, 953 F.3d 1184, 1188 (11th Cir. 2020).

15.5 years in the federal prison system without any disciplinary reports, and has not been involved in any acts of violence. Indeed, that is why the professional counseling unit team at Fort Dix, who worked closely with Gianelli over the last 15.5 years and know him best, recommended his release to home confinement.[11]

Federal district courts have granted compassionate release even to defendants who have been convicted of serious offenses and received lengthy sentences, based on the serious health risks associated with COVID-19. *See, e.g.*, *United States v. Diego Rodriguez*, No. 00-CR-761-2-JSR, 2020 WL5810161, at *1 (S.D.N.Y. Sept. 30, 2020) (granting compassionate release and reducing life sentence to 30 years for defendant convicted of racketeering, drug trafficking, and the "brutal murder of a government informant"); *United States v. Bernard*, ECF No. 1811, 97-cr-48-RNC (D. Conn. Aug. 4, 2020) (granting compassionate release and reducing 405-month sentence to time served for defendant who was the "head of the Latin Kings in Connecticut" and the "lead defendant in a large RICO conspiracy case" involving that group, when defendant was 57 years old and "at 'high risk' of serious illness or death were he to contract COVID-19"); *United States v. Curtis*, No.03-cr-533, 2020 WL 1935543 (D.D.C. Apr. 22, 2020) (granting compassionate release to a 43- year-old defendant who had served 17 years of life sentence for sex trafficking children based on his advanced MS, Covid-19, and changes to the career-offender guideline); *United States v. Fisher*, 2020 WL 5992340 (S.D.N.Y. Oct. 9, 2020) (granting compassionate release to former "drug kingpin" convicted of a "sprawling narcotics conspiracy" who committed "heinous crimes" and "stole away the lives of others," and reducing life without parole sentence to time served).

---

[11] On Sunday July 26, 2020, counsel for Gianelli conferred with Counselor Iris Rivera at Fort Dix. Ms. Rivera stated to counsel that the counseling team unit unanimously recommended Gianelli for release to home confinement, but was overruled by the case manager coordinator and warden.

Gianelli asks the Court to be guided and persuaded by the recent compassionate release to home confinement of inmate Daniel Mongelli at Fort Dix. *United States v. Mongelli,* No. 02-CR-307 (NGG), 2020 WL 6449237, at *1 (E.D.N.Y. Nov. 3, 2020). In *Mongelli*, the defendant was sentenced to a term of imprisonment of 288 months followed by five (5) years of supervised release for racketeering conspiracy, illegal gaming activity, conspiracy to commit murder, murder, conspiracy to make extortionate extensions of credit involving his role in the Bonanno crime family. Like Gianelli, Mongelli was housed at Fort Dix within the low-security facility. Mongelli is 54 years-old, recently was diagnosed with prostate cancer and contracted the COVID-19 virus and was receiving no medical treatment. The Court, in releasing Mongelli, reasoned that having already served 18 years in prison was a significant and substantial sentence for his crimes and would not undermine the principles of "deterrence".

Gianelli (63), has served approximately 185 months of a 271 month sentence. Accounting for good time, Gianelli has successfully completed almost 80% of his sentence. If the Court modified the remaining four (4) years of Gianelli's sentence to home confinement he still would be under the Courts supervision for a total of seven (7) more years (4 years of home confinement followed by 3 years of supervised release). This is a significant sentence that will still reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, and protect the public.

Gianelli is blessed and grateful for the continued love and support of his entire family throughout the last 15.5 years of his incarceration. Despite being hard-working, busy professionals themselves, they continue to provide a strong nucleus of family support and love to Gianelli. They all pledge to the Court that they will continue to provide that same level of support and stability to Gianelli for the remainder of his supervision.

Wherefore, for the foregoing reasons, Gianelli requests the Court grant his motion for compassionate release and modify the remainder of his term of imprisonment to home confinement.

ARTHUR GIANELLI
By his attorney,

*Elliot M. Weinstein*

Elliot M. Weinstein
BBO #52040083 Atlantic Avenue
Boston, MA 02110
617.367.9334
elliot@eweinsteinlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was filed with the Court via the Court's CM/ECF System onDecember 1, 2020, and served on all parties via ECF.

*Elliot M. Weinstein*