UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 05-10003-NMG-1 |
| | ) | |
| ARTHUR GIANELLI, | ) | LEAVE TO FILE GRANTED |
| | ) | ON APRIL 8, 2021 |
| Defendant | ) | |

**GOVERNMENT'S SURREPLY TO DEFENDANT'S MOTION
TO RECONSIDER MOTION FOR COMPASSIONATE RELEASE**

In his blustering replies (*see* the Court's Electronic Case File, Docket Entries ("D.E.") 1076, 1079, and 1080; collectively, the "*Replies*") to the *Government's Response to Defendant's Motion to Reconsider Motion for Compassionate Release*, D.E. 1074 (hereinafter referred to as "the Government's *Response*"), Defendant scrutinized, without any hint of irony, the Government's dedication to the relevant facts. Perhaps such scrutiny would have been more persuasive had he demonstrated the same discipline when staking out his own positions.[1] Alas, Defendant has not been constrained by the evidence or by facts in his prior applications to this Court for compassionate release, and the *Replies* are no different. As such, none of Defendant's latest contentions merit responses, with one exception. Defendant attempts to defend his refusal of the Pfizer-Biontech COVID-19 vaccine on March 23, 2021, with misleading insinuations about the science and policies underlying the medical decision to offer him the vaccine at that time.[2] The truth is that Defendant had no legitimate reason to refuse vaccination.

---

[1] By way of one brief example, Defendant insists in great length that the Government is badly mistaken to believe that pandemic-related conditions at FCI Fort Dix have improved; however, other authorities have reached the same conclusion. *See United States v. Ortiz-Aponte*, 2021 U.S. Dist. LEXIS 50377 at *9 (D.P.R. March 16, 2021).

[2] The Government is in receipt of a "COVID-19 Vaccine Consent – Inmate" Federal Bureau of Prisons ("BOP") form, dated March 23, 2021, containing what appears to be Defendant's signature underneath the printed

1

Defendant's refusal of the first dose of the COVID-19 vaccine is not defensible on medical grounds, or otherwise. Defendant offers no coherent scientific basis for concluding that, approximately 83 days after being diagnosed with the COVID-19 virus, it is not in his best interest to begin vaccination. Instead, Defendant vaguely suggests that FCI Fort Dix medical staff acted improperly, claiming that he continues to exhibit COVID-19 symptoms without identifying what those symptoms are, and further claiming, without citation to any relevant authority,[3] that there is a 90-day recovery period during which, apparently, safe and effective vaccination is precluded. This logic appears to be the product of a tortured view of various COVID-19 guidance promulgated by the U.S. Centers for Disease Control and Prevention ("CDC").

Absent greater clarity in Defendant's *Replies*, the Government must presume that Defendant predicates his vaccine refusal on the CDC's recommendation that vaccination of "people with known current SARS-CoV-2 infection should be deferred until the person has recovered from the acute illness (if the person had symptoms) and they have met criteria to discontinue isolation."[4] But this is not the equivalent of a 90-day recovery period. The 90-day

---

words "I decline to receive the COVID-19 vaccination." This document was produced to the Government by FCI Fort Dix at the Government's request on April 6, 2021. FCI Fort Dix did not previously produce this document in the medical records attached to the Government's *Response*. *See* D.E. 1074, Exhibit 5.

[3] Defendant cited to an August 2020 opinion of the U.S. District Court for the Western District of Pennsylvania that relied upon research published in the medical journal, Nature Medicine. *See* D.E. 1076, p. 1, *citing United States v. Davidson*, 2020 U.S. Dist. LEXIS 150887 at *56 (W.D. Pa. August 20, 2020). It is unclear why Defendant believes that this authority supports the premise of a CDC-recommended 90-day recovery period post-infection, as there is no mention of a 90-day recovery period in the opinion or in the research. And the undersigned could not locate the expression, "90-day recovery period," anywhere on the CDC website. In fact, the research the Pennsylvania Western District Court cited suggested that, if anything, immunity to reinfection is most robust in the immediate weeks after infection and only then may taper off. This research is consistent with the position the CDC currently takes on the low likelihood of reinfection during the initial 90 days after symptom onset of the preceding infection.

[4] Interim Clinical Considerations for Use of COVID-19 Vaccines Currently Authorized in the United States, CDC, available at https://www.cdc.gov/vaccines/covid-19/info-by-product/clinical-considerations.html (last accessed April 6, 2021).

period following infection is significant because it represents the transition from a symptom-based strategy of assessing patients to a test-based strategy. The CDC's current position is that COVID-19 reinfection "appears to be uncommon during the initial 90 days after symptom onset of the preceding infection."[5] Simultaneously, recovered patients can continue to have SARS-CoV-2 RNA detected in the upper respiratory specimens for up to 12 weeks after symptom onset. *Id.* Therefore, testing for infection during this 90-day period is not likely to yield useful information unless the recovered patient becomes symptomatic, because positive test results "*without new symptoms*" are "more likely to represent persistent shedding of viral RNA than reinfection." *Id.* (emphasis added).

Importantly, Defendant's medical records demonstrate that he met the criteria to discontinue isolation, and he has not developed new symptoms of infection since isolation was discontinued. FCI Fort Dix medical staff changed Defendant's COVID-19 status to "resolved" on January 12, 2021, which is 14 days following his initial positive test. This duration is consistent with the CDC's medical isolation guidance for asymptomatic persons with COVID-19, or those with mild to moderate COVID-19 symptoms, such as Defendant.[6] Defendant has continued to

---

[5] Interim Guidance on Duration of Isolation and Precautions for Adults with COVID-19, CDC (updated February 13, 2021) available at https://www.cdc.gov/coronavirus/2019-ncov/hcp/duration-isolation.html (last accessed April 6, 2021).

[6] Specifically, the CDC recommends discontinuation of isolation under the following conditions:
- at least 10 days have passed since symptom onset;
- at least 24 hours have passed since resolution of fever without the use of fever-reducing medications; and
- other symptoms have improved.

*See* Discontinuation of Isolation for Persons with COVID-19 Not in Healthcare Settings, CDC, available at https://www.cdc.gov/coronavirus/2019-ncov/hcp/disposition-in-home-patients.html (last accessed April 6, 2021). The provisions of BOP's COVID-19 Pandemic Response Plan, Module 4 – Medical Isolation and Quarantine, appears to essentially track CDC guidance in this area. *See* Version 1.0, dated September 8, 2020, available at https://www.bop.gov/foia/docs/Mod_4_Inmate_Isolation_and_Quarantine_of_COVID_Pandemic_Response_Plan_08312020.pdf (last accessed April 6, 2021).

complain of shortness of breath during exertion and headaches since his medical isolation was discontinued. While these are recognized symptoms of a COVID-19 infection, they are not new. Conversely, while Defendant's symptoms of tinnitus and elevated blood pressure are new, they are not recognized symptoms of a COVID-19 infection.[7]

Under the circumstances, FCI Fort Dix medical staff properly offered the Pfizer-Biontech COVID-19 vaccine to Defendant in accordance with BOP's COVID-19 Vaccine Guidance, which imposes no minimal interval between infection and vaccination.[8] Defendant was deemed recovered – a conclusion that appears to be consistent with prevailing clinical assessment strategies and criteria. Deferring vaccination was not only not recommended by the Guidance, but was presumably disfavored, as the chance of Defendant being reinfected was expected to increase with time after recovery from initial infection, due to his waning post-infection immunity and the possibility of exposure to virus variants.[9] Ultimately, Defendant has the right to formulate his own opinion about the benefits and risks of vaccination, and to choose to elevate his opinion above those of the physicians treating him, and, indeed, the greater medical community.[10] The mere exercise of that right, however, should not operate as a ready-made convenience for bolstering his

---

[7] The symptoms the CDC identifies on its website are: fever or chills, cough, shortness of breath or difficulty breathing, fatigue, muscle or body aches, headache, new loss of taste or smell, sore throat, congestion or runny nose, nausea or vomiting, and diarrhea. *See* Symptoms of Coronavirus, CDC, available at https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html (last accessed April 6, 2021).

[8] COVID-19 Vaccine Guidance, Clinical Guidance, March 11, 2021, BOP, available at https://www.bop.gov/resources/pdfs/covid19_vaccine_guidance_20210311.pdf (last accessed April 6, 2021). BOP's clinical guidance is consistent with the CDC's recommendations.

[9] *See* Interim Guidance on Duration of Isolation and Precautions for Adults with COVID-19, *infra*.

[10] Defendant claims without support or elaboration that being vaccinated on March 23, 2021, would have been contrary to the recommendation of the vaccine's manufacturer, Pfizer. *See* D.E. 1080, p. 3. Defendant also fails to identify what the consequences would have been had he accepted the vaccine offered to him.

4

argument for compassionate release. FCI Fort Dix medical staff appear to have followed the relevant clinical guidance and medical science in their care of Defendant, and there is no reason to doubt that Defendant will continue to receive adequate care that minimizes his risks of developing severe illness from COVID-19.

When an inmate's well-being is in jeopardy, the uncertainty surrounding the risks of reinfection with COVID-19, the virus variants, and the availability of vaccines, all may reasonably contribute to "extraordinary and compelling reasons" for modification of a sentence under 18 U.SC. § 3582. Despite his new symptoms, the health risks Defendant faces while incarcerated at FCI Fort Dix are simply not so great that these uncertainties should tip the scale in favor of the requested relief, especially after Defendant has already refused a COVID-19 vaccine once. In his *Replies*, Defendant cites to *United States v. Davidson*, *infra*, a readily distinguishable case involving an inmate with near-end-stage kidney disease and type 2 diabetes mellitus, decided long before COVID-19 vaccines became available. 2020 U.S. Dist. LEXIS 150887, at *51-53.[11] A better precedent would be this Court's ruling in *United States v. Reynoso*, 2021 U.S. Dist. LEXIS 47833 at *4 (D. Mass., March 12, 2021), in which the Court refused to modify an obese inmate's sentence and questioned the sincerity of his health concerns after he rejected the opportunity to receive the COVID-19 vaccine. *See United States v. Newton*, 2021 U.S. Dist. LEXIS 48042 at *24 (D. Me., March 15, 2021) (declining to modify the defendant's sentence and recognizing that his fear of contracting COVID-19 and his unwillingness to undergo a vaccine were

---

[11] Defendant also cites a recent decision by the Honorable Patti B. Saris to modify the sentence of an obese inmate with breathing issues at FCI Fort Dix. *See United States v. Vaughn Lewis*, 1:16-cr-10166-PBS-4 (D. Mass. March 9, 2021), D.E. 713. Notably, in the Electronic Order entered on the docket, the Court emphasized the existence of a "serious legal question on to [sic] the appeal to the Supreme Court which has split the circuits," and additional "worry" about the legality of the application of a certain sentencing enhancement. *Id*. Obviously, there are no similar concerns about the integrity of Defendant's conviction and sentence.

"contradictory"); *see also United States v. Young*, 2021 U.S. Dist. LEXIS at \*6-7 (D. Mass., March 5, 2021) (Burroughs, J.) (denying vaccinated defendant's motion for compassionate release in part because "BOP is making great strides in vaccinating inmates").

In conclusion, Defendant's suggestion that his refusal to accept the COVID-19 vaccine offered to him by FCI Fort Dix medical staff was the superior medical judgment, should gain no traction with this Court.   The availability of vaccines to inmates at FCI Fort Dix, the ongoing course of mass vaccination there, Defendant's opportunity to be vaccinated, and his refusal to be vaccinated, all demonstrate that the danger the COVID-19 virus poses to Defendant's health is not an "extraordinary and compelling" reason to reduce his sentence under 18 U.S.C. § 3582 and grant him compassionate release.

        Respectfully submitted,

        NATHANIEL R. MENDELL
        Acting United States Attorney

By: /s/ *Fred M. Wyshak, III*
     Fred M. Wyshak, III
     Assistant United States Attorney
     U.S. Attorney's Office
     One Courthouse Way, Suite 9200
     Boston, Massachusetts 02210

Date:   April 9, 2021

## Certificate of Service

I hereby certify that this document filed through the ECF system on April 9, 2021 will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

By: /s/ *Fred M. Wyshak, III*
Fred M. Wyshak, III
Assistant U.S. Attorney